# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CR 723 |
| | ) | Judge Sharon Johnson Coleman |
| ADEL DAOUD, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S *EX PARTE, IN CAMERA* MOTION FOR PROTECTIVE ORDER PURSUANT TO CIPA SECTION 4 AND FED. R. CRIM. P. 16(d)(1)

Defendant, **ADEL DAOUD**, by and through his attorneys, **THOMAS ANTHONY DURKIN**, **JANIS D. ROBERTS**, and **JOSHUA G. HERMAN**, pursuant to the Due Process clause of the Fifth Amendment to the Constitution of the United States, respectfully submits this Memorandum pursuant to the Court's May 22, 2013, Order which permitted counsel to respond to the government's March 12, 2013, pleading entitled, "Government's Ex Parte, In Camera Motion For Protective Order Pursuant to CIPA Section 4 and Fed. R. Crim. P. 16(d)(1)" ("CIPA Motion") (Dkt. #39.)

As detailed below, it is respectfully requested that the Court deny the government's request to file its § 4 application *ex parte*, and instead compel disclosure of that application to cleared defense counsel.[1] Alternatively, the Court should (a) require the government to disclose

---

[1] Undersigned counsel have each obtained Secret level clearance and are eligible for Secret and also eligible for Top Secret clearance, to include access to Sensitive Compartmented Information. In addition, Mr. Durkin was given a Top Secret/Sensitive Compartmented Information (TS/SCI) clearance during his tenure as civilian defense counsel in the 9/11 case of *U.S. v. Khalid Sheikh Mohammed, et al.,* in the Military Commissions at Guantanamo Bay.

its legal arguments in support of its § 4 application to cleared defense counsel; and/or (b) provide defense counsel an opportunity to present to the Court *ex parte* information that will significantly assist the Court's review of the government's § 4 submission, as well as its evaluation of whether that submission includes discoverable information that is helpful or material to the defense, and which should therefore be disclosed to the defense.

## I.  ARGUMENT

### A.  The Principles Governing CIPA § 4.

The primary purpose of CIPA is to "protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (*quoting United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002)). *See also United States v. Aref*, 533 F.3d 72, 78 (2d Cir. 2008) (CIPA is designed "to protect and restrict the discovery of classified information in a way that does not impair the defendant's right to a fair trial."); *United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009). Nothing in CIPA alters the Federal Rules of Evidence to the detriment of a defendant in a criminal case. *See Aref*, 533 F.3d at 80 (government's privilege under CIPA "must give way" when classified information is helpful or material to the defense).

Indeed, CIPA's legislative history expressly states that the defendant "should not stand in a worse position, because of the fact that classified information is involved, than he would without this Act."  S. REP. NO. 823 at 9, 96th Cong., 2d Sess. 4, reported in 1980 U.S. CODE CONG. & AMIN. NEWS 4294, 4297.  *See also United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988).

CIPA "is essentially a procedural tool that requires a court to rule on the relevance of classified information before it may be introduced." *Dumeisi*, 424 F.3d at 578 (*citing United States v. Wilson*, 901 F.2d 378, 379 (4th Cir. 1990)). Section 4 of CIPA, which sets forth the procedures for "[d]iscovery of classified information by defendants," provides in full:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. 3, § 4. This provision "does not create any new rights of or limits on discovery of classified information, but rather clarifies a court's existing powers under Rule 16(d)(1) to protect a government privilege in classified information." *United States v. Hanjuan Jin*, 791 F. Supp. 2d 612, 617-618 (N.D. Ill. 2011) (citing *United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006)); *see also United States* v. *Abu-Jihaad,* 630 F.3d 102, 141 (2d Cir. 2010) (the "state secrets" privilege to withhold information applies under CIPA Section 4 only if "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged.")[2]

---

[2] This provision clarifies the district courts' power under Fed. R. Crim. P. 16(d)(1) to issue protective orders denying or restricting discovery for good cause. S. Rep. No. 96-823, at 6 (1980) The Advisory Committee notes to Rule 16 make clear that "good cause" includes "the protection of information vital to the national security." Fed. R. Crim. P. 16 advisory committee's notes to 1966 amendment.

The Seventh Circuit has not directly addressed the standard that a district court should use to analyze the government's request for a § 4 protective order.  *See Hanjuan Jin*, 791 F. Supp. 2d at 618.  As Judge Castillo observed in *Hanjuan Jin*, the federal appellate courts that have considered the issue have adopted variations of a standard that requires disclosure of classified information to the defense when that information is "relevant and helpful" to the defense or "essential to a fair determination of a cause."  *See Hanjuan Jin*, 791 F. Supp. 2d at 619 (citing *United States v. Yunis*, 867 F.2d 617, 622, 276 U.S. App. D.C. 1 (D.C. Cir. 1989) *Aref*, 533 F.3d at 79-80; *United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *United States v. Smith*, 780 F.2d 1102, 1107-10 (4th Cir. 1985) *United States v. Pringle*, 751 F.2d 419, 427-28 (1st Cir. 1984)).

Based on the standards applied in the case law, Judge Castillo adopted a four-step analysis that considers (1) "the assertion of privilege by the Government and determine if the information in question is classified"; (2) "whether the information is relevant or otherwise discoverable"; (3) "whether the information is helpful to the defense"; and (4), if the foregoing standards are met, the court balances "the Government's need to keep the classified information secret against the Defendant's interest in disclosure." *Hanjuan Jin*, 791 F. Supp. 2d at 620.  This analysis resembles the standard used in the Second Circuit, except for the final "balancing" step, which counsel submit is inconsistent with CIPA.[3]  The Second Circuit's standard, which is more

---

[3] Counsel submit that the additional "balancing" step simply cannot be squared with Congress's intent that the defendant "should not stand in a worse position, because of the fact that classified information is involved, than he would without this Act."  *See Libby*, 435 F. Supp. 2d 35, 40 (D. D.C. 2006) (discussing how Congress rejected a standard that required the court to "balance the probative worth of the evidence

appropriate because it does not use a "balancing" analysis, asks the following questions: (1) whether the information or material is classified; (2) whether the material or information is discoverable; (3) whether the "state secrets" privilege applies; and (4) whether the information is helpful or material to the defense. *Aref*, 533 F.3d at 80.

### 1.    Determining Whether the Information or Material Is Classified.

"Classified information" is defined as "information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. App. 3, §1(a). Classification may be established by the affidavit of a government official, as long as the affidavit "adequately describes the reasons for the information's classification and the harm that would result from disclosure." *United States v. Juma Khan,* 2010 WL 330241, at *1 (S.D.N.Y. Jan. 20, 2010).

### 2.    Determining Whether the Material or Information is Discoverable.

If the material or information is deemed classified, the Court must next determine whether it is relevant or is otherwise discoverable. This standard has been described as a "low

---

against the potential harms to national security.") Further, even the Fourth Circuit Court of Appeals, which appears to be one of the first appellate courts to have adopted this balancing analysis in *United States v. Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985), recognizes that if classified information is relevant or helpful to the accused, or is essential to a fair determination of a cause, it must be admitted and the government's national security interest "cannot override the defendant's right to a fair trial." *United States v. Abu Ali*, 528 F.3d 210, 247-248 (4th Cir. 2008) (internal quotation marks and citations omitted). Lastly, the government's interest in keeping classified information secret is thoroughly addressed in CIPA's other procedural mechanisms, such as § 5 ("Notice of defendant's intention to disclose classified information"); § 6 ("Procedure for cases involving classified information"); and § 8 ("Introduction of classified information"), not to mention the interlocutory appeal rights afforded to the government through § 7. Thus, a balancing of the government's interest in national security and a defendant's interest in disclosure is inconsistent with CIPA's purpose, violates Due Process, and should not be incorporated into the § 4 analysis.

hurdle." *Hanjuan Jin*, 791 F. Supp. 2d at 619 (quoting *Yunis*, 867 F.2d at 623). Moreover, CIPA was not intended to, and does not, change the government's discovery obligations under *Brady v. Maryland,* 373 U.S. 83 (1963) or the Federal Rules of Criminal Procedure. *See, e.g.*, *United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006) ("[CIPA] creates no new rights or limits on discovery of a specific area of classified information . . . [,] it contemplates an application of the general law of discovery in criminal cases to the classified information based on the sensitive nature of the classified information"), *quoting Yunis*, 867 F.2d at 621; *see also Klimavicius-Viloria*, 144 F.3d at 1261. Nor does CIPA alter the Federal Rules of Evidence. In this regard, a defendant is entitled to discovery material under Rule 16 if it is "relevant to the development of a possible defense. … " *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir. 1984).

### 3.  Determining Whether the "State Secrets" Privilege Applies.

When classified information is discoverable, the third step involves deciding whether the "state secrets" privilege applies because: (1) exposure of the evidence would present a "reasonable danger" to national security; and, (2) the privilege has been "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Aref*, 533 F.3d at 80 (citation and internal quotation marks omitted).

### 4.  Determining Whether the Information Is Helpful or Material to the Defense.

If the Court decides the "state secrets" privilege applies, the final step is to determine whether the information is "helpful or material" to the defense, meaning it would be "useful to counter the government's case or to bolster a defense." *Id.* (citation and internal quotation marks omitted). In *Aref*, the Second Circuit explained that "to be helpful or material to the defense,

6

evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland*, to disclose exculpatory information." *Id.* Rather, "[i]nformation can be helpful without being 'favorable' in the Brady sense." *Id.* (citations and internal quotation marks omitted). Thus, when information may be helpful or material to the defense, the classified material or information must be provided, but the Court may permit the government to make appropriate deletions or substitutions. 18 U.S.C. App. 3, §4.

**B.** **The Court Should Deny the Government's Request for *Ex Parte* Treatment of its §4 Application Absent a Demonstration of Exceptional Circumstances.**

Section 4 authorizes a court to accept government pleadings—and by implication to conduct the entire four-step analysis set forth above—*ex parte*. 18 U.S.C. App. 3, §4. However, simply because § 4 states only that "[t]he court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone[,]" there exists no categorical impediment to disclosure or adversary proceedings. Nothing in the statute permits the government to make such *ex parte* submissions as a matter of right. Rather, the use of the permissive "may" in the plain text of CIPA § 4, rather than the mandatory "shall," makes clear that courts retain discretion to reject *ex parte* submissions on a case-by-case basis.

Also, Congress patterned the *ex parte* provision of CIPA § 4 on a similar provision in Fed. R. Crim. P. 16(d)(l), which governs protective orders in criminal cases. Rule 16(d)(1), too, does not use the words "must" or "shall." Instead, Rule 16(d)(l) states that a court "may" permit a party to show good cause for a protective order through an *ex parte* statement. Congress amended the language of proposed Rule 16(d)(l) from requiring *ex parte* proceedings at the request of a party to permitting such proceedings. The House Judiciary Committee observed that

in determining whether to proceed *ex parte*, a court should "bear[] in mind that ex parte proceedings are disfavored and not to be encouraged." Rule 16, Fed.R.Crim.P., Advisory Committee Notes.[4]

In contrast, when Congress intends to require *ex parte* procedures in the national security setting, it knows how to articulate that mandate. For example, in the Foreign Intelligence Surveillance Act ("FISA"), Congress declared that the Court "shall" review FISA applications, orders, and related materials *ex parte* if the Attorney General submits an affidavit asserting that an adversarial proceeding would harm national security. *See* 50 U.S.C. §1806(f) (2000).

As a result of the foregoing analysis, rooted in the Fifth Amendment's Due Process Clause, coupled with the discussion below, it is respectfully submitted that—absent exceptional circumstances not present in this case—the government should not be permitted to file its § 4 application *ex parte*. In addition to the discretion § 4 explicitly vests in the Court—discretion that is meaningless if exercised only in one direction—the traditions of and experience in the adversary system justify requiring disclosure of the § 4 application to cleared defense counsel.

### 1. *Ex Parte* Proceedings Are Exceedingly Disfavored.

---

[4] *See also* S. REP. No. 96-823, at 6 (1980) (discussing the relation between CIPA §4 and Federal Rule of Criminal Procedure 16(d)(l)); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984) (stating the purpose of CIPA §4: "[t]he legislative history clearly establishes that these sections [CIPA §§4 and 5] were intended to make explicit the protective orders allowed for limitation of discovery of classified information pursuant to Federal Rule of Criminal Procedure 16"), (*citing* S.REP. No. 96-823)) *vacated and remanded on other grounds sub nom, United States v. McAfee*, 479 US. 805 (1986). Because CIPA § 4 affords at least as much protection for classified information (more, according to the government) as Rule 16(d)(l), discussion of § 4 necessarily subsumes Rule 16(d)(l).

As well they should be, *ex parte* proceedings are exceedingly disfavored. As the Sixth

Circuit has cautioned, "[d]emocracies die behind closed doors." *Detroit Free Press v. Ashcroft*,

303 F.3d 681, 683 (6th Cir. 2002). As the Ninth Circuit Court of Appeals has observed, "*ex parte*

proceedings are anathema in our system of justice." *Guenther v. Commissioner of Internal*

*Revenue*, 889 F.2d 882, 884 (9th Cir. 1989), *appeal after remand*, 939 F.2d 758 (9th Cir. 1991).

By their very nature, *ex parte* proceedings impair the integrity of the adversary process and the

criminal justice system.  And as the Supreme Court has recognized, "'[f]airness can rarely be

obtained by secret, one-sided determination of facts decisive of rights . . . . No better instrument

has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of

the case against him and opportunity to meet it.'" *United States* v. *James Daniel Good Real*

*Prop.,* 510 U.S. 43, 55 (1993) (in absence of exigent circumstances, Due Process clause requires

government to provide notice and meaningful opportunity to be heard before seizing real

property subject to civil forfeiture), *quoting Joint Anti-Fascist Refugee Committee v. McGrath*,

341 U.S. 123, 170-72 (1951 (Frankfurter, J., *concurring*).  Similarly, in *United States* v.

*Abuhamra,* 389 F.3d 309 (2d Cir. 2004), the Second Circuit reemphasized the importance of

open, adversary proceedings, declaring that "[p]articularly where liberty is at stake, due process

demands that the individual and the government each be afforded the opportunity not only to

advance their respective positions but to correct or contradict arguments or evidence offered by

the other." *Id*. at 321.

As the Ninth Circuit Court of Appeals observed in the closely analogous context of a

secret evidence case, "[o]ne would be hard pressed to design a procedure more likely to result in

erroneous deprivations. . . . [T]he very foundation of the adversary process assumes that use of

undisclosed information will violate due process because of the risk of error." *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1969 (9th Cir. 1995) (internal quotation marks and citation omitted).[5]

### 2. The Court Is Not Sufficiently Equipped to Act As Surrogate Defense Counsel.

Thus, to ensure both the appearance and reality of fairness, it is respectfully submitted that the Court should not permit the government to proceed *ex parte* without first making an adequate showing of the need for such drastic measures. Given defense counsels' security clearances, the government cannot contend that sharing its § 4 submission under the protections of a CIPA protective order would endanger national security. *See United States v. Libby*, 429 F. Supp. 2d at 4 (recognizing that "there are fewer threats to national security in disclosing classified documents to a defendant and his attorney who have obtained security clearances, than when disclosure is made to someone who has not received security clearances").

Indeed, barring cleared defense counsel from participating in discovery determinations harms the adversary process without any commensurate benefit to national security. Nor is there

---

[5] As the Court is aware, this is not the only problem in this case pertaining to secrets. On May 22, 2013, counsel filed a request on Defendant's behalf for Notice of FISA Amendments Act Evidence Pursuant to 50 U.S.C. §§ 1881e(a), 1806(c). (Dkt. # 42.) The FISA Amendments Act is now at the center of the highly charged public controversy this past weekend over the disclosure of the massive government spying program, heretofore undisclosed except, perhaps, to a few select members of Congress. *See, e.g.,* Eric Schmitt, David E. Sanger, Charlie Savage, *Administration Says Mining of Data is Crucial to Fight on Terror*, N.Y. Times, June 7, 2013 (*available* at http://www.nytimes.com/2013/06/08/us/mining-of-data-is-called-crucial-to-fight-terror.html?hpw&_r=0); Barton Gellman and Laura Poitras, *U.S., British intelligence mining data from nine U.S. Internet companies in broad secret program*, Wash. Post, June 6, 2013 (available at (http://www.washingtonpost.com/investigations/us-intelligence-mining-data-from-nine-us-internet-companies-in-broad-secret-program/2013/06/06/3a0c0da8-cebf-11e2-8845-d970ccb04497_story.html.)

any distinction between the type of clearance granted to counsel, and to judicial personnel or even prosecutors generally. Moreover, cleared defense counsel regularly review extremely sensitive classified information (via CIPA discovery) in the context of national security cases.

Nor are defense counsel clairvoyant, and able to predict and challenge blindly the government's position. Without access to either the classified evidence or the government's arguments for nonproduction, Defendant will be deprived of his right to counsel at this stage, and of other fair trial rights to which he is constitutionally entitled. Yet without defense counsel's participation in the process of evaluating the material and even crafting substitutions, it cannot be said that the defendant has been placed in the same position as he would be in if he were given access to either witnesses or the specific classified information.

Also, *ex parte* proceedings with respect to discovery also present an overwhelming danger of erroneous decisions. Despite what defense counsel knows will be the Court's best efforts, the Court cannot properly function as Defendant's surrogate advocate. The Court cannot possess sufficient appreciation for defense theories in a particular case, particularly at this phase of the case, at which the Court would not have sufficient knowledge and understanding of critical facts, factual issues, contentions, knowledge of impeachment issues, the nature of government and defense exhibits, and perhaps even the defendant's testimony.

Also, this case is considerably more complicated than an ordinary case, thus irremediably impairing further a court's ability to play the role of defense counsel. Thus, the relevance or materiality, or the exculpatory character of evidence, is not readily apparent except to those with intimate knowledge of the factual details as well as the full scope of discovery. Adherence to the adversary process would have considerable salutary effects on the accuracy of decision-making

in this instance. It is not the Court's function, but defense counsel's, to be the vigorous advocate on behalf of defendants and point out any deficiencies in the government's response.

Indeed, given the volume of discovery, the complexity of the charges in the Indictment and the anticipated defenses, it would be impossible for the Court to make the appropriate determination regarding the government's motion to preclude production of material absent a meaningful and substantive contribution from defense counsel. That cannot occur if the government's entire application is *ex parte*.

In *United States v. Marzook*, 412 F. Supp.2d 913 (N.D. Ill. 2006), in deciding whether to close a hearing to the public because of potential classified information, Judge St. Eve explained that: "[i]t is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents in camera. Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims." *Id*. at 921 (internal citation and quotation omitted). Likewise, in *Alderman v. United States*, 394 U.S. 165 (1969), the Court addressed the procedures to be followed in determining whether government eavesdropping in violation of the Fourth Amendment contributed to its case against the defendants. The Court rejected the government's suggestion that the district court make that determination *ex parte*, observing that "[a]n apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances." *Id*. at 182.

For the reasons outlined above, courts lack familiarity with "the information contained in and suggested by the materials[,]" that the government seeks to withhold. *Alderman*, 394 U.S. at 184. The Court, which has not had opportunity to review the discovery, consult with the defense, or otherwise investigate the facts of this case, cannot be expected to surmise the factual nuances of the defense. As the Supreme Court has recognized, "[i]n our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966). Accordingly, it is respectfully submitted that the government should not be permitted to file its §4 application *ex parte*, and that it should instead be disclosed to cleared defense counsel.

        **C.**    **In the Alternative, the Government Should Be
Compelled to Disclose to Cleared Defense Counsel
<u>Its Legal Arguments In Support of Its §4 Application.</u>**

Should the Court determine a need to review the government's § 4 submission *in camera* in whole, or in part, it is respectfully requested that the government be compelled to disclose to cleared defense counsel its arguments in support of non-production, and an adversarial hearing addressing those arguments should be conducted. There is no sensible reason why disclosure of the government's arguments would implicate national security, especially when the arguments could be provided to defense counsel subject to an appropriate protective order.

Such practice is not inconsistent with the Second Circuit's opinion in *Abu-Jihaad*. While in that case the Court noted that "where the government moves to withhold classified information from the defense, an adversarial hearing with defense knowledge would defeat the very purpose of the discovery rules[,]" (*Abu-Jihaad*, 630 F.3d at 142, *citing Aref*, 533 F.3d at 81 (internal quotation marks omitted)), the Court nevertheless acknowledged that trial judges retain

13

discretion to reject *ex parte* filings under § 4. Indeed, in *Abu-Jihaad* the Court characterized the defense's opposition as a "challenge to the district court's exercise of *discretion* to proceed *ex parte*," and reviewed the district court's decision to accept an *ex parte* filing under an abuse of discretion standard. *Id.* (emphasis added).

In *United States* v. *Libby*, 429 F.Supp. 2d 18 (D.D.C. 2006), *amended by* 429 F. Supp.2d 46 (D.D.C. 2006), the district court also recognized its discretion to reject *ex parte* § 4 filings. In *Libby*, the Court established a procedure for evaluating the necessity of an *ex parte* § 4 filing, requiring that any government submission under § 4 must necessarily include a declaration or affidavit, executed by an intelligence community official with the requisite classification authority, that: (1) describes the reasons for the classification of the information at issue; (2) sets forth the potential harm to national security that could result from its disclosure; and, (3) explains why the defense, based upon appropriate classification guidelines, does not have a 'need-to-know the information in its unaltered form." *Id.* at 25. The district judge added that, "[u]pon receipt of such a filing, the Court will review it and determine whether the filing should remain *ex parte*, or whether all or some portion of it should [be] provided to the defendant." *Id.* Similarly, in *Bostan v. Obama*, 674 F.Supp.2d 9,27 (D.D.C. 2009), a Guantanamo Bay *habeas* case, the Court adopted the same procedure for evaluating *ex parte* submissions under § 4.

**D. Defense Counsel Should Be Permitted to Make an *Ex Parte* Presentation to the Court Regarding How Classified Material May Be Helpful and Material to the Defense.**

Thus, the Court possesses discretion to reject the government's *ex parte* § 4 filing absent a demonstration of exceptional circumstances. If, assuming *arguendo*, the Court accepts the government's § 4 application *ex parte*, it is respectfully requested that at least the government's

legal arguments in support of its application be disclosed to cleared counsel (under an appropriate protective order, if necessary), thereby enabling defense counsel to present a meaningful argument in opposition.

Also, if the § 4 application is not disclosed to defense counsel, it is respectfully requested that defense counsel, in order to assist the Court in making its § 4 determination(s), be permitted an *in camera* and *ex parte* opportunity to present to the Court reasons why categories of potentially classified evidence may be relevant, material, and/or helpful to the defense in this case. *See, e.g., Libby*, 429 F.Supp.2d at 26 (allowing the defendant to submit an *ex parte* affidavit detailing the defense); *see also United States v. Moalin*, *et al.* (Case No. 10-cr-4246, S.D. Cal.) (Dkt. # 127, Feb. 23, 2012, allowing defendants to file briefs "identifying potential defenses, strategies, and theories of relevancy" under seal and without service on government "in order to assist court in analyzing the FISA related materials").

## II.   <u>CONCLUSION.</u>

For the foregoing reasons, counsel request that the Court deny the government's request to file its CIPA § 4 application *ex parte* and instead compel disclosure of that application to cleared defense counsel; and, in the alternative, request that the Court require the government to disclose to cleared defense counsel its legal arguments in support of its § 4 application, and/or allow defense counsel to submit to the Court *ex parte* information that will assist the Court in reviewing the government's § 4 submission.

Respectfully submitted,

/s/Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/Janis D. Roberts
**JANIS D. ROBERTS,**

/s/Joshua G. Herman
**JOSHUA G. HERMAN,**
Attorneys for Defendant Adel Daoud.

**DURKIN & ROBERTS**
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com
jdroberts@durkinroberts.com
jherman@durkinroberts.com

16

## <u>CERTIFICATE OF SERVICE</u>

Joshua G. Herman, Attorney at Law, hereby certifies that the foregoing Defendant's Memorandum in Opposition to the Government's *Ex Parte, In Camera* Motion for Protective Order Pursuant to CIPA Section 4 and Fed. R. Crim. P. 16(d)(1), was served on June 12, 2013, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Joshua G. Herman
**JOSHUA G. HERMAN,**
One of Defendant's Attorneys.

**DURKIN & ROBERTS**
2446 N. Clark Street
Chicago, IL 60614
(312) 913-9300
jherman@durkinroberts.com