**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CR 723 |
| | ) | Judge Sharon Johnson Coleman |
| ADEL DAOUD, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR NOTICE OF FISA
AMENDMENTS ACT EVIDENCE PURSUANT TO 50 U.S.C. §§ 1881e(a), 1806(c)**

As set forth in Defendant's initial pleading, counsel have asked that the government provide formal notice of "(1) whether the electronic surveillance described in its FISA Notice was conducted pursuant to the pre-2008 provisions of the Foreign Intelligence Surveillance Act ("FISA") or, instead, the FISA Amendments Act ("FAA"); and, (2) whether the affidavit and other evidence offered in support of any FISA order relied on information obtained or *derived* from an FAA surveillance order." (Motion, Dkt. #42, p. 1) (emphasis added).

Notwithstanding the overwhelmingly clear indication in the press that FAA surveillance was used in this case, the government continues to resist answering these two simple and straightforward questions. Instead, and to further complicate this simple issue, the government mischaracterizes the request as an apocalyptic attempt to obtain discovery that would trigger the FISA procedures contained in 18 U.S.C. § 1806(f). No matter how loudly the government howls, however, this motion does not seek FISA discovery. It requests something far more limited—namely, the *legal basis* for the government's interception of Defendant's electronic communications. By the same token, counsel do not ask the government to turn over classified

information, affidavits, or other evidence that was presented to the Foreign Intelligence Surveillance Court ("FISC").

Importantly, counsel seek notice of whether the government relied on FAA surveillance so that Defendant may exercise his rights under the Fourth and Fifth Amendments to challenge evidence obtained or derived from the FAA—a statute that no court has ever publicly reviewed. The Court should, therefore, reject out of hand the government's attempt to avoid disclosing whether FAA-*derived* evidence was used in this case, which as explained below can be seen as nothing more than a veiled attempt to avoid review of the FAA's constitutionality.

I.  **Recent Disclosures Demonstrate That The Government Has Repeatedly Failed To Give Defendants Notice Of FAA Evidence.**

As the Court and virtually every American that follows the news is no doubt aware, the FAA is at the center of the highly charged public controversy over a massive government surveillance program, which recent news reports have referred to as the PRISM program.[1] In defense of this surveillance program, oddly enough, government officials have now begun to identify cases in which FAA surveillance was allegedly used to foil terrorist activities.[2] While the public debate continues, what has become disturbingly clear—for the purposes of this motion—is that the government has refused to provide notice of its reliance on FAA surveillance in each and every one of these cases.

---

[1] *See*, *e.g*., Eric Schmitt, David E. Sanger, Charlie Savage, *Administration Says Mining of Data is Crucial to Fight on Terror*, N.Y. Times, June 7, 2013 (*available at* http://nyti.ms/1atVBdN); Barton Gellman and Laura Poitras, *U.S., British intelligence mining data from nine U.S. Internet companies in broad secret program*, Wash. Post, June 6, 2013 (*available at* http://wapo.st/1888aNr).

[2] Counsel are reminded of the quote by the journalist Finley Peter Dunne, attributed to his fictional turn-of-the-century sage Mr. Dooley, who supposedly said in his thick Irish brogue: "No matther whether th' constitution follows th' flag or not, th' supreme court follows th' iliction returns."

For instance, on June 18, 2013, Army Gen. Keith Alexander, the director of the National Security Agency, appeared before the House Intelligence Committee and testified that NSA surveillance programs helped prevent "potential terrorist events over 50 times since 9/11."[3] During this same hearing, Sean Joyce, Deputy Director of the FBI, provided examples of some of these "potential terrorist events." One example was the case of Najibullah Zazi, who was arrested in September 2009 for attempting to bomb the New York Subway, and pled guilty on February 22, 2010, to charges of conspiracy to use weapons of mass destruction, and conspiring to commit murder in a foreign country, and providing material support to terrorists. *See United States v. Zazi*, 09-cr-663 (E.D.N.Y). In his testimony, Mr. Joyce acknowledged that the NSA used the FAA to intercept an email from an individual in Pakistan who was communicating with Zazi, who was "located inside the United States," and was then followed by the FBI to New York City.[4]

Mr. Joyce also disclosed that the NSA utilized the FAA against the following individuals who were subsequently prosecuted and convicted in the federal courts: David Headley, who was

---

[3] Charlie Savage, *N.S.A. Chief Says Surveillance Has Stopped Dozens of Plots*, N.Y. Times, June 18, 2013 (*available at* http://nyti.ms/11ZXZoZ).

[4] Mr. Joyce's testimony regarding the use of the FAA in Mr. Zazi's case was as follows:

> In the fall of 2009, NSA using 702 authority intercepted an email from a terrorist located in Pakistan. That individual was talking with an individual located inside the United States talking about perfecting a recipe for explosives. Through legal process that individual was identified as Najibulah Zazi. He was located in Denver, Colorado. The FBI followed him to NYC. Later we executed search warrants with the NY joint terrorism task force and NYPD and found bomb making components in backpacks. Zazi later confessed to a plot to bomb the NY subway system with backpacks. Also working with FISA business records the NSA was able to provide a previously unknown number of one of the co-conspirators Adis Medunjanin. This was the first core al Qaeda plot since 9-11 directed from Pakistan.

(http://politicalticker.blogs.cnn.com/2013/06/18/live-blog-nsa-hearing/) (last visited June 19, 2013).

3

convicted of a plot to bomb a Danish newspaper office in a widely publicized case in this District before Judge Leinenweber. (*United States v. Headley*, 09-cr-830 (N.D.Ill.)[5] and Khalid Ouazzani, who was convicted for conspiracy to provide material support to al Qaeda (*United States v. Ouazzani*, 10-cr-25 (W.D. Mo.)), and whose case led to the prosecutions and convictions of Wesam El-Hanafi and Sabrihan Hasanoff for their role in an alleged plan to bomb the New York Stock Exchange (*United States v. El-Hanafi, et al.*, 10-cr-162 (S.D.N.Y.)).[6]

Notably, in not one of these cases did the government notify defense counsel and the courts about the utilization of the FAA. To the contrary, the government's FISA notices in *Zazi* and *Headley* only provide notice of the government's intent to use information obtained or derived from surveillance conducted pursuant to the "Foreign Intelligence Surveillance Act"—not the FAA—just like the government's FISA notice in this case. (Copies of the FISA notices from the *Zazi* and *Headley* cases are attached hereto as Group Exhibit A.) A review of the

---

[5] As to David Headley's case, Mr. Joyce stated as follows:

> David Headley, a U.S citizen living in Chicago. The FBI received intelligence regarding his possible involvement in the 2008 Mumbai attacks responsible for the killing of over 160 people. Also, NSA through 702 coverage of an al Qaeda affiliated terrorist, found that Headley was working on a plot to bomb a Danish newspaper office that had published the cartoon depictions prophet Muhammad. In fact, Headley later confessed to personally conducting surveillance of the Danish newspaper office. He and his co-conspirators were convicted of this plot.

(http://politicalticker.blogs.cnn.com/2013/06/18/live-blog-nsa-hearing/) (last visited June 18, 2013).

[6] Mr. Joyce testified as follows concerning these cases:

> NSA utilizing 702 authority was monitoring a known extremist in Yemen. This individual was in contact with an individual in the United States named Khalid Ouazzani. Ouazzani and other individuals that we identified through a FISA that the FBI applied for through the FISC, were able to detect a nascent plotting to bomb the NYSE. Ouazzani had been providing information and support to this plot. The FBI disrupted and arrested these individuals.

(http://politicalticker.blogs.cnn.com/2013/06/18/live-blog-nsa-hearing/) (last visited June 18, 2013).

dockets in the *Ouazzani* and *El-Hanafi* cases indicates that the government did not file any FISA notices in those cases.

The government's failure to provide notice of the FAA in each of these instances is all the more disturbing in light of its having expressly assured the Supreme Court just last year that "[i]f the government intends to use or disclose any information obtained or derived from its acquisition of a person's communications under Section 1881a in judicial or administrative proceedings against that person, it must provide advance notice of its intent to the tribunal and the person." Brief for Petitioner United States of America at 8, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) (citing 50 U.S.C. §§ 1881e(a), 1801(k), 1806(c)). This representation to suit its purposes in the Supreme Court cannot be squared with its contrary position in this case and the other PRISM-related cases that have since come to light. But this should hardly come as a surprise to anyone with more than a passing familiarity with the government's "Global War on Terror" playbook. Whenever it is good for the government to brag about its success, it speaks loudly and publicly. When a criminal defendant's constitutional rights are at stake, however, it quickly and unequivocally clams up under the guise of State Secrets.

In light of the government's prior failure to provide notice of the FAA in the above-noted cases, counsel have made more than a good-faith basis for asking the Court to compel adequate notice in this case. Moreover, as discussed in Defendant's Motion, when Senator Diane Feinstein urged the Senate to reauthorize the FAA during a December 27, 2012, floor debate, she observed that the FAA had been used in nine specific cases, including a "plot to bomb a downtown Chicago bar." (Motion, p. 3.) The government does not deny that this is a reference to Defendant's case, but if nothing else, the government should be forced to answer whether

Senator Feinstein had correct information from the intelligence agencies when she spoke from the Senate floor.

## II. Defendant Is Entitled To Notice of The Government's Intent To Rely On FAA-Derived Evidence.

In its Response the government states only that the "information it intends to use was acquired pursuant to a traditional FISA order issued under 50 U.S.C. §§ 1801-1812, as opposed to a Section 702 Order under 50 U.S.C. § 1881a (*see* Doc. #9.)" (Response, Dkt. #46, p. 2.) This response does not satisfy the government's statutory notice obligation for a number of important reasons.

First, and most significant, even though the government represents that the information it intends to use was not acquired pursuant to a "Section 702 Order,"[7] that response fails to address whether evidence was "*derived*" from the FAA. As explained in Defendant's initial pleading, if the government relied on FAA surveillance in support of any FISA application in this case, then the resulting FISA evidence is "*derived*" from FAA surveillance.[8] Accordingly, such reliance would necessarily trigger the notice provisions of 50 U.S.C. § 1881e(a) and 50 U.S.C. § 1806(c). Yet the government seeks to avoid this crucial obligation. Instead, the government's Response states only that information was "acquired" pursuant to a traditional FISA order. However,

---

[7] As the government noted in its Response, a "Section 702 Order" refers to an order under section 702 of FISA, which was enacted as part of the FAA. (Response, p. 2, n.1.)

[8] The meaning of the word "derived" is not reasonably in dispute. Evidence "derived" from an illegal wiretap is "the product of the primary evidence, or that is otherwise acquired as an indirect result of the [wiretap], up to the point at which the connection with the [wiretap] becomes 'so attenuated as to dissipate the taint.'" *Chandler v. U.S. Army*, 125 F.3d 1296, 1304 (9th Cir. 1997) (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)). Courts regard the phrase "evidence derived therefrom" as a "well established term of art" in the search context, where the exclusionary rule often bars "the fruit of the poisonous tree." *Id*. This doctrine, and the accepted meaning of "derived" evidence, pre-dates the passage of FISA. *See*, *e.g.*, *United States v. Giordano*, 416 U.S. 505, 531-32 (1974) (addressing Title III wiretap).

under § 1806(c) the government must provide notice of information "obtained or *derived*" from electronic surveillance. (emphasis added). Indeed, the government, in its Response, specifically acknowledges that the plain language of § 1806(c) requires that it provide notice of its intent to use evidence "obtained *or derived*" from FAA surveillance. (Response, p. 1) (emphasis added). As noted above, the government has previously told the Supreme Court the very same thing, conceding its obligation in no uncertain terms:

> If the government intends to use or disclose any information obtained *or derived* from its acquisition of a person's communications under Section 1881a in judicial or administrative proceedings against that person, it must provide advance notice of its intent to the tribunal and the person, whether or not the person was targeted for surveillance under Section 1881a. 50 U.S.C. 1881e(a); see 50 U.S.C. 1801(k), 1806(c). That person may then challenge the use of that information in district court by challenging the lawfulness of the Section 1881a acquisition. 50 U.S.C. 1806(e) and (f), 1881e(a).

Brief for Petitioner United States of America at 8, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) (emphasis added).[9] And, not surprisingly, the Supreme Court recognized this interpretation when it stated in its opinion just as clearly as the government conceded that "if the Government intends to use or disclose information obtained or derived from a §1881a acquisition in judicial or administrative proceedings, it must provide advance notice of its intent, and the affected person may challenge the lawfulness of the acquisition." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1154 (2013).

      Notwithstanding these clear instructions from both Congress and the Supreme Court, as well as its own recitation of the notice requirement, the government now appears to ignore the

---

[9] *See also* Government's Response and Motion for a Protective Order at 6, *United States v. Davis*, Case No. 11-60285-CR (S.D. Fl. June 19, 2013) (describing 50 U.S.C. § 1881e as "extending Section 106's procedural requirements to surveillance conducted pursuant to Sections 702 and 703 of FISA"—*i.e.*, FAA surveillance).

"*or derived*" language altogether, and there is little wonder why it—or perhaps better put, its intelligence agencies—choose to do so.

Obviously, as long as the government avoids giving notice of one of the most important ways it may have relied on FAA-derived information, the longer the constitutionality of the FAA can go unchallenged. Without notice of the kind requested here, the government could—as counsel suspect happened here and a variety of other terrorism related cases—use FAA material to obtain a traditional FISA order and then, at trial, rely solely on its FISA-obtained evidence while remaining silent about its initial FAA surveillance. A defendant would never know, and would never have the opportunity to challenge the original search. As appears it has done in other cases, the government would be able, in essence, to transform its FAA surveillance into FISA evidence—reaping the fruits of that FAA surveillance, while cleverly sidestepping any possible constitutional challenge to the FAA's warrantless wiretapping program.

The fact that the statutory notice requirement must necessarily encompass FAA-*derived* evidence is, therefore, self-evident to anyone concerned about the viability of independent judicial review of the constitutionality of Congressional legislation—an issue all the more critical in the context of the fear-mongering apocalyptic rhetoric of the "Global War on Terror" which presents itself in this case. As set forth in the prior briefing, the very absence of notice in these circumstances, counsel submit, would violate the Fourth and Fifth Amendments, in that it would deprive Defendant of an opportunity to effectively challenge the government's electronic interception of his communications under the FAA—the very issue contemplated by the

Supreme Court in *Clapper*.[10]  (Mem. in Support of Motion, Dkt. #43, p. 9-11.)  Indeed, FISA itself was written to permit defendants to challenge evidence "*derived*" from an unlawful search—commonly known as the "fruit of the poisonous tree" doctrine—in keeping with Fourth Amendment principles.  *See* 50 U.S.C. § 1806(e) (permitting a defendant to "move to suppress the evidence obtained or derived from such electronic surveillance on the grounds that . . . the information was unlawfully acquired"); S. Rep. No. 95-701, at 13 (1978), *reprinted in* 1978 U.S.C.C.A.N. 3973, 3982 ("[FISA] embodies a legislative judgment that court orders and other procedural safeguards are necessary to ensure that electronic surveillance by the U.S. government within this country conforms to the fundamental principles of the Fourth Amendment.").

Whether the government relied on FAA surveillance when it obtained its FISA order is a crucial element of giving adequate notice to criminal defendants.  The government should be compelled to provide a simple "yes" or "no" answer to the question of whether its evidence was obtained or derived from electronic surveillance conducted under the FAA.

---

[10] In *Clapper*, the Supreme Court expressly recognized that "[s]urveillance under §1881a is subject to statutory conditions, judicial authorization, congressional supervision, and compliance with the Fourth Amendment." *Clapper*, 133 S. Ct. at 1144.  While the "attorneys and human rights, labor, legal, and media organizations," were found to lack standing to challenge the FAA, the Supreme Court was equally clear that its holding "by no means insulates §1881a from judicial review" and that "if the Government intends to use or disclose information obtained or derived from a §1881a acquisition in judicial or administrative proceedings, it must provide advance notice of its intent, and the affected person may challenge the lawfulness of the acquisition." *Id*. at 1154.

9

III.     **Defendant's Request For Notice Does Not Implicate
         The Procedures Set Forth In 18 U.S.C. § 1806(f).**

In an effort to avoid answering this question, the government mischaracterizes counsel's request for notice of FAA-derived evidence as an "inventive" attempt to obtain classified information that triggers the discovery procedures contained in 18 U.S.C. § 1806(f). This, quite simply, is a misreading or mischaracterization of Defendant's Motion. No doubt, the government—or its intelligence agencies if no one else—would prefer to proceed under the *ex parte* and *in camera* procedures of § 1806(f) because, as it observes in a footnote, no court has ever granted a Defendant relief under such procedures. (Response, p. 3 n.4.) Judicial review is, of course, anathema to the stealth of intelligence agencies. But Defendant's Motion for notice does not ask the government to turn over any FISA application, affidavit, or other evidence that might trigger those procedures. Rather, Defendant seeks only to know whether any FISA order *relied on* information obtained or *derived* from an FAA order—and, accordingly, the request identifies one critical type of FAA-derived evidence for notice purposes.

As noted above, this request for notice calls for nothing more than a simple "yes" or "no" answer, implicates no classified information, and is directly controlled by the statutory notice provision. 50 U.S.C. § 1806(c). Requiring the government to state, in general, whether it relied on the FAA to obtain its FISA orders is not the same as asking it to disclose the *content* of its FISA applications. The first is part and parcel of providing adequate notice, as required by subsection 1806(c) and the Supreme Court's decision in *Clapper*. *See* 133 S. Ct. at 1154. Nothing in that decision or the statute allows the government to give secret, *ex parte* notice to the Court while withholding it from the defendant. Indeed, without proper notice, a defendant could not effectively invoke the suppression rights set out in subsections 1806(e) and (g)—because he

10

would never know of the underlying FAA surveillance. In this way, Defendant's motion for notice simply asks the government for its legal authority: that is, whether it relied on the FAA, at any stage, in obtaining the evidence it intends to use against him. The government's answer to this question is capable of a simple "yes" or "no" answer.

By contrast, the procedures in subsection 1806(f) are triggered *after* notice has been given, when a defendant seeks to obtain FISC orders or applications themselves, or the evidence obtained from such an order. *See* 50 U.S.C. 1806(f). These procedures regulate the way in which a motion to suppress brought under § 1806(e) is litigated; they do not affect a defendant's initial right to notice under § 1806(c). In order to avoid getting lost in the weeds, it is crucial to distinguish between the notice and discovery provisions in this statutory scheme. Subsection 1806(c) directs the government to "notify the aggrieved person *and* the court" of its intent to use "any information obtained or derived from an electronic surveillance of that aggrieved person." *Id.* (emphasis added). The notice requirement does not admit any exceptions, nor does it make any reference to the *ex parte* and *in camera* procedures that control discovery of surveillance materials under subsection 1806(f).

Nonetheless, the government's interest in confusing these two issues is obvious. If it can avoid giving proper notice to defendants, as it seeks to do here, the government can avoid a challenge to the FAA altogether. In the nearly five years since the FAA was enacted, the government has never once disclosed its reliance on material obtained through FAA surveillance to counsel's knowledge. It would undoubtedly prefer to maintain that record, which has rendered the government's warrantless wiretapping program all but unreviewable in the interim. In effect, the government's effort to proceed in an *in camera* and *ex parte* setting would only further insulate the FAA from judicial review, which may well be the government and its

11

intelligence agencies' desire here, but such an outcome is inconsistent with both FISA and *Clapper* and, most importantly, the entire concept of independent judicial review.

The government could satisfy its notice obligation simply by filing a document similar to its traditional FISA notice but specific to the FAA, such as:

> The United States hereby provides notice to the defendant, and to the Court, that pursuant to Title 50, United States Code, Sections 1881e(a) and 1806(c), the United States intends to offer into evidence, or otherwise use or disclose in any proceedings in the above-captioned matter, information obtained or derived from electronic surveillance conducted pursuant to Section 702 of the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. §§ 1881a.

This form would not reveal the content of any specific FISA application, order, or affidavit, but it would put an individual like Defendant on notice that the government did, in fact, rely on FAA surveillance to obtain traditional FISA evidence in this case. Similarly, if the government does not intend to use evidence obtained or *derived* from FAA surveillance against Defendant, it can resolve Defendant's Motion for notice by simply stating as much.

The government would have us believe these are extraordinarily dangerous times that require extraordinary deference to Congress and the Executive Branch. While reasonable minds might well disagree as to how dangerous these times truly are,[11] this case presents a far greater danger to the independence of the Judicial Branch than the safety of the nation. The Court should and must order a simple "yes" or "no" answer from the government regardless of the angst it might cause the intelligence agencies. Our Republic will survive the government's answer.

---

[11] *See*, *e.g.*, John Mueller & Mark G. Stewart, *Civil Liberties, Fear, and Terrorism*, Notre Dame J. of Int.& Comp. L. 282, 285 (2012) ("Unless the terrorists are able to somehow massively increase their capacities (and, if anything, attacks have declined in intensity and sophistication), the likelihood a person in the United States will perish at the hands of a terrorist is about one in 3.5 million per year.")

          Respectfully submitted,

          /s/Thomas Anthony Durkin
          **THOMAS ANTHONY DURKIN,**

          /s/Joshua G. Herman
          **JOSHUA G. HERMAN,**
          Attorneys for Defendant Adel Daoud.

**DURKIN & ROBERTS**
2446 N. Clark St.
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com
jherman@durkinroberts.com

**CERTIFICATE OF SERVICE**

  Joshua G. Herman, Attorney at Law, hereby certifies that the foregoing Defendant's Reply in Support of Motion for Notice of FISA Amendments Act Evidence Pursuant to 50 U.S.C. §§ 1881e(a), 1806(c), was served on June 21, 2013, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                /s/ Joshua G. Herman
                **JOSHUA G. HERMAN,**
                Attorney at Law.

**DURKIN & ROBERTS**
2446 N. Clark Street
Chicago, IL 60614
(312) 913-9300
jherman@durkinroberts.com