UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 12 CR 723 |
| | ) | |
| v. | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| ADEL DAOUD | ) | |

## GOVERNMENT'S CONSOLIDATED RESPONSE
## TO DEFENDANT'S PRETRIAL MOTIONS

The UNITED STATES OF AMERICA, by GARY S. SHAPIRO, United States Attorney for the Northern District of Illinois, respectfully submits its consolidated response to defendant Adel Daoud's pretrial motions (Doc. #54 through #59).[1]

## Background

On the evening of September 14, 2012, defendant was arrested after attempting to detonate what he believed to be car bomb in front of a bar in downtown Chicago, the culmination of a lengthy FBI investigation. Doc. #1 at 5-6. As a result, defendant has been charged with attempting to use a weapon of mass destruction, in violation of Title 18, United States Code, Section 2332a(a)(2)(D), and attempting to destroy a building used in interstate commerce, in violation of Title 18, United States Code, Section 844(i). Doc. #16.

---

[1] The government will separately respond to defendant's motion for disclosure of FISA-related material and to suppress FISA-derived evidence. Doc. #52.

## <u>Argument</u>

I. **Defendant's Motion for Additional Discovery Regarding the Government's Surveillance and Investigation Should Be Denied [Doc. #54]**

Defendant's discovery motion requests a wide range of material relating to the government's surveillance and investigation. Before delving into the details, however, the government should emphasize that it has provided, and will continue to provide, defendant with pretrial discovery consistent with governing discovery rules. The government has embraced a broad view of its obligations and furnished the defense with extensive discovery, including e-mails, text messages, internet activity, audio recordings, video recordings, computer evidence, recorded telephone calls, and FBI reports.

Some of defendant's requests involve material which, if it exists at all, would be classified for reasons of national security. To the extent defendant's motion deals with classified information, those matters would be addressed by the government in separate pleadings filed pursuant to CIPA (*see* Doc. #39). As such, the responses to defendant's specific requests set forth below should be taken only to refer to non-classified materials in the possession of the government.

A.     **Governing Law**

The government's obligations regarding what materials it must produce in discovery and when such production must occur are established by statute, the Federal and Local Rules of Criminal Procedure, and case law. *See, e.g.*, 18 U.S.C. §§ 3500, 3505(b); Fed. R. Crim. P. 12, 12.1, 12.2, 12.3, 16, 26.2, and 46(j); Local Crim. R. 16.1; *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). Under *Brady*, prosecutors have a duty to disclose any information in the possession of the prosecution team that is favorable to the defense and material either to guilt or punishment. 373 U.S. at 88. Information favorable to the defense includes evidence which "would tend to exculpate [the defendant] or reduce the penalty," *id.* at 87, and evidence regarding the reliability or credibility of a witness. *See Giglio*, 405 U.S. at 154–55.

Prosecutors also have an obligation to search for and disclose any relevant written or recorded statements of the defendant within the government's possession, custody, or control, upon the defendant's request, *see* Fed. R. Crim. P. 16, and any written or recorded statement of a witness called by the government to testify at a criminal proceeding, which relates to the subject matter as to which the witness has testified. *See* Jencks Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 26.2. A defendant is further entitled to

documents, objects, and reports of examination that are material to preparing the defense. Fed. R. Crim. P. 16(a)(1)(E)(i) and (1)(F)(iii).

Witness statements, however, are not subject to immediate production. Rule 16(a)(2) exempts from pretrial discovery "statements made by prospective government witnesses except as provided in [the Jencks Act]." Fed. R. Crim. P. 16(a)(2). The Jencks Act, in turn, bars the compelled disclosure of witness statements, including grand jury testimony, until after direct examination of the witness in question. *See* 18 U.S.C. § 3500(a) (no "statement or report" which "was made by a Government witness or prospective Government witness (other than the defendant)" shall be the subject of subpoena, discovery, or inspection "until said witness has testified on direct examination" at trial); *United States v. Williams*, 536 F.2d 1202, 1204 (7th Cir. 1976) (by "the express terms of 18 U.S.C. § 3500, the government could not have been required to deliver any 3500 materials to defense counsel until the witness to whom the material pertained had completed his testimony on direct examination"). One of the reasons for the Jencks Act is to protect "government files against unwarranted intrusions." *United States v. Isgro*, 974 F.2d 1091, 1095 (9th Cir. 1992).

Where defendants request wide-ranging discovery without establishing the relevance and materiality of the information sought, courts have consistently held that the government need not engage in a fishing expedition

on behalf of a defendant. *See United States v. Nixon*, 418 U.S. 683, 700 (1974). The government is "not require[d] . . . to divulge every possible shred of evidence that could conceivably benefit the defendant." *United State v. Hamilton*, 107 F.3d 499, 509 (7th Cir. 1997) (citations omitted). Under Rule 16, the government must make available to the defendant any requested items that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). For the defendant to show materiality under this rule, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant to significantly alter the quantum of proof in his favor." *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975). That is, "evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993).

### B.    Discovery Previously Tendered

Consistent with its discovery obligations, the government has produced 114 discs containing dozens of audio and video recordings and over 100,000 pages of documents, including hundreds of e-mail and other electronic communications, nearly ten thousand items relating to online activity collected from defendant's internet service providers, and over one hundred FBI reports. To facilitate the defense's review, the government provided a

detailed log cataloguing this discovery and has converted many of these documents to a load-file format, to give defense counsel the option of loading the files into a text-searchable database. Finally, the government has also returned or made available *all* material recovered from the search warrant executed on defendant's residence, including all computers or other electronic media seized pursuant to that warrant.

In a letter accompanying the government's October 17, 2012, production, the government agreed to preserve all written notes of government agents in existence at that time. The government also represented that, two weeks prior to trial, it would notify defendants of evidence that the government intends to offer pursuant to Federal Rule of Evidence 404(b), and would file a proffer pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), if applicable (*see* pg. 20 below). The government further represented that one week prior to trial, it would provide materials required by the Jencks Act (§ 3500) and *Giglio v. United States*. And, the government represented that, to the extent that it obtained any additional evidence that must be disclosed per *Brady v. Maryland*, the government would disclose such evidence promptly. Finally, the government requested reciprocal discovery under Rule 16.

### C. Defendant's Specific Requests

### 1. All Statements of Defendant, Including Recorded Face-to-Face Conversations, Telephone Calls, Text Messages, Email Correspondence, Notes, or Other Accounts of Recorded Verbal or Written Interactions

Defendant asserts he needs all of his written or recorded statements, but Rule 16(a)(1)(B), the governing provision, only entitles him to all "*relevant*, recorded statements of the defendant in the possession of the government." Fed. R. Crim. P. 16(a)(1)(B) (emphasis added). That said, the government has interpreted relevance broadly and taken account of the anticipated entrapment defense in providing defendant's statements. As a result, many of defendant's e-mails, phone calls, text messages, and other internet activity in the discovery have little or no relevance to this case. The government also has produced all recorded face-to-face conversations with defendant in the government's possession, returned all computers seized pursuant to the search warrant, and made available to the defense any forensic copies of those computers.

If the government identifies and obtains any additional relevant statements of defendant, as contemplated by Rule 16, it will produce them consistent with its discovery obligations, or will address them promptly with the Court. As such, the defendant's request should be denied as moot. *See, e.g.*, *United States v. Edmond*, No. 11 CR 378, 2011 WL 6010261, at *1 (N.D.

Ill. Nov. 30, 2011) (Manning, J.) ("Given the government's assurances that it will comply with its obligations under *Brady* and *Giglio*, [the defendant's] request must be denied as moot") (citing *United States v. Silesia Flavorings, Inc.*, No. 03 CR 851, 2004 WL 419904, at *6 (N.D. Ill. Mar. 1, 2004) (Pallmeyer, J.)); *United States v. Carman*, No. 02 CR 464, 2004 WL 1638232, at *1 (N.D. Ill. July 16, 2004) (Guzman, J.) (defense motion for discovery mooted by government's response acknowledging its disclosure obligations).

> **2.    All Materials Related to Government Monitoring of Statements, Electronic or Otherwise, by Defendant as Well as his Computer Activity**

The government has applied the same discovery standards to defendant's electronic statements and computer activity as it has to any other evidence collected in this case. Indeed, the government has furnished to the defense nearly ten thousand separate documents relating to internet activity at defendant's residence. Moreover, it has returned all computer media seized from defendant's residence and made available to the defense forensic copies of any such computer media. In short, all discoverable information collected through electronic monitoring has either been disclosed to the defense or has been or will be brought to the attention of the Court.

To the extent defendant's demand for "all materials related to government monitoring" encompasses material not discoverable under Rule 16, *Brady*, *Giglio*, or the Jencks Act, his request is overbroad. The prospect of

an entrapment defense does not override the discovery rules, entitling a defendant to limitless "open file" discovery. *See generally United States v. Reyes*, 270 F.3d 1158, 1166 (7th Cir. 2001) ("*Brady* does not require a prosecutor to divulge every scintilla of evidence that might conceivably inure to a defendant's benefit."). The government will adhere to its obligations and provide defendant with materials under Rule 16, *Brady*, and *Giglio*.

### 3. All Materials Related to Any Contact OCE1, OCE2, and UC Had With Defendant, as well as Their Identities and Biographical Information

As part of the investigation, defendant communicated electronically with two online undercover FBI employees (referred to as "OCE1" and "OCE2" in the complaint affidavit and in defendant's motion). Defendant also communicated electronically and in-person with an undercover FBI Special Agent (referred to as the "UCE"). All electronic communications and in-person recordings defendant had with these individuals have been given to the defense.

Defendant demands further information related to any persons who have had contact with defendant, including: true or correct name, government agency affiliation, resume, curriculum vitae, any criminal record, and contact information. Doc. #54 at 6. But the rules of discovery do not call for the production of this information, especially based on a defendant's mere assertion that he needs it to "evaluat[e]" the entrapment defense. *Id.* Of

course, if any of these persons is called as witnesses at trial, the government will provide to the defense or present to the Court any *Giglio* material.

4. **All Materials Relative to the Background, Training, or Experience of Any Government Agent Who Contact Defendant, Including OCE1, OCE2, and UCE**

As in any criminal case involving law enforcement, this information is not discoverable under Rule 16(a)(2) and defendant has made no specific showing why he should see this material.

If the undercover FBI employees (OCE1 and OCE2), the undercover agent (UCE), or any other person working on behalf of the government testifies at trial, the government will honor its discovery obligations regarding witnesses. Specifically, the government would provide Jencks and *Giglio* information; and if these witnesses were called upon to offer an expert opinion, the government would provide any materials relevant to such a request, including the witness's background and experience.

5. **All Agency Documents, Notes, Memos, and Forms Related to the Implementation of the Attorney General's Guidelines on FBI Undercover Operations**

Citing the Attorney General's Guidelines on FBI Undercover Operations, defendant seeks disclosure of various internal reports and memoranda relating to the approval and implementation of the undercover investigation. Doc. #54 at 8-9. For example, defendant requests the application for approval of the undercover investigation; any letter from the

federal prosecutor concurring with the investigation; the written approval of the undercover investigation; the expense associated with the investigation; notes of meetings about the investigation; any directives regarding entrapment; memoranda regarding a review of the conduct of undercover employees; and memoranda regarding the legal sufficiency of the evidence. Doc. #54 at 8-9. Defendant claims these internal documents will be helpful in "deconstructing" why the FBI purportedly "manipulate[d]" the defendant instead of "discouraging him from engaging in the offense." Doc. #54 at 10.

Each item from defendant's list, to the extent it exists, involves internal memoranda or notes maintained by the United States Attorney's Office or the FBI. Apart from the reports already disclosed (many of which are responsive to defendant's laundry-list of requests) and any Jencks material that the government will disclose before trial, there exists no authority for compelling the disclosure of this type of information, though the government recognizes that if any contains *Brady* it must either disclose or present to the Court such information.

An internal assessment of the case or directives from supervisors at the FBI or the United States Attorney's Office have no bearing on the defendant's entrapment defense. It is the jury that must decide whether the government induced the crime and whether defendant lacked predisposition to engage in the conduct. *United States v. Orr*, 622 F.3d 864, 868 (7th Cir. 2010). The

11

jury's decision will not and cannot be based on the *internal* deliberations of the FBI or United State Attorney's Office. What matters are the defendant's interactions with the government agents in the investigation – all of which has been provided to defendant. The government's internal protocols and deliberations are irrelevant and defendant cannot meet the materiality requirement under Rule 16(a)(1)(E).

Indeed, some of the material requested would fall under the work product privilege, protected by Federal Rule of Criminal Procedure 16(a)(2). That rules states that Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigation or prosecuting the case."[2]

Congress designed Rule 16(a)(2)'s protection of investigative materials to extend beyond the work product privilege embodied in Federal Rule of Civil Procedure Rule 26(b)(3).[3] *United States v. Armstrong*, 517 U.S. 456, 463

---

[2] Rule 16(a)(2) begins with the general statement, "Except as Rule 16(a)(1) provides otherwise," suggesting that all materials meeting the parameters of Rule 16(a)(1)(E) must be produced. But, as thoroughly explained in *United States v. Rudolph*, 224 F.R.D. 503 (N.D. Ala. 2004), that phrase is a "scrivener's error" and was not intended by the Advisory Committee or by Congress. *Id.* at 507. *See also United States v. Fort*, 472 F.3d 1106, 1115 (9th Cir. 2007); 2 Wright & Miller: Federal Prac. & Proc. § 254, Discovery by the Defendant-Documents and Tangible Objects (4th ed. 2013).

[3] The work product privilege in the context of civil litigation was recognized in *Hickman v. Taylor*, 329 U.S. 495 (1947). *Hickman* provides the foundation for the protection of an attorney's documents and other tangible items under Federal Rule

(1996) (noting, "under Rule 16(a)(2), [a defendant] may not examine Government work product in connection with his case"); *United States v. Fort*, 472 F.3d 1106, 1115 (9th Cir. 2007) (noting that "[a]lthough the Advisory Committee used the term 'work product' to describe the materials discoverable under Rule 16(a)(2), it purposefully defined the Rule's scope differently than that of Rule 26"); *United States v. Taylor*, 608 F.Supp.2d 1263, 1269 (D.N.M. 2009) (finding information "protected by the deliberative process and work product privileges *as well as* Rule 16(a)(2)" (emphasis added)).

Rule 16(a)(2) protects not only the mental impressions, conclusions, opinions, or legal theories of the attorney for the government or other government agents, but includes all "reports, memoranda, or other internal government documents." *Fort*, 472 F.3d at 115; *see also United States v. Robinson*, 439 F.3d 777, 779-80 (8th Cir. 2006) (concluding that "reports, memoranda, or other internal government documents created by a government agent in connection with the investigation or prosecution of the case are immune from discovery"); *United States v. LiCausi*, 167 F.3d 36, 50-51 (1st Cir. 1999) (agent's anticipated testimony about his investigation of phone records to which defense also had access); *United States v. Amlani*, 111

of Civil Procedure Rule 26(b)(3), which states: "[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

F.3d 705, 713 (9th Cir. 1997) (internal FBI logs of items seized from defendant's business); *United States v. Koskerides*, 877 F.2d 1129, 1133-34 (2d Cir. 1989) (IRS agent's report containing computations of defendant's tax liability).

Requiring disclosure of law enforcement internal reports and memoranda would not only contravene Rule 16(a)(2), it would have a chilling effect on the ability of law enforcement to do its job. Such disclosure would undermine the government's ability candidly to discuss and evaluate the legal and strategic options available in an investigation without the belief that the material would ultimately be disclosed. *See, e.g., United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) (government's predecisional death penalty evaluation form and memorandum were protected by the deliberative process privilege because the court reasoned that "[d]iscovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving Notice of Intent to Seek the Death Penalty") (quoting *United States v. Frank*, 8 F. Supp. 2d 253, 284 (S.D.N.Y. 1998)); *see generally United States v. Noble*, 422 U.S. 225, 238 (1975) (describing as "vital" the role of the work product doctrine in "assuring the proper functioning of the criminal justice system").

The government will continue to review any material in its possession—including work product—to ensure that it is complying with its discovery obligations under Rule 16, *Brady*, *Giglio*, and the Jencks Act. That approach enables the government to discharge its discovery obligations while protecting work product.

6.     **All Audio, Video, or Other Recordings of the Undercover Agents Before, During, and After Meetings with Defendant**

The government has tendered the entire audio and video recordings of the undercover agent's meetings with the defendant in this case, including any recording that took place before and after the undercover agent met with the defendant.

7.     **All Notes, Minutes, and Debriefing Summaries, Etc., Prepared by OCE1, OCE2, and UCE, Including Any Supervising Personnel in Relating to Defendant**

The undercover FBI employees in this case prepared reports that reflect the substance of their communications with the defendant. Likewise, the undercover agent documented the fact of the agent's meetings with the defendant and any evidence generated therefrom. All of those reports have been produced to the defense. To the extent any notes or summaries of any testifying witness constitutes Jencks materials, prosecutors will disclose any such notes or summaries before trial.

Apart from those obligations, the notes and summaries of these individuals are not subject to disclosure for the reasons discussed under request number five.

> **8.     All Materials Related to Internal Agency Communications and Internal Agency Directives Given to OCE1, OCE2, and UCE, From Supervising Personnel, Including Materials Pertaining to Tactical and Strategic Decisions Made By Government Agents Throughout Their Contact with Defendant**

Defendant requests all "internal agency communications . . . pertaining to tactical and strategic decisions made by government agents" and any "material related to government determinations or concerns that investigative activity by defendant was protected by the First Amendment or did not constitute a completed crime." Doc. #54 at 11-12.

There exists no legal authority to compel disclosure of these materials. First, internal directives and strategic decisions have no bearing on the crime or an entrapment defense. Entrapment involves questions about a defendant's predisposition and any government inducement. To assess government inducement, a jury would evaluate not the internal deliberations of the FBI and the United States Attorney's Office, but the substance of defendant's interactions with the government agents as part of the charged crime, all of which has been disclosed. Second, for reasons discussed above,

this material, if it exists, would fall within the definition of work product, protected by Federal Rule of Criminal Procedure 16(a)(2).

Regarding the "First Amendment" materials, it remains unclear what the defense is seeking. The First Amendment of the United States Constitution does not alter the rules of evidence in criminal cases (specifically Fed. R. Evid. 401 and Fed. R. Evid. 403). In this case (as in many criminal cases), there exists relevant evidence that would qualify as protected First Amendment activity; specifically, much of the propaganda in support of violent jihad that defendant downloaded and reviewed. This activity became relevant evidence of defendant's predisposition when he attempted to detonate a bomb for ideological reasons, many of which are set forth in the materials he reviewed. Insofar as defendant seeks "governmental determinations or concerns" in the form of internal communications or memoranda, no rule of discovery compels their disclosure, to the extent they exists. To the contrary, they would be protected work product under Rule 16(a)(2).

In short, to the extent any materials responsive to this request may qualify as Rule 16, *Brady*, *Giglio*, or Jencks material, the government will disclose to the defense or present that to the Court. That is the extent of the government's obligations for any items responsive to this request.

17

### 9. All Materials Related to the Surveillance of Defendant and his Family From Undercover Agents and Informants

As the defense is aware, the government has disclosed surveillance reports and has made available to the defense video surveillance footage of defendant. Occasionally that surveillance includes observations of other individual's associated with the defendant, as reflected in the reports and in the surveillance footage. Defendant's general request for "any information relating to defendant and his family" hinges on a misapprehension of the *Brady* standard. Contrary to the assertion in defendant's motion, information about the defendant's (or his family's) attendance at a mosque or defendant's "appropriate religious activity" is not *Brady*.

Defendant also cites an affidavit from an unrelated case regarding FBI informants and the purported "methods of infiltrating mosques." Doc. #54 at 14. That affidavit has nothing to do with defendant's case. The government's discovery obligations regarding any informants remain the same as in any other criminal case, and the government has honored those obligations here.

Finally, defendant claims that "any discussions or interviews conducted with third parties at the mosque that had information about defendant, his family, or friends should . . . be produced." Rule 16 does not contemplate that the government must disclose statements a defendant made to non-governmental third persons, who then later relayed defendant's words to a

18

government agent. This demand amounts to a request for Jencks material under the guise of Rule 16: defendant wants to know what other people— potential government witnesses—have told the government about what the defendant or his family said or did. A defendant is not entitled to pretrial discovery of the statements of government witnesses, unless those statements contain *Brady*, even if they incorporate statements made by defendant to the government witness (unless defendant made the statement to a person defendant knew was a government agent and the requirements of Rule 16(a)(1)(A) are met). *See United States v. Callahan*, 534 F.2d 763, 765 (7th Cir. 1976); *see also United States v. Lakin*, 2007 WL 2479331 (S.D. Ill. 2007) (unreported).

To the extent that the government obtains additional statements that must be disclosed under Rule 16 or constitutional law, it will do so. The government is expressly allowed, by statute (18 U.S.C. § 3500) to withhold from discovery statements of government witnesses, or prospective government witnesses, until later in the proceedings.

**10. All Materials Related to Government Activities Conducted Pursuant to Warrants, Court Orders, Subpoenas, or any Other Authorizations in Connection with this Case**

The government has provided defendant with the results of the search warrant executed at his residence on September 14, 2012, as well as copies of

the search warrants and accompanying affidavits. The government has also provided defendant with the records it has received pursuant to subpoenas.

Regarding defendant's request relating to materials obtained pursuant to FISA, the government has provided defendant with a substantial amount of material obtained through court-authorized FISA surveillance. Other matters related to FISA surveillance that involve classified information would be handled through a CIPA filing or a response to defendant's motion for disclosure of FISA-related material and to suppress FISA-derived evidence (Doc. #52), which the government anticipates filing.

Finally, defendant requests disclosure of any information collected pursuant to the FISA Amendments Act, an issue that has already been the subject of pretrial motions in this case. Doc. ##42, 46, 47, and 49. The government rests on the representations in its sur-reply to defendant's motion for notice of FISA Amendments Act evidence. *See* Doc. #49.

## II. Defendant's Motion Regarding Production of 404(b) Material Should Be Denied [Doc. #55]

Defendant requests that the government be ordered to "disclose immediately" material pursuant to Fed. R. Evid. 404(b). Doc. #55, ¶1. Later in the motion, defendant requests notice of Rule 404(b) evidence forty-five days before trial. *Id.* ¶6.

Rule 404(b) requires the government to "provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial." The government acknowledges its obligation to give reasonable notice, and in a letter dated on October 17, 2012, the government agreed to provide the defendant with identification and notification of evidence it intends to introduce pursuant to Rule 404(b) two weeks prior to trial. In light of defendant's request, the government is willing to provide notice thirty days before trial.

Thirty days' notice readily complies with the rule's "reasonable notice" requirement. *See United States v. Blount*, 502 F.3d 674 (7th Cir. 2007) (one-week notice sufficient; noting other courts finding 48 hours to several days sufficient); *United States v. Dean*, No. 09 CR 446, 2010 WL 706038, at *1 (N.D. Ill. Feb. 24, 2010) (denying defendants' motion for 404(b) disclosure where government acknowledged its disclosure obligation and represented that disclosure would occur two weeks before trial); *United States v. Burns*, No. 07 CR 56, 2008 WL 4542990, at *2 (N.D. Ill. Apr. 29, 2008) (rejecting request for 404(b) evidence to be provided 45 days prior to trial; two weeks deemed sufficient); *United States v. Myrick*, No. 97-197, 1997 WL 564673, at *2 (N.D. Ill. Sept. 3, 1997) (two-week notice sufficient); *United States v. Gary*, No. 06 CR 631, 2007 WL 257639, at *5 (N.D. Ill. Jan. 25, 2007) (same).

21

Apart from the timing of the disclosure, this Court should reject defendant's efforts to require extensive disclosure of Rule 404(b) evidence. According to defendant, he is entitled to information regarding the dates, times, places, and persons involved in any other acts, the statements of each person involved, the documents involved, and the issues to which the government believes such acts to be relevant. Doc. #55, ¶1. Defendant's requests are contrary to the language of Rule 404(b), which merely requires notice of "the general nature of any such evidence," and should therefore be denied. *See e.g.*, *United States v. Stoekcer*, 920 F. Supp. 876, 882-83 (N.D. Ill. 1996); *United States v. Alex*, 791 F. Supp. 723, 728 (N.D. Ill. 1992).

Even an indictment requires no such detail to put a defendant on notice of the offenses charged, *see United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981), and, by analogy, greater disclosure should be unnecessary with respect to evidence of acts that do not form the basis of the charges against the defendant. Moreover, use of the phrase "general nature of any such evidence" in Rule 404(b) was not accidental. The Senate Judiciary Committee, which formulated the 1991 amendments to Rule 404(b), "considered and rejected a requirement that the notice satisfy the particularity requirements normally required of language used in a charging instrument .... Instead, the Committee opted for a generalized notice provision ...." Note of Advisory Committee, reprinted in Federal Criminal

22

Code and Rules. As a result, the defendants' "degree of specificity is clearly beyond the scope of disclosure required by Rule 404(b)." *United States v. Rusin*, 889 F. Supp. 1035, 1036 (N.D. Ill. 1995).

Defendant also seeks notice from the government of "other acts" evidence it intends to use during cross-examination of the defendant. This request is governed by Rule 608(b) of the Federal Rules of Evidence, not Rule 404(b). Rule 608(b), unlike Rule 404(b), does not require pretrial disclosure of the government's intention to use such evidence at trial. As a result, courts in the Seventh Circuit have ruled that "Rule 608(b) evidence need not be disclosed in advance of trial." *See, e.g.*, *Stoecker*, 920 F. Supp. at 883 (denying defendant's motion for disclosure of other acts evidence that government intended to use in cross-examination); *United States v. Hartmann*, 958 F .2d 774, 789 n. 5 (7th Cir. 1992) ("[Defendant] apparently forgets that defendants are not entitled access to Rule 608(b) materials which are not discoverable under Fed. R. Crim. P. 16."); *but see United States v. McGee*, 408 F.3d 966, 984 (7th Cir. 2005) (requiring disclosure of Rule 608(b) pretrial). Therefore, defendant's request for any other acts evidence the government expects to use during cross examination should be denied.

In light of the government's willingness to provide notice thirty days before trial, the 404(b) motion should be denied.

III.    **Defendant's Motion Regarding the Filing of a *Santiago* Proffer Should Be Denied [Doc. #56]**

Defendant asserts that two weeks is not enough time before trial for this Court to resolve issues pertaining to the government's *Santiago* proffer, should one be filed. The government proposed the two-week period not to delay the provision of information, but to permit the most efficient consideration of the issues. As the case nears trial, the government will be able to identify with greater certainty who its witnesses will be and whether any co-conspirator statements will be elicited. Moreover, the substance of any co-conspirator statements the government would use have already been disclosed to the defense.

Nevertheless, to accommodate the concerns identified in the defendant's motion, the government is willing to file its *Santiago* proffer (should one be necessary) thirty days before trial. As such, the Court should deny defendant's motion.

IV.    **Defendant's Motion for Disclosure of Expert Testimony Sixty Days Before Trial Should Be Denied [Doc. #57]**

Defendant seeks disclosure of expert testimony sixty days before trial. The government is willing to make such disclosures in this case, to the extent experts will be used, at least thirty days in advance of trial. Additionally, as required by the rule, the government will describe the expert witnesses' opinions, the bases and the reasons therefor, and the witnesses'

24

qualifications. The government hereby makes reciprocal discovery requests for disclosure of defense evidence pursuant to Fed. R. Crim. P. 16(b). Given the government's willingness to provide its disclosures thirty days before trial, the Court should deny defendant's motion.

## V. Defendant's Motion for Early Return of Trial Subpoenas Should Be Granted [Doc. #58]

Defendant has moved for this Court to allow the early return of trial subpoenas. The government does not object to defendant's motion, provided that the government enjoys the same right, and further provided that the parties timely produce any documents obtained through trial subpoenas to the other side.

## VI. Defendant's Motion for Leave to File Additional Pretrial Motions Should Be Granted [Doc. #59]

The government does not oppose this motion. The government reserves the right, however, to challenge future motions filed by defendant as untimely or waived, as appropriate.

## <u>Conclusion</u>

For these reasons, the United States respectfully requests that this Court deny those motions it opposes.

<div style="margin-left:40%">

Respectfully submitted,
GARY S. SHAPIRO
United States Attorney

By:   <u>/s/ *William E. Ridgway*</u>
WILLIAM E. RIDGWAY
BARRY JONAS
BOLLING HAXALL
Assistant United States Attorney
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
Tel: (312) 353-5000

</div>

Dated: August 26, 2013