UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 12 CR 723 |
| | ) | |
| v. | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| ADEL DAOUD | ) | |

**Government's Motion for a Protective Order Pertaining
to the Testimony of the Undercover Employee at Trial**

The United States, through its attorney, Zachary T. Fardon, United States Attorney for the Northern District of Illinois, respectfully submits this motion for a protective order authorizing the government to use certain measures to protect the identity and security of an undercover employee of the Federal Bureau of Investigation when he testifies at trial.

## Introduction

At trial the government intends to call as a witness an undercover employee who was involved in the investigation that led to the arrest and prosecution of the defendant. As part of that testimony, the government plans to show to the jury audio and video recordings of meetings between the defendant and the undercover employee.

As set forth in a declaration from Michael Steinbach, Assistant Director of the FBI's Counterterrorism Division, public disclosure of the undercover employee's true identity or physical images would jeopardize other

undercover investigations and pose a risk of danger to the undercover employee and his family.[1] As such, in order to protect the undercover employee's true identity and physical images, the government requests certain security measures, consistent with measures used in other national security cases.

## Background

On the evening of September 14, 2012, the defendant was arrested after attempting to detonate what he believed to be a car bomb in front of a bar in downtown Chicago, leading to charges for attempting to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2)(D), and attempting to damage and destroy a building by means of an explosive, in violation of 18 U.S.C. § 844(i). Doc. #16.

These charges arose out of an FBI investigation that began in May 2012, when the defendant began emailing two online covert FBI employees who had responded to messages that the defendant had posted online. In June 2012, one of the online covert employees put the defendant in touch with a "cousin," a purported operational terrorist, who in fact was an FBI undercover employee. Over the next few months, the defendant met with the

---

[1] One of these declarations is classified and has been submitted to the Court *in camera*, *ex parte*, and under seal, due to the sensitivity of the information it contains. A public version without the law enforcement sensitive information is submitted with this motion. *See* Ex. 1.

undercover employee six times, during the course of which the defendant selected, researched, and surveilled a bar in downtown Chicago to be targeted for a terrorist attack with a bomb supplied by the undercover employee.

On September 14, 2012, the defendant and the undercover employee drove to downtown Chicago to carry out the attack. That evening, the defendant parked a Jeep packed with the purported explosive in front of the bar. He then walked to an alley about one block away, where, in the presence of the undercover employee, he attempted to detonate the bomb, after which he was taken into custody by the FBI.

About one month after the defendant's arrest, while in custody, the defendant solicited the murder of the undercover employee in retaliation for his involvement in the investigation and to prevent him from testifying against the defendant, resulting in additional charges for soliciting a crime of violence, in violation of 18 U.S.C. § 373(a), murder-for-hire, in violation of 18 U.S.C. § 1958(a), and obstruction of justice, in violation of 18 U.S.C. § 1512(a)(1)(A). Doc. #79, Ex. A. That indictment has since been consolidated with the defendant's original case. Doc. #81.

## **Protective Measures Sought**

Based on the need to prevent disclosure of the undercover employee's true identity and physical images, so as to protect the safety of the undercover employee and his family and to avoid compromising other

investigations, the government respectfully requests the adoption of certain security measures for the testimony of the undercover employee at trial. The proposed measures, based on similar ones endorsed by other courts, are narrowly tailored: they assure that the identity of the undercover employee and the integrity of other undercover investigations will not be compromised without impairing the defendant's confrontation rights under the Sixth Amendment or the public's right of access. Specifically, the government requests the Court implement the following measures:

1. The undercover employee may testify at trial using his undercover pseudonym without publically disclosing his true identity;

2. The defense shall be prohibited from asking any questions seeking personal identifying information from the undercover employee;

3. The undercover employee may testify using a light disguise, such as changing his facial hair, hairstyle, or dress style;

4. Only the Court, essential courtroom personnel, the jury, the defendant and his counsel, and the government's trial team shall be present in the courtroom when the undercover employee testifies. The government shall arrange for contemporaneous CCTV video or similar broadcast of the courtroom proceeding while the undercover employee testifies, without the visual image of the undercover employee, which shall be made available for public viewing in another location in the courthouse;

5. The government shall be allowed to digitally obscure the facial images of the undercover employee on any recorded video footage played over the CCTV feed during court proceedings (no such measures are required for any video shown or offered by the government as an exhibit at trial and viewed only by the defendant, his counsel, the Court, the jury, and other essential court personnel);

6. No public disclosure of any audio recording, or similar reproduction of the voices or visual images of the undercover employee while testifying, shall be permitted;

7. The undercover employee shall be permitted to use a non-public entrance/exit to the courthouse and the courtroom (outside the presence of the jury);

8. All non-official recording devices shall be prohibited from being in the courtroom in which the undercover employee testifies as well as the courtroom in which the CCTV feed is shown during the undercover employee's testimony; and

9. The Protective Order sought by this motion may only be modified through a written superseding order issued by the Court.

A proposed protective order setting forth the above conditions is attached as Exhibit 2.

## Argument

Protecting an officer's safety and the integrity of other ongoing investigations are compelling interests that courts have long recognized in crafting security measures for witness testimony. Courts, for example, have allowed witnesses to testify under a pseudonym and behind a screen or while otherwise concealed, concluding that those measures do not interfere with the defendant's right to a fair and public trial. That precedent readily justifies the reasonable security measures proposed here.

## I. The Court Should Not Require the Disclosure of the Undercover Employee's True Identity.

The Confrontation Clause of the Sixth Amendment gives a defendant the right to confront and cross-examine the government's witnesses who testify against the defendant. *See Maryland v. Craig*, 497 U.S. 836, 846 (1990); *Smith v. Illinois*, 390 U.S. 129 (1968). The "elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier or fact—serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable and subject to rigorous adversarial testing that is the norm of Anglo-American criminal proceedings." *Craig*, 497 U.S. at 846. "The rule is that once cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied." *United States v. Falsia*, 724 F.2d 1339, 1343 (9th Cir. 1983).

The Confrontation Clause does not require that a jury hear a witness's true name, as the Supreme Court recognized in *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986), when it held that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant."

In a similar vein, the Seventh Circuit has observed that "where there is a threat to the life of the witness, the right of the defendant to have the witness's true name, address, and place of employment is not absolute." *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969) (citing *United States v. Varelli*, 407 F.2d 735 (7th Cir. 1969)); *see also Siegfriedt v. Fair*, 982 F.2d 14, 18 (1st Cir. 1992); *United States v. Contreras*, 602 F.2d 1237, 1239-40 (5th Cir. 1979) (where there was reasonable fear the disclosure of DEA agent's home address and frequented locations would endanger him and his family, no error in precluding cross-examination as to home address and other background information even though agent was "instrumental in defendant's arrest"); *United States v. Maso*, 2007 WL 3121986, *4 (11th Cir. Oct. 26, 2007) (*per curiam*) (unpublished) ("The district court did not violate [the defendant's] right to confront witnesses by allowing the [cooperating witness] to testify using a pseudonym."); *Brown v. Kuhlman*, 142 F.3d 529, 532 n.3 (2d Cir. 1998) (undercover detective who testified in closed courtroom due to safety concerns was permitted to testify using his badge number instead of his true name).

Courts, including those in the Seventh Circuit, have approved alias testimony in a variety of contexts. In *United States v. Abu Marzook et al.*, the court permitted witnesses from the Israel Security Agency to testify for the government at trial using the pseudonyms by which the defendant knew

7

them, and to testify outside the view of the public. *United States v. Abu Marzook et al.*, No. 03-cr-978, Doc. #652 at 2 (N.D. Ill. Aug. 29, 2006) (St. Eve, J.) ("[E]ven if their true identities were not classified, the safety concerns faced by these witnesses justify their use of pseudonyms when testifying.") (Attached as Ex. 2). The same measures had been used in a pretrial suppression hearing in *Abu Marzook*. *United States v. Abu Marzook et al.*, 412 F. Supp. 2d 913, 923-24 (N.D. Ill. 2006). *See also United States v. Dumeisi*, No. 03-cr-664, Doc. #83 at 1 (N.D. Ill. Jan. 2, 2004) (permitting government witness to testify under a pseudonym and appear in light disguise, and prohibiting questioning about the witness's current or former address); *United States v. El-Mezain*, 664 F.3d 467, 492 (5th Cir. 2011) (finding a "serious and clear need to protect the true identities" of the two Israel Security Agency witnesses who testified by pseudonym); *United States v. Abu Ali*, 395 F.Supp.2d 338, 344 (E.D. Va. 2005) (permitting use of pseudonyms by witnesses who testified during a pre-trial Rule 15 deposition that was conducted via satellite real-time video from Saudi Arabia to the federal courthouse in Alexandria, Virginia). More recently, similar protective measures were approved in terrorism cases in the District of Oregon and in the Middle District of Florida. *See United States v. Mohamud*, No. 10-cr-475, Doc. #341 (D. Or. Dec. 19, 2012) (Exhibit 3); *United States v. Osmakac*, No. 12-CR-45, Doc. #217 (M.D. Fla. February 12, 2014) (Exhibit 4).

The declaration from Assistant Director Steinbach lays out the compelling reasons to adopt the proposed security measures. The FBI's undercover program—which relies on a small group of personnel who are trained and certified—plays a vital role in the detection, prevention, and prosecution of national security cases. Ex. 1, ¶ 7. Members of this program are highly valuable, and the FBI has a substantial interest in their personal safety. *Id.* As such, and as further detailed in the classified materials, disclosing the undercover employee's identity would pose a risk the safety of the undercover employee and undermine the security of other undercover investigations and the integrity of the government's undercover procedures. *Id.* In light of these interests, and as further explained in the Assistant Director's declaration, the true name of the undercover employee is classified.

Balanced against these interests, the use of a pseudonym by the undercover employee will not prejudice the defendant's confrontation rights. It is the undercover employee's interactions with the defendant—not his personal identity—that makes his testimony relevant at trial. Because the defendant has only known the undercover employee by his pseudonym throughout the investigation, withholding the undercover employee's true identity will not detract from substance of the questioning on cross-examination and will not impair the defendant's Sixth Amendment right to confront the witnesses against him. The undercover employee will be present

in the courtroom, so the defendant will be able to confront him. The jury, moreover, will be able to observe and assess the undercover employee's appearance and demeanor while testifying. For the same reasons, permitting the undercover employee to testify in light disguise, such as with changes to facial hair or dress style, should be permitted and will simply serve to minimize the risk of compromising the undercover employee's true identity.

Along those same lines, the defendant should be restricted from eliciting questions that would publicly reveal any personal information about the undercover employee that would disclose the undercover employee's identity. Personal information about the undercover employee is not relevant to the charges; it is the undercover employee's contacts and communications with the defendant that matter. Public disclosure of personal information about the undercover employee, such as name and address, will compromise the undercover employee's safety and that of the undercover employee's family, as well as substantially impact other investigations. Cross-examination into completely irrelevant personal information should be prohibited.

## II. The Court Should Permit the Undercover Employee to Testify Outside the View of the Public

The Sixth Amendment guarantees the right to a public trial. That right assures the defendant receives a fair trial, promotes the integrity of the fact-

finding process, preserves public confidence in the criminal justice system, and affords the community an outlet to address crime. *Waller v. Georgia*, 467 U.S. 39, 46 (1984). But the right to a public trial is not absolute—a trial judge may implement reasonable procedures to protect other compelling interests without infringing the Sixth Amendment. *Id.* at 45.

*Waller* provided a four-factor test for determining whether courtroom closure is appropriate:

> The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

467 U.S. 39, 48 (1984). Although the government is not seeking to close the proceedings entirely during the undercover employee's testimony, these factors remain instructive in assessing the appropriateness of the government's proposal. "The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest, and . . . this interest would be seriously prejudiced by requiring the officer to testify in an open courtroom." *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997). "It is clear that the State has an 'overriding interest' in protecting the identity of its undercover officer." *Rodriguez v. Miller*, 537 F.3d 102, 110 (2d Cir. 2008). In *Brown v. Artuz*, 283 F.3d 492, 501-02 (2d Cir. 2002), the Second

11

Circuit held that protecting an undercover officer's safety satisfied the first prong of the *Waller* test and was an overriding interest likely to be prejudiced if the courtroom was open to the public during the officer's testimony. Taken together, *Ayala*, *Rodriguez*, and *Brown* instruct that protecting other investigations and ensuring a law enforcement officer's safety are both compelling government interests, in satisfaction of the first *Waller* factor.

Those interests surely exist here, as explained in the Steinbach Declaration. Ex. 1, ¶ 9. The FBI and the undercover employee have serious concerns about the disclosure of the undercover employee's identity, both by name and appearance. *Id.* As this Court is no doubt aware, given the ubiquity of smart phones, it is difficult for court security to stop a spectator from taking a photograph of court proceedings; indeed, those incidents occasionally arise, despite rules barring such conduct. The government need not "prove that particular individuals likely to attend the trial will disclose the officer's identity," *Ayala*, 131 F.3d at 72, and the risk remains that anyone in the courtroom may reveal the appearance of the undercover employee to others, which would bring danger to the undercover employee and would run the risk of jeopardizing ongoing FBI investigations.

As to the second *Waller* factor, the proposed measures are no broader than necessary to protect the government's core interests. Rather than seeking the more drastic measure of closing the courtroom completely during

the testimony of the undercover employee, the government requests moderate protections against the disclosure the true identity and image of the undercover employee, while still permitting the public to hear the testimony of the undercover employee.

Specifically, when the undercover employee testifies, the Court, essential personal, the jury, the defendant and his counsel, and the government's trial team would be present in the courtroom. The government will arrange for a contemporaneous CCTV video or similar broadcast of the courtroom proceeding, without the visual image of the undercover employee, which shall be made available for public viewing in another location in the courthouse. During the undercover employee's testimony, the government anticipates offering and publishing certain exhibits, including audio and video recordings. The government will arrange for the CCTV to broadcast to the public these exhibits, except any that depict the visual image of the undercover employee. Of course, all published exhibits, including those that depict the undercover employee, will be presented to the Court, essential personnel, the jury, the defendant and his counsel, and the government's trial team. The purpose of this proposal is to protect the undercover employee's image and identity from being revealed to the public.

These same protective measures were authorized by Judge Garr King in a recent terrorism trial in the District of Oregon. *See United States v.*

13

*Mohamed Mohamud*, No. 10-CR-475, Doc. #341 (D. Or. December 19, 2012). That case involved a defendant who attempted to detonate a car bomb at a Christmas tree lighting in Portland as part of an FBI undercover operation. Among the witnesses at trial were two FBI undercover employees who similarly faced risks. With the permission of the judge, the undercover employees testified pursuant to the same protective measures as proposed here. *See* No. 10-CR-475, Doc. #341 (Ex. 3). Likewise, similar protective measures were used for an FBI undercover employee in a recent terrorism trial in the Middle District of Florida. *See* No. 12-CR-45, Doc. #217 (Ex. 4).

In this district, Judge St. Eve implemented more strict security protections in *United States v. Abu Marzook et al.*, No. 03-cr-978, Doc. #652 at 3 (N.D. Ill. Aug. 29, 2006) (Ex. 2), during the testimony of witnesses from the Israel Security Agency. At a pretrial suppression hearing earlier in that case, the court closed the courtroom entirely during the testimony of the ISA witnesses. No CCTV footage of the testimony was broadcast. *Abu Marzook*, 412 F. Supp. 2d at 919.

Under the government's proposed protective order, the transcript of the undercover employee's testimony will be available for review by the public or press, but there will be no public disclosure of any video or photographic evidence that depicts the undercover employee. *See United States v. Trofimoff*, No. 8:00-CR-197-T-24EAJ, 2001 WL 1644230 at *3 (M.D. Fla. June

12, 2011) (blurring the image of the undercover officer was "a narrow remedy carefully tailored to protect the effectiveness of the undercover agent while allowing the media access to the full substance of the video tape"). Thus, although the public will not be in the same courtroom, the public will have full access to the trial proceeding, except for the undercover employee's facial image.

The declaration submitted in support of this motion details the government's "extremely substantial" interests here in protecting the undercover employee's safety and that of his family as well as maintaining the continued effectiveness of ongoing and future undercover investigations. *See Ayala*, 131 F.3d at 72. Thus, the Court would be justified in concluding that these interests "would be seriously prejudiced by requiring the officer to testify in an open courtroom." *Id.*

Importantly, the government's proposed protective order would prevent only the public—not the defendant or the jury—from viewing the undercover employee's face during trial testimony. This procedure will not deprive the defendant of the ability to confront the undercover employee, nor will it deprive the jury of the ability to evaluate the undercover employee's demeanor. The transcript of the undercover employee's testimony would be made available to the public in its entirety after the testimony is concluded. On balance, the moderate restriction to the public pales in comparison to the

government's interest in concealing the undercover employee's identity during his continued work as an undercover employee.

Prohibiting the public dissemination of any reproduction of the audio or video of the undercover employee's testimony will not impair any Sixth Amendment rights. Federal judicial policy prohibits the taking of in-court photographs or videotape of criminal trials, in any event. Here, a written transcript of the undercover employee's testimony will be available to the public. Only the visual images of the undercover employee on the witness stand will be obscured from the public. Thus, all the measures proposed by the government are narrowly tailored to protect the important and substantial government interests at issue.

As to the last *Waller* factor, the government requests that the Court make the following findings based on the law above and the information presented in the Steinbach declaration: (1) the reasonable measures proposed by the government are necessary to protect from disclosure the true identity of the undercover employee at trial; (2) disclosure of the undercover employee's true identity would jeopardize ongoing and future undercover investigations and the government's undercover investigative procedures; and (3) the undercover employee and the undercover employee's family face a real and substantial risk of danger if the undercover employee's true identity is disclosed.

## Conclusion

The government requests that the Court grant the government's motion for a protective order and adopt the government's proposed protective measures to assure the security and safety of the undercover employee and his family, other undercover investigations, and the government's undercover investigative procedures.

October 3, 2014  Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By: s/*William E. Ridgway*
WILLIAM E. RIDGWAY
BARRY JONAS
BOLLING W. HAXALL
Assistant U.S. Attorneys
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604

LOLITA LUKOSE
Trial Attorney
Counterterrorism Section
National Security Division, DOJ