```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
     UNITED STATES OF AMERICA,      )   No. 12 CR 723-1
 4                                  )
                    Plaintiff,      )
 5                                  )
              v.                    )   Chicago, Illinois
 6                                  )   January 30, 2015
     ADEL DAOUD,                    )   10:20 a.m.
 7                                  )
                    Defendant.      )   Status Hearing
 8

 9                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE SHARON JOHNSON COLEMAN
10

11   APPEARANCES:

12   For the Government:     HON. ZACHARY T. FARDON
                             United States Attorney, by
13                           MR. WILLIAM RIDGWAY
                             MR. BARRY JONAS
14                           MR. BOLLING W. HAXALL,
                             Assistant United States Attorneys
15                           219 South Dearborn Street
                             Suite 500
16                           Chicago, Illinois  60604

17
     For the Defendant:      DURKIN & ROBERTS
18                           2446 North Clark Street
                             Chicago, Illinois  60614
19                           BY:  MR. THOMAS A. DURKIN
                                  MR. JOSHUA G. HERMAN
20

21

22

23         TRACEY DANA McCULLOUGH, CSR, RPR
                 Official Court Reporter
24            219 South Dearborn Street
                     Room 1426
25            Chicago, Illinois  60604
                   (312) 435-5570
```

```
 1              THE CLERK:  12 CR 723, USA versus Adel Daoud.
 2              THE COURT:  All right.  Government, start with you.
 3              MR. RIDGWAY:  Good morning, Your Honor.  William
 4   Ridgway, Barry Jonas, and Bolling Haxall on behalf of the
 5   United States.
 6              THE COURT:  All right.  Good morning.
 7              MR. JONAS:  Good morning, Your Honor.
 8              MR. DURKIN:  Good morning, Judge.  Tom Durkin, Josh
 9   Herman, and Robin Waters on behalf of Mr. Daoud, who's present.
10              THE COURT:  Good morning, sir.  How are you?
11              DEFENDANT DAOUD:  Good morning.  How are you?
12              THE COURT:  Okay.  Where are we in the various -- why
13   don't you start, Mr. Durkin.  Why don't you tell me where you
14   are in some of your filings.
15              MR. DURKIN:  Well, and maybe Mr. Herman can do it
16   better.
17              MR. HERMAN:  Sure.
18              THE COURT:  Either one.
19              MR. HERMAN:  Well, we need a chance to touch base
20   with the government and to kind of go down the checklist of --
21   or at least both acknowledge that there are a number of
22   pleadings that have been filed and we think are fully briefed.
23   We have a Franks motion.  The motion for disclosure under
24   Executive Order 12 triple 3.  The government has filed a motion
25   for protective order, which we responded to and also filed our
```

1  own motion for disclosure of -- under protected circumstances
2  regarding the UC's identity and everything that applies to.  I
3  think as we noted also in one of our pleadings, I forget which
4  one, we have filed a petition for writ of certiorari with the
5  Supreme Court from the Seventh Circuit's --
6              THE COURT:  Which, which -- although the Court notes
7  that as of earlier this month, that most of the briefs that
8  had -- or motions that had been filed in this Court were fully
9  briefed.
10             MR. HERMAN:  That's correct.
11             THE COURT:  The Court also noted that there was that
12 petition.  And just to make sure that depending on what
13 happened it could affect schedules here.  Hopefully it won't.
14 But, Mr. Durkin, anything to add with that?
15             MR. DURKIN:  If -- I think I was quoted the other day
16 of saying, you know, that we have about a chance of pigs flying
17 but ...
18             THE COURT:  Well, I'm not getting rid of my trial
19 date.
20             MR. DURKIN:  I might, I might have been a little --
21             THE COURT:  But you never know.
22             MR. DURKIN:  It might not be that bad.
23             THE COURT:  You never know.
24             MR. DURKIN:  But you never know.  Hope springs
25 eternal.

1    THE COURT:  Well, what this Court's plan would be is
2  to go ahead and rule on the motions as soon as possible.  The
3  trial date stands at this point, and hopefully will stand if
4  that's the way we're going, to trial.  And as soon as we get --
5  the one, the one motion, which is about the -- pertaining to
6  the -- it's No. 123, the government's motion for an order about
7  the -- protecting the identity.  Is that something you all are
8  going to work out, or is it some -- I mean, I've been doing my
9  own research and informal polling among my colleagues and
10 what's been done in the past.  So the question is either you
11 all can work something out, or the Court will figure it out for
12 myself.
13     MR. DURKIN:  I mean, we had -- in our pleading we had
14 I thought kind of pretty much implicitly, if not expressly
15 acknowledged that there are a couple things that bothered us
16 less and didn't seem to be as problematic.  As Mr. Herman just
17 mentioned to me, it's kind of interrelated to our request for
18 information about him.
19     THE COURT:  Okay.
20     MR. DURKIN:  I continue to have a problem, concern,
21 whatever you want to call it about the fact that we have not
22 seen any classified evidence in this case.  And I don't know
23 how that works.
24     THE COURT:  I don't know how that's related to that
25 motion, but ...

1        MR. DURKIN:  Well, because it's -- I believe -- and
2   maybe Mr. Herman can correct me, but I thought we had asked for
3   some information about this person in a secure setting.  And I
4   think we reference that in No. 144.
5        MR. HERMAN:  And there was an under seal as well in
6   145.
7        THE COURT:  All right.  The Court is going to --
8        MR. DURKIN:  But I mean, if you understand what I --
9   could I just interrupt you for a second.
10       THE COURT:  Sure.
11       MR. DURKIN:  There's just some of this that -- and I
12  don't want to have to argue -- I don't want to try to argue the
13  whole thing today, but --
14       THE COURT:  Well --
15       MR. DURKIN:  -- it seems to me there's some, there's
16  some easier solutions here with the SCIF that could at least
17  kind of satisfy our -- what we feel is our obligation, you
18  know, under the confrontation clause to at least be able to get
19  some information.  I mean, I don't -- I take the government --
20  or I take the prosecutors at their word, but I don't take the
21  government at its word anymore, and that's the problem that we
22  have.  I just don't know.  There just seems to me to be certain
23  things we ought to be able to just get an answer to without it
24  becoming a national crisis.
25       And I'm not trying to argue it.  I'm just -- it seems

1  to me there are some -- you know, in terms of resolution -- in
2  answer to your question, I think we could get some things
3  resolved if we could learn some things even if it's classified
4  to just say, okay. Fine. I get it now. That's the problem I
5  have.
6      THE COURT: Would you like to respond, Mr. Ridgway?
7  Either one. Anyone. Any three.
8      MR. JONAS: Judge, narrowing the issue just to this
9  one witness, because I think that's what's on the table at the
10 moment because I understand Mr. Durkin has made similar
11 arguments, requests regarding other information in this case.
12 Just narrowing it down to this one witness, his name is
13 classified in conjunction with his work. And it's done so for
14 a legitimate reason. It's to protect his safety, his life, and
15 the lives of his family members. I can't say a lot about that
16 because part of that is in our classified filing.
17      But what the government is asking for is not
18 unprecedented. It's been done many times with similar situated
19 witnesses. We're not talking about informants or confidential
20 human sources as are in the cases cited by the defendant where
21 names are disclosed to defense counsel. In those situations
22 those individuals are likely to have a lot of baggage and
23 there's a lot of Giglio material out there, and there's a lot
24 of research that the defense could do on the background of
25 witnesses like that.

1              Here where you have undercover law enforcement
2    agents, you're not going to find that sort of material.  So on
3    balance what the defense would get by having his name is, is
4    nothing.  Coupled with the fact that the government has the
5    obligation, which we take seriously and which we do in every
6    case of doing of our own research through their personnel file,
7    making requests to the FBI to search what's in their personnel
8    files or anything there that we need to disclose.  If there is,
9    we will deal with that.
10             So in totality when you take the fact that what they
11   do know about the witness, the subject matter of his testimony,
12   his interactions with the defendant, all that that's the heart
13   of his testimony, on top of the fact that he's a known law
14   enforcement officer, that's not going to a secret.  The jury
15   will know that.  That places the witness in the proper context
16   in terms of biases.  That gives the defense more than enough
17   ammunition to cross-examine the witness.
18             Any additional information they hope to get by having
19   his name is at best generally minimal if it even exists.  And
20   when balanced against the danger to the witness and his family,
21   it's not -- it's outweighed by that danger and the national
22   security concerns.  And I just want to put out just that's an
23   argument that the government has made in many cases and courts
24   have gone along with it.  But in particular in this case you
25   have to remember the defendant did try to have that witness

1  killed, so there is a real danger here.
2              THE COURT:  The allegations are there that the --
3              MR. JONAS:  The allegations are, yes.  Yes, Judge.
4  So in totality of the circumstances the need for the
5  defendant -- in this case the need for the defense counsel to
6  have his name is outweighed by the need to protect the witness.
7              MR. DURKIN:  But the only problem I have -- and I
8  don't want to belabor this because I think you understand where
9  we're coming from, but what's happening is is that the
10 government acknowledges that we have security clearances.  The
11 government acknowledges that there are procedures in place that
12 we could get classified information in a secured setting that
13 we couldn't even give to the defendant.  Okay.  That's not
14 uncommon.  And yet they're claiming that it's really a need to
15 know issue.  And it's -- what I have a problem with is again,
16 not these guys, the prosecutors, but whoever in the government
17 is making a decision that we don't have a need to know, because
18 that just undermines the whole process it seems to me.
19             And it seems to me we have to beg all the time just
20 for something basic like that.  Because what if, for example,
21 you know, this guy's name was G. Gordon Liddy, for example.
22 And, you know, now, and the government will say, oh, well,
23 we -- that would be obviously Brady.  We'd have to turn over
24 that he was a bad guy.  But it seems to me, we, at least the
25 lawyers under the 6th Amendment or the confrontation clause,

1  ought to have the ability to at least find out whether, you
2  know, this guy has been charged with domestic violence or
3  whatever.  Maybe they don't know that.  I don't know.  But I
4  mean, it's not like --
5           THE COURT:  Excuse me, Mr. Durkin.  It almost sounds
6  to this Court as if you're trying to reargue the issue that was
7  before the Seventh Circuit that they've ruled on and --
8           MR. DURKIN:  No.  No.  No.  This has nothing to do
9  with FISA.  This is just --
10          THE COURT:  I know, but it's a similar basis, though.
11 It's almost the exact same argument that is now -- you know,
12 that you're trying to get the Supreme Court to look at.  I
13 mean, I appreciate the argument.  I do.  But --
14          MR. DURKIN:  But, but this is in the context of a
15 witness who's going to testify.  I mean, it's one thing to have
16 that in the context of a motion to suppress.  But this is a
17 direct confrontation clause issue.  And I just don't want to --
18 I'm not going to give it up.  I'm not going to go away in the
19 night just because they say, you know, you were -- because
20 three people on the Seventh Circuit, one in particular decides
21 that, you know, that's just the way life is.  That's a
22 particular ruling in a particular context.  This is a different
23 context I'd suggest, and more, more pressing.
24          But -- and again, I understand that you get it.  But
25 what I'm -- all I can say is I find something troubling about

the fact. This is maybe the sixth or seventh national security case I've been involved in, including the 911 case and Military Commission. I have never had a case where I have not had classified evidence revealed to me. Now, maybe it's just because miraculously in this case everything got unclassified. But there's something really weird to me as to why this is the first case that I've ever had where we don't have any classified evidence. I just don't get it. I don't understand it, and I don't trust the system.

And it's not like I -- again, I'm not going to belabor the point. I trust these guys. I like these guys. I get along with them. It's not a question of them. It's a question of the double government, for want of another argument. And that's all I'm going to say.

THE COURT: All right. Anything further?

MR. JONAS: Just, Judge, that there is an issue of the need to know. And the government in these situations very often will look at the material and, as Your Honor knows, will submit it to the Court if it's a close question through a CIPA motion, as we have here. And if there's not a need to know, if there's nothing there that's substantive and tangible that the defense is entitled to, then they're not entitled to need to know. There's nothing to turn over in balance because it's classified material.

Here Mr. Durkin wants to know his name just to see

1  what can I find on this guy.  It's not a tangible thing that
2  we're talking about turning over.  It's a let me know this and
3  then I can look and do my own investigation and see maybe
4  there's something out there.  I think that's a big distinction
5  here between some of the other material that he's asked for.
6  So with that we rest on our papers for the remainder of our
7  argument.
8              THE COURT:  Well, the matter is fully briefed.
9              MR. DURKIN:  That's fine.
10             THE COURT:  And the Court's going to go ahead and
11 rule on that one for sure while we're trying to find out what's
12 going to happen in D.C.  And any of the other ones now that
13 they're fully briefed that the Court feels I can go ahead and
14 rule on without it being something that may have to be
15 revisited.  All right.  I think this one --
16             MR. DURKIN:  Well, here's -- the only thing I would
17 ask, if there's not any urgency to the rulings, I don't see any
18 time wise ruling.  I think I'd prefer that you wait till the
19 issue is decided in the Supreme Court, because I -- what I -- I
20 don't want the Supreme Court to order them to respond and then
21 somehow it affects our petition.
22             MR. RIDGWAY:  Your Honor, we would hope that you
23 could rule on these if only because there may be other things
24 that we need to litigate based on Your Honor's ruling, and we'd
25 like to make sure we keep the trial date in this case.  We

1  think it is a relatively remote chance that the Supreme Court's
2  going to grant cert.  And we're willing to take the risk in
3  this case.  We know that could affect this case.  We're willing
4  to take that risk and proceed in this case with a -- you know,
5  the Seventh Circuit's ruling as it stands.  And so we worry
6  that if we wait -- and frankly, I don't think the Court is
7  necessarily is going to wait.  I don't think we're going to
8  know before that July trial date, or at least I think there's
9  some chance we will not know.  And we will have to proceed to
10 trial with those matters pending.
11             THE COURT:  I don't think any of us can predict what
12 they're going to do --
13             MR. RIDGWAY:  Fair enough.
14             THE COURT:  -- based on what I'm seeing.  Who knows.
15             MR. DURKIN:  As long as what I just heard him say
16 stands then.  If they're going to just let that issue stand on
17 the record as it is today, then I don't have any problem with
18 that.  But, you know, I don't want to find out that somehow,
19 you know, because of something else that happened after the
20 Seventh Circuit that because of a ruling of yours, therefore,
21 it's -- you know, now that's part of -- or they want to make
22 that part of the record.  If that's -- if he can say --
23             THE COURT:  Oh, is that what you're saying that
24 the --
25             MR. DURKIN:  That's all I'm saying.

1    THE COURT:  Oh.
2    MR. RIDGWAY:  Yes.  No.  Yes, that's correct.
3    THE COURT:  Whatever ruling I make is not going to
4 all of a sudden be part of the record for the Supreme Court
5 look at.
6    MR. DURKIN:  Yes.  Yes.
7    THE COURT:  With that understanding, it would help
8 the Court considering the other cases I have to go ahead and
9 deal with some of the rulings here and allow you --
10   MR. DURKIN:  That's fine.
11   THE COURT:  -- to do your --
12   MR. DURKIN:  As long as we have that understanding,
13 that's fine.
14   THE COURT:  So I'll look at everything that's been
15 fully briefed, and I will determine whether -- and I think at
16 least in a few cases like I've said, it's appropriate for this
17 Court to go ahead and rule so you all can have an idea of where
18 you're going if the case stays on track.
19   MR. DURKIN:  That's fine.
20   THE COURT:  Which I hope it does.
21   MR. DURKIN:  That's fine.
22   THE COURT:  Anything else from the government?
23   MR. RIDGWAY:  No, Your Honor.
24   THE COURT:  All right.  Anything else, Mr. Durkin?
25   MR. DURKIN:  Would it be okay if I submitted a --

1           THE COURT:  Interim?
2           MR. DURKIN:  -- a request for the transcript of today
3    just so I have it?
4           THE COURT:  Sure.  Yes.
5           MR. DURKIN:  Okay.
6           THE COURT:  That's fine.  Anything else?  One second.
7    Anything else?
8           MR. RIDGWAY:  No.
9           THE COURT:  All right.  And again, the Court will
10   look at everything that has been filed.  And if I believe it's
11   something that's -- we can go ahead and rule on that will help
12   keep things going, I will.  If for some reason it doesn't
13   really serve any real purpose to go ahead and rule at this
14   point based on the -- us waiting for the Supreme Court --
15          MR. DURKIN:  Or if you want to always have oral
16   argument like we did before, I'd be happy to come back.
17          THE COURT:  Well, we basically just had oral argument
18   on one.
19          MR. DURKIN:  I'm just teasing.
20          THE COURT:  So but I will, I will have you come back
21   if I feel I need to hear something more.
22          MR. DURKIN:  That's fine.
23          THE COURT:  All right.  Thank you very much.
24          MR. JONAS:  Thank you, Judge.
25          MR. DURKIN:  Thanks, Judge.

```
 1                THE COURT:  And we've already excluded everything
 2   until the trial date?
 3                MR. RIDGWAY:  I think we have, Your Honor, yes.
 4                THE COURT:  So we're all good.  All right.  Again, I
 5   thank you, Mr. Daoud, for being here, sir, Senior.
 6                MR. DURKIN:  Mr. Herman made a really good point.
 7   Maybe we ought to just put a status in like 60 days or 45 days
 8   or something just to make sure.
 9                THE COURT:  That's fine.  We can do a 60-day status.
10                MR. HERMAN:  There may be more Snowden news to --
11                MR. DURKIN:  We could always cancel if we had to.
12                MR. RIDGWAY:  I'm hoping there will be no more
13   motions.
14                THE COURT:  60 days -- see, that's the one problem
15   with this, guys.  The landscape changes every week here for
16   somebody, so ...
17                MR. RIDGWAY:  That seems to be the case.
18                THE CLERK:  April 3rd.
19                THE COURT:  How is that before we get into times?
20   Let's find out how April 3rd is.
21                MR. RIDGWAY:  That works for me.
22                THE CLERK:  It's a Friday.  9:30.
23                MR. DURKIN:  Yes, could we -- could we make it 10?  I
24   have an 11 -- no, I'm sorry.  9:30 is fine.  This is at 10.  We
25   have something in front of Judge Dow, but that will work fine.
```

```
1              THE COURT:  All right.
2              MR. RIDGWAY:  Thank you, Your Honor.
3              THE COURT:  Thank you very much.
4              MR. DURKIN:  Thank you.
5                        CERTIFICATE
6         I HEREBY CERTIFY that the foregoing is a true,
7   correct and complete transcript of the proceedings had at the
8   hearing of the aforementioned cause on the day and date hereof.
9
10  /s/TRACEY D. McCULLOUGH              February 9, 2015
11  Official Court Reporter                    Date
    United States District Court
12  Northern District of Illinois
    Eastern Division
```