IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CR 723 |
| | ) | Judge Sharon Johnson Coleman |
| ADEL DAOUD, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTIONS *IN LIMINE*

Defendant **ADEL DAOUD**, by his attorneys, **THOMAS ANTHONY DURKIN**, **JANIS D. ROBERTS**, and **JOSHUA G. HERMAN**, pursuant to the Due Process and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the United States, respectfully submits these Motions *in Limine*. For the reasons stated below, the defendant moves this Court to: (1) enter an order precluding the prosecutors from eliciting any evidence testimony at trial regarding the arrest and prosecution of Abdella Tounisi; (2) order the disclosure of the specific portions of transcripts and online communications that the prosecutors intend to use at least three weeks before trial; and, (3) order the parties to exchange witness lists at least two weeks before trial. Additionally, Defendant respectfully requests leave to file additional motions *in limine*, as may be required.

### I. Background.

On September 14, 2012, Defendant was arrested for attempting to detonate a fake car bomb in downtown Chicago. The arrest was the culmination of a months-long, intense, and highly orchestrated FBI sting operation that targeted this immature, impressionable, and naïve teenager. This sting involved extensive online communications between Defendant and two online undercover employees (the "OCEs"). Also involved was an undercover FBI agent (the

"UCE"), with whom Defendant communicated online and also met in person on six occasions, including on September 14, 2012, when the UCE supplied Defendant with the fake bomb, dispelled the doubts Defendant had even in the final minutes, and stood next to him when Defendant pressed the trigger to detonate the fake bomb.

During these communications and meetings, the OCEs and the UCE focused on Defendant's genuine love for his religion, however misinformed as it may have been. For example, the UCE conveyed to Defendant the encouragement from the UCE's fictional "sheikh" to go forward with the plot after Defendant told the UCE that his own imam offered compelling arguments against violence, which swayed Defendant. *See* Criminal Complaint, ¶¶40-41.

Following his arrest, on September 20, 2012, Defendant was indicted for attempting to use a weapon of mass destruction in violation of 18 U.S.C. §2332a(a)(2)(D) and attempting to destroy a building used in interstate commerce, in violation of 18 U.S.C. §844(i).

After being charged, Defendant was housed in the Kankakee County Jail. Defendant had a number of cellmates in a short period of time after his arrival at jail. Then, in approximately late October 2012, he found himself sharing a room with a hulking gangbanger with an extensive criminal record. As it turns out, this gangbanger was housed in Kankakee while awaiting trial in Cook County Circuit Court on thirty-four (34) counts of serious felonies ranging from home invasion, armed robbery, armed habitual criminal, and aggravated unlawful use of a weapon. Needless to say, the gangbanger was an imposing figure, especially for the diminutive teenage Defendant, who had never before been in jail, much less arrested. In November 2012 a series of jail-cell conversations occurred, a number of which were recorded. At the same time he was pressing Defendant to talk, the gangbanger was meeting with FBI agents and an AUSA, from

whom he requested help on his pending state court charges, as well as assistance to reduce his bond so, as he told the agents and prosecutor, he could be home for Christmas. As a result of these conversations, the prosecutors allege that Defendant placed a phone call that capped a convoluted murder-for-hire plot aimed at the UCE.

On August 29, 2013, Defendant was indicted with solicitation of murder in violation of 18 U.S.C. § 373(a) (Count One); murder for hire in violation of 18 U.S.C. § 1958(a) (Count Two); and witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A). The gangbanger, on information and belief, has been out on bond for some time now while his case remains pending.

II. **Motions *in Limine*.**

    A. **Motion to Preclude Testimony and Evidence Regarding the Arrest and Prosecution of Abdella Tounisi.**

The Criminal Complaint references a number of individuals with whom Defendant interacted prior to his arrest on September 14, 2012. Most of these individuals were Defendant's high school friends and peers from his mosque. One of these individuals is described in the Criminal Complaint as "Individual C." *See*, *e.g.*, Criminal Complaint ¶¶12(d), 38, 39(a), (c), 40, and 41. Individual C is a former high school classmate of Defendant's named Abdella Ahmad Tounisi. It is anticipated that there will be evidence and testimony regarding Tounisi at trial.

On April 19, 2013, Tounisi was arrested at O'Hare Airport as he prepared to travel to Istanbul, Turkey. The government contends that Tounisi was planning to make his way from Turkey to Syria, allegedly to join Jabhat al-Nusrah, a Designated Foreign Terrorist Organization and purported alias of al-Qaida in Iraq. On May 16, 2013, Tounisi was indicted with attempting to provide material support to Jabhat al-Nusrah, in violation of 18 U.S.C. §2339B(a)(1) and for making false statements to the Customs and Border Patrol about the purpose of his travel, in

violation of 18 U.S.C. §1001(a)(2).  The indictment alleges that Tounisi's attempt to provide material support began "in or around January 2013" and continued until April 19, 2013, the date of his arrest. (Tounisi Indictment, Count One, ¶2).  Tounisi's case is pending before the Honorable Samuel Der-Yeghiayan.  According to the case docket, Tounisi is set to change his plea to guilty on June 30, 2015.  (Case No. 13CR328, Dkt. #58).

The prosecutors should be precluded from eliciting any testimony or evidence regarding Tounisi's arrest and prosecution for attempting to provide material support to Jabhat al-Nusrah.[1] As alleged in his indictment, Tounisi's attempt to provide material support began sometime in January 2013.  At this time Defendant was in custody.  Moreover, there are no allegations—nor could there be—that Defendant played any role in Tounisi's independent and allegedly extensive internet activity, research, and communications with an FBI Online Undercover Employee concerning travel to Syria so he could join Jabhat al-Nusrah.  Tounisi's arrest and subsequent prosecution therefore have no relevance to the charges that will be before the jury, and should be precluded under Rule 401.  And to the extent that there is even the slightest scintilla of relevance—which clearly there is not—it is undoubtedly substantially outweighed by its unfair prejudice and the risk of misleading the jury, and must be precluded under Rule 403.

    **B. Order the Prosecutors to Identify Portions of Transcripts and Online Communications They Intend to Introduce at Least Three Weeks Prior to Trial.**

During the lengthy pretrial discovery period, the prosecutors have tendered extensive and voluminous discovery material.  For example, in June 2013, the prosecutors made several productions for review in the Concordance document review system.  All said and done, by counsel's rough estimate, these productions consisted of nearly 18,000 separate records totaling

---

[1] Defendant reserves the right to revisit this issue should Tounisi be called as a witness at his trial.

well over 117,000 pages. Many of these records include email exchanges, online chats, and other electronic communications. In addition to these voluminous records, the prosecutors have also produced hours of audio and video recordings, including between Defendant and the UCE, but also with others such as the gangbanger from the Kankakee County jail. Additionally, the prosecutors have produced a number of forensic copies and reports of electronic media devices, including cell phones, GPS devices, a Kindle, computers, and other media. Needless to say, this is an overwhelming amount of substantively and technically complex discovery.

If it has not done so already, the prosecutors will undoubtedly cull this universe and select specific communications, transcripts, audio recordings, and video recordings that they will cut into shorter clips to be introduced at trial. To protect Defendant's fair trial rights and to also ensure an efficient trial, the Court should order that the prosecutors, at least three weeks before trial, identify the portions of the recordings that it intends to play at trial, as well as any specific online communications and transcripts that it intends to introduce. This will give counsel sufficient time to review the particular recordings, transcripts, and online communications so that appropriate objections may be raised with the Court in a timely manner. Additionally, ordering the prosecutors to identify the sections of the recordings and online communications will help counsel identify corresponding sections that should be appropriately admitted pursuant to the rule of completeness under Rule 106 and thus identify any evidentiary disputes prior to the introduction of the prosecutors' evidence.[2] Thus, not requiring the prosecutors to identify the

---

[2] It is counsel's experience that identifying Rule 106 issues with recorded conversations and transcripts prior to trial helps increase efficiency and streamline the trial process. Doing so helps resolve any Rule 106 disputes in advance, and thus avoid unnecessary delays after the jury has been selected. Moreover, the need to recall witnesses in Defendant's case-in-chief is reduced when more fulsome recordings are played at one time and with one witness, which also provides the jury with better context of the recordings and avoids a disjointed presentation of the evidence.

precise sections of their voluminous recordings and transcripts in advance would lead to delays at trial, unfair surprise, and be contrary to the ends of justice.

### C. Order an Exchange of Witness Lists and Exhibit Lists at Least Two Weeks Prior to Trial.

The Court should order the parties to exchange a list of witnesses, in the order they are expected to be called during trial, at least two weeks prior to trial. Doing so will ensure a speedy and efficient trial, as it will allow both sides to prepare effectively for the trial and will minimize delays during trial. As such, the Court should exercise its discretion and inherent authority to order the disclosure of witness lists prior to trial. *See United States v. Jackson*, 508 F.2d 1001 (7th Cir. 1975) (holding that the trial court has the authority to order disclose of witness lists prior to trial). *See also United States v. Richter*, 488 F.2d 170, 173-174 (9th Cir. 1973); *United States v. Baum*, 482 F.2d1325, 1331 (2d Cir. 1973); *United States v. Jordan*, 466 F.2d 99, 101 (4th Cir. 1972); *United States v. Battisti*, 486 F.2d 961 (6th Cir. 1973).

Additionally, the Court should order the prosecutors to produce their exhibit list two weeks prior to trial. As noted above, there are voluminous discovery matters in this case. Further, as of writing, the prosecutors have noticed four experts who may testify on extensive issues, including a "terrorism expert" who, according to the prosecutors, may testify on matters ranging from 14th Century Islamic texts to present-day Internet forums. To avoid unfair surprise and to help promote an efficient trial, Defendant requests production of exhibits at least two weeks before trial.

### III. The Court Should Grant Leave to File Additional Motions *in Limine*.

Lastly, Defendant respectfully requests that the Court grant leave to file additional motions *in limine* that may be required by further discovery productions or disclosures,

6

discussions with the prosecutors, and also counsel's ongoing investigation. Counsel would have no objection if such relief is reciprocal.

The prosecutors have agreed to produce Rule 404(b) material as well as material under 18 U.S.C. §3500 and *Giglio* thirty (30) days prior to trial. It is foreseeable that these productions may be extensive and complicated in substance. It is also entirely foreseeable that these disclosures will raise evidentiary concerns that will require additional motions *in limine* to be filed. Likewise, review of the prosecutors' exhibit list may raise evidentiary issues requiring additional motion practice (another reason to order production of this list two weeks before the trial starts).

Additionally, the prosecutors have provided notice of William Braniff as an expert witness who, according to the prosecutors' notice has "expertise regarding international and domestic terrorism as it relates to the global jihadist movement." The notice lists a number of books, websites, people, and terms upon which Mr. Braniff may opine. Setting aside serious foundational and relevancy issues that are difficult to deal with in the abstract, further review of Mr. Braniff's areas of expertise and prior writings, and also discussions with the prosecutors regarding the same, may require additional motions *in limine*. Accordingly, Defendant respectfully requests leave to file additional motions *in limine* as may be required.

**IV.  Conclusion.**

For the foregoing reasons, Defendant's motions *in limine* should be granted, and leave to file additional motions *in limine* should be granted.

Respectfully submitted,

/s/Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/Janis D. Roberts
**JANIS D. ROBERTS,**

/s/Joshua G. Herman
**JOSHUA G. HERMAN,**
Attorneys for Defendant Adel Daoud.

**DURKIN & ROBERTS**
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com
jdroberts@durkinroberts.com

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 1650
Chicago, IL 60604
Tel: (312) 909-0434
Fax: (312) 663-3707
jherman@joshhermanlaw.com

## CERTIFICATE OF SERVICE

      Joshua G. Herman, Attorney at Law, hereby certifies that the foregoing Defendant's Motions *in Limine* was served on June 3, 2015, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

      /s/ Joshua G. Herman
      53 W. Jackson, Blvd., Suite 1650
      Chicago, IL 60604
      Tel: (312) 909-0434
      Fax: (312) 663-3707
      jherman@joshhermanlaw.com