UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 723 |
| v. | ) | |
| | ) | Hon. Sharon Johnson Coleman |
| ADEL DAOUD | ) | |

## Government's Consolidated Motions *In Limine*

The United States of America, by and through Zachary T. Fardon, United States Attorney for the Northern District of Illinois, respectfully submits its consolidated motions *in limine*.

## Background

On the evening of September 14, 2012, the defendant was arrested after attempting to detonate what he believed to be a car bomb in front of a bar in downtown Chicago, leading to charges for attempting to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2)(D), and attempting to damage and destroy a building by means of an explosive, in violation of 18 U.S.C. § 844(i). Doc. #16.

About one month after the defendant's arrest, while in custody at the Kankakee County Jail, the defendant solicited the murder of the undercover employee in retaliation for his involvement in the investigation and to prevent him from testifying against the defendant, resulting in additional charges for soliciting a crime of violence, in violation of 18 U.S.C. § 373(a), murder-for-hire, in violation of 18 U.S.C. § 1958(a), and obstruction of justice, in violation of 18 U.S.C.

§ 1512(a)(1)(A). Doc. #79, Ex. A. That indictment has since been consolidated with the defendant's original case. Doc. #81.

## Argument

### I. Motion *in Limine* to Admit the Recorded Conversations Between the Defendant and a Confidential Informant.

In November 2012, the government received information from an inmate at the Kankakee County Jail (the "CI") that the defendant was seeking to have a federal agent murdered. The defendant and the CI were placed in a jail cell with audio recording equipment installed, which captured a number of conversations in which the defendant sought assistance from the CI to have the undercover employee murdered in exchange for money. At trial, the government intends to play portions of the defendant's recorded conversations with the CI.

As an initial matter, the defendant's own statements are admissible as a non-hearsay admission of a party opponent. Fed. R. Evid. 801(d)(1)(A); *United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006). The CI's statements will not be offered for their truth, but to instead provide context for the defendant's admissions. *See, e.g., United States v. Wright*, 722 F.3d 1064, 1067 (7th Cir. 2013), *United States v. Simmons*, 582 F.3d 730, 736 (7th Cir. 2009).

To give an example, on November 29, 2012, the CI informed the defendant that the undercover employee had been murdered as the defendant had requested. The following exchange occurred:

CI:          He's dead.

Defendant:   For sure?

2

CI:          For sure, he's dead.

Defendant:   Alright, I'll give you your gift, as soon as I get down.

CI:          Yeah, he dead as hell man.

Defendant:   Alright, good. I'm relieved.

Without the CI's statements to provide context, the defendant's statements would likely confuse the jury. The defendant's statement that he was "relieved" was in direct response to the CI's claim that the undercover employee had been killed; without the CI's statements, the defendant's response would be nonsensical. *See Wright*, 722 F.3d at 1067 ("Without the CI's statements, Wright's responses would have been unintelligible, and a jury would not have any sense of why the conversation was even happening.")

### A. The Government May Admit the Recorded Jail Conversations through the Testimony of Law Enforcement Witnesses.

The government intends to admit the jail recordings through the testimony of law enforcement witnesses. The government does not, at this time, expect to call the CI as a witness.[1]

Federal Rule of Evidence 901 provides that to "satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Therefore, the government must prove that a recording is a true, accurate and

---

[1] The government has not tendered information about the CI, though it believes the defendant has determined the CI's identity. Because the CI will not be testifying, and his statements will not be offered for the truth of the matter asserted, any impeaching information is irrelevant.

authentic recording for the item to be admitted. *United States v. Westmoreland*, 312 F.3d 302, 311 (7th Cir. 2002). Though this evidentiary foundation may be satisfied through the testimony of a participant to the conversation, this is not essential. *See, e.g., United States v. Collins*, 715 F.3d 1032 (7th Cir. 2013) (upholding admission of recorded conversations where no participant to the conversation or witness to the creation of the recording testified). The foundation for the admission of a taped conversation may be circumstantial or direct. *See United States v. Puerta Restrepo*, 814 F.2d 1236, 1239 (7th Cir. 1987). Indeed, Rule 901(b) provides ten examples of adequate authentication under the Rule "[b]y way of illustration only, and not by way of limitation. . . ." Fed. R. Evid. 901(b). One of those examples involves "[t]estimony of a witness with knowledge . . . [t]hat a matter is what it is claimed to be." Fed. R. Evid. 901(b)(1). Another possible means of authentication includes "testimony describing the process or system" that created the recording. *See* Fed. R. Evid. 901(b)(9); *United States v. Dale*, 991 F.2d 819, 843 (D.C. Cir. 1992). To satisfy Rule 901(a) for an audio recording, its proponent may establish either: (1) a chain of custody demonstrating the tapes are in the same condition as when they were recorded; or (2) the accuracy and trustworthiness of the tapes. *Collins*, 715 F.3d at 1035. The jail recordings here are admissible under either criterion.

### 1.    Chain of Custody

At trial, law enforcement personnel will testify that audio recording equipment was installed in a cell at the Kankakee County Jail and that the defendant and the CI were housed in that cell from November 23, 2012, until

November 29, 2012. *See United States v. Roach*, 28 F.3d 729, 733 (8th Cir. 1994) ("The recording on the videotape establishes that the recording equipment was functioning properly.")

A law enforcement witness will further testify that the audio recordings were preserved and maintained by the FBI. The FBI received the recordings shortly after they were made and they were thereafter maintained without changes, modifications, or edits.[2] Unlike the situation in *Collins*, here the CI never possessed the recording equipment or the recordings themselves.

The foundation for a tape recording may be satisfied by showing its chain of custody—that the tape is in the same condition as when it was recorded. *Collins*, 715 F.3d at 1035; *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001); *see also United States v. Thomas*, 294 F.3d 899, 905 (7th Cir. 2002) ("When chain of custody is called into question without any evidence of tampering, and if the tapes were in official custody at all times, a presumption arises that the tapes were handled properly."). In this case, the law enforcement witnesses will establish the chain of custody sufficient to meet the requirements of Rule 901(a).

### 2.     Accuracy and Trustworthiness

The foundation for recordings will also be established circumstantially through evidence that the events discussed on the tapes in fact occurred and that the purported speakers on the recordings participated in those events. *See*, *e.g.*, *Tolliver*, 454 F.3d at 666 n.4; *Westmoreland*, 312 F.3d at 310. Through the

---

[2] The recordings are in excess of 100 hours, and government anticipates admitting and publishing a portion of the recordings.

testimony of law enforcement witnesses, the government may properly demonstrate that the recorded conversations were accurate renditions of the conversations to establish the foundation for the recordings without requiring a participant to the conversation.

The government will present testimony that the voices in the jail cell recordings are the CI's and the defendant's. And the recordings themselves are internally consistent. Evidence may be authenticated by the "distinctive characteristics" of the evidence itself, including "[a]ppearance, contents, substance, internal patterns . . . taken in conjunction with circumstances." Fed. R. Evid. 901(b)(4); *see United States v. Carrasco*, 887 F.2d 794, 803-04 (7th Cir. 1989).

Here, based on the content of the recordings alone, it is clear that the recordings are what they purport to be. The manner and content of the defendant's conversations contain many unique characteristics. These are not generic objects or documents, or recordings of isolated sounds, or even sounds of voices, that could be interpreted in different ways, or which have no meaning without reference to other evidence. The recordings contain entire, continuous conversations in which identifiable speakers—the defendant and the CI—convey detailed and specific information in a logical and coherent manner.[3]

---

[3] If necessary, the Court can satisfy itself that this is true before trial by reviewing any or all of the transcripts or listening to the recordings. Fed.R.Evid. 104. *See also, United States v. Haldeman*, 559 F.2d 31, 109 (D.C. Cir. 1976) (*prima facie* showing of authenticity based on trial court's review of tapes, which showed no unusual pauses or conversation fragments).

Finally, the recorded conversations are uniquely identifiable because they contain facts relevant to this case. As contemplated by Rule 901, evidence external to the tape—the other evidence in the case—corroborates the content, and thus the authenticity, of the recordings. Simply put, the audio recordings are borne out by other evidence in the trial, such as a coded phone call the defendant placed to carry out the "hit" on the undercover employee using the same terminology agents provided to the CI to relay to the defendant. In short, the testimony outlined above is sufficient to establish the authenticity of the recordings. Under such circumstances and consistent with settled precedent, the recordings should be admitted based on the testimony of law enforcement personnel, regardless whether the CI testifies. *E.g.*, *United States v. Andreas*, 23 F. Supp. 2d 835, 840-41 (N.D. Ill. 1998) (admitting tapes prepared by cooperating witness who refused to testify based on evidence that included corroborating references made by coconspirators in other taped conversations, expert testimony, and chain-of-custody testimony).

## B. The Admission of the Recorded Evidence Without the CI's Testimony Does Not Abridge the Defendant's Rights.

When recordings are admitted on the basis outlined above, defendants have sometimes claimed a violation of the Confrontation Clause of the Sixth Amendment. These claims, however, have been uniformly rejected by courts. No Confrontation Clause violation occurs if the government specifies (and the jury is instructed) that the statements of the non-testifying speaker (here, the CI) are offered not for their truth, but rather to provide context so as to make the defendant's statements intelligible. *See Wright*, 722 F.3d at 1067-9; *United States v. York*, 572 F.3d 415,

427 (7th Cir. 2009); *United States v. Nettles*, 476 F.3d 508, 517-18 (7th Cir. 2006); *United States v. Van Sach*, 458 F.3d 694, 701 (7th Cir. 2006); *see also United States v. Derrick Smith*, 12-CR-175, Doc. #104 (granting motion to admit recordings through testimony of law enforcement officers).[4] The government will request such an instruction in this case, and it will submit one that is consistent with those previously approved by the Seventh Circuit. As long as the jury is instructed to consider the CI's statements not for their truth but as context in which to understand the defendant's statements, no Sixth Amendment issue is implicated.

## II.     Motion *in Limine* to Preclude Impeachment of the Non-Testifying CI.

As noted above, the government does not intend to call the CI as a witness at trial and will not offer the CI's statements for their truth. Instead, the CI's statements will only be offered to provide context for the defendant's own admissions in the recorded conversations. The government will ask the Court to instruct the jury as to the limited use of the CI's statements. *See Wright*, 722 F.3d at 1068.

Federal Rule of Evidence 607 provides for the impeachment of a witness. Because the government will not be calling the CI to testify, the CI's recorded statements may only provide context for the defendant's admissions, and the government will ask the Court to instruct the jury as to the limited use of the CI's

---

[4] Because the statements of the non-testifying cellmate are offered to provide context for the defendant's admissions and are not offered for their truth, the CI's statements are, by definition, not hearsay, and thus not subject to the Confrontation Clause concerns raised in the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004). *See Van Sach*, 458 F.3d at 701.

statements, the CI is not a "witness" subject to impeachment. *United States v. McClain*, 934 F.2d 822, 832 (7th Cir. 1991). Nor will the CI's statements be admitted under Rule 801(d)(2)(C), (D), or (E), so the CI's credibility is not subject to attack pursuant to Rule 806. *McClain*, 934 F.2d at 833.

Therefore, the defendant should be precluded from asking questions of other witnesses, admitting evidence, or otherwise making argument designed to attack the credibility of a person who will not be testifying. Because Rules 608 and 609 are not implicated, the defendant should be precluded from offering: (1) testimony regarding the CI's reputation for having a character for untruthfulness; (2) testimony in the form of an opinion as to the CI's character for untruthfulness; or (3) offering extrinsic evidence (whether in the form of a criminal conviction or specific instances of the CI's conduct inquired into during cross-examination) in order to attack the CI's character for truthfulness.

## III. Motion *in Limine* to Preclude the Defendant from Calling the CI as a Witness Solely for Impeachment.

A party may not call a witness for the sole purpose of impeaching him. *See United States v. Vasquez*, 635 F.3d 889, 897 (7th Cir. 2011) (citing *United States v. Giles*, 246 F. 3d 966, 974 (7th Cir. 2001)). And, as a corollary to that principle, the Seventh Circuit has warned against allowing a party to call a witness it knows will not give useful evidence, just so the party may then introduce otherwise inadmissible impeachment evidence. *See United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984); *accord United States v. Medley*, 913 F.2d 1248, 1257 (7th Cir. 1990) (prohibiting calling a witness to impeach where it is a "subterfuge to get

before the jury evidence otherwise not admissible."). In accordance with these rules, this Court should prohibit defendant from calling the CI for the sole purpose of impeachment. If the defendant wishes to call the CI as a witness, he should be required to proffer to the Court, outside the presence of the jury, the useful evidence—beyond impeachment—anticipated by the CI's appearance.

## IV. Motion *in Limine* to Preclude Improper Argument, Evidence, and Inquiry.

The topics describe below are irrelevant and would tend to elicit jury nullification, so the defendant should be barred from inquiring of witnesses, presenting evidence, or arguing to the jury about them.

As a threshold matter, a defendant may not suggest that the jury should acquit him even if it finds that the government has met its burden of proof. *See, e.g., United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.") (citing *United States v. Kerley*, 838 F.2d 932, 938 (7th Cir. 1988) and *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993)); *see also United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification is 'not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'") (quoting *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983)); *Scarpa v. Dubois*, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); *Sepulveda*, 15

10

F.3d at 1190 ("Neither the court nor counsel should encourage jurors to exercise [nullification] power . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice.")

### A. Argument or Evidence Regarding the Information Leading the Federal Bureau of Investigation to Initiate its Investigation.

The government anticipates that the defense may ask witnesses about the basis for initiating the investigation of the defendant or suggest to the jury that no or little basis existed. As the Court is aware, much of that information remains classified, and the government does not intend to rely on it at trial. The defendant should not be permitted to pose questions on this subject matter to government witnesses because they will not be able to answer them in open court. As such, the defendant should be barred from asking witnesses about why the case was initiated or arguing to the jury about the quantum of evidence that led to the FBI's investigation.

### B. Argument or Evidence Regarding the Subjective Motivations of the Undercover Employee.

The defendant has consistently (and recently) informed the government and the Court that he will raise entrapment as a defense to the charges in the indictment. *See, e.g.*, Doc. #120 at page 2. ("[T]he key question at trial will be whether defendant was . . . predisposed to commit the charged offense of attempting to detonate a car bomb in downtown Chicago."). Under the law of entrapment, "it is

11

not the state of mind of the government agent that is important; . . . it is the 'predisposition of the defendant' to commit the offense . . . that counts." *United States v. McClain*, 531 F.2d 431, 435 (9th Cir 1976) (quoting *United States v. Russell*, 411 U.S. 423, 427 (1973)); *see also United States v. So*, 755 F.2d 1350, 1354 (9th Cir.1985). *See*, *e.g.*, *United States v. Finley*, 1989 WL 51131, at *8 (N.D. Ill. 1989) ("The intent of the government agents or the government informant who gathered evidence in this case simply does not bear on the issues of whether the defendants are guilty of the crimes charged in the indictment . . . The Court notes . . . that even if an entrapment defense is offered, evidence of government intent remains irrelevant."); *see also United States v. Makhlouta*, 790 F.2d 1400, 1402 (9th Cir. 1986) ("under the law of entrapment, 'it is not the state of mind of the government agent that is important; ... it is the 'predisposition of the defendant' to commit the offense ... that counts'"); *United States v. Robinson*, 763 F.2d 778, 783 (6th Cir. 1985) (district court did not err in excluding evidence proffered to establish government's motive to entrap defendant reasoning that "the principal issue in an entrapment defense is whether the defendant was predisposed to commit" and "the government's motive is irrelevant to this issue . . . because even assuming that the government wanted to entrap [defendant], this motive would not affect [defendant's] 'readiness and willingness' to commit the crime.") (citations omitted); *United States v. Smith*, 1994 WL 162584 (6th Cir. 1994) (unpublished) (evidence of government's motivation irrelevant to entrapment defense); *Wong v. United States*, 1999 WL 420450, at *2 (S.D.N.Y. 1999) ("To be sure, [defendant] suggests, albeit without

saying so directly, that the government's motive was to punish him for his failures as an informant, or for refusing to continue acting as an informant. However, the government's motive is irrelevant to the entrapment issue.").

Along those same lines, the defendant should be precluded from arguing or suggesting that the undercover technique the government used in the underlying investigation was improper. Any argument attacking the government's investigative techniques would not only be improper, but it should also trigger an instruction that such investigative techniques are entirely proper. *See* 7th Cir. Pattern Crim. Jury Instruction 3.19 (2012) ("You have heard evidence obtained from the government's use of [undercover agents] [informants] [deceptive investigative techniques]. The government is permitted to use these techniques. You should consider evidence obtained this way together with and in the same way you consider the other evidence."). As the Committee on Federal Criminal Jury Instructions of the Seventh Circuit observed, this instruction "is intended for use only in the rare case in which questioning or argument, or a statement during jury selection, or some other circumstance arising or existing during trial suggests the impropriety of such techniques." Therefore, the defendant should be barred from arguing or eliciting testimony of this nature.

**C.     Argument or Evidence of the Legality or Propriety of the Government's Collection Methods.**

Much of the government's evidence in this case was acquired pursuant to the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801, *et seq.*, the lawfulness of which has already been reviewed—and approved—by the Seventh Circuit. *United*

*States v. Daoud*, 755 F.3d 479, 485 (7th Cir. 2014) ("[O]ur study of the materials convinces us that the investigation did not violate FISA"), 761 F.3d 678 (7th Cir. 2014) ("The FISA applications contain ample evidence to support a finding of probable cause. [redacted] It would have been irresponsible of the FBI *not* to have launched its investigation of the defendant [redacted]") (emphasis in original); *see also United States v. Wen*, 477 F.3d 896 (7th Cir. 2006), *United States v. Hasan*, 535 Fed. Appx. 378, 379 (5th Cir. 2013) (unpublished) ("Indeed, every court of appeals to consider a facial constitutional challenge to FISA—whether for due-process or Fourth Amendment purposes—has upheld the statute") (collecting citations).

The defendant thus should be precluded from asking questions, presenting evidence, or making arguments to the jury designed to challenge the legality or propriety of the government's evidence collection methods. Though the defendant may argue to the jury the weight that should be accorded the evidence, he should not be permitted to encourage the jury to disregard the evidence because of the means of collection. Not only should this prohibition apply to the evidence acquired pursuant to FISA, but also—as noted above—to the evidence resulting from consensually monitored phone calls, recorded meetings, and other evidence obtained through the use of the undercover employee or other government employees, or other so-called "sting" techniques. *See generally, United States v. McKnight*, 665 F.3d 786, 793 (7th Cir. 2011) ("After all, the techniques employed by the Government in this case are common investigative practices, used to investigate all manner of crimes") (collecting citations).

14

Consistent with this prohibition, the defendant should be precluded from making reference to the following subjects, as they are irrelevant to the issues in the case, or would serve to encourage jury nullification: Edward Snowden, the National Security Agency, the FISA Amendments Act, statements by Senator Diane Feinstein made on December 27, 2012, regarding the reauthorization of the FAA, or other prosecutions, investigations, or other matters outside of the record. A juror's opinion on Edward Snowden, the NSA, or any other issue regarding the government's collection of evidence against the defendant has no place in this trial.

### D.    Argument or Evidence of "Outrageous Government Conduct"

The defendant cannot present evidence of "government misconduct," if only because such claims afford no defense to a criminal prosecution as a matter of law. *See United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011) ("Outrageous government conduct is not a defense in this circuit."); *United States v. Boyd*, 55 F.3d 239, 241-42 (7th Cir. 1995); *see also United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) ("All of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question.").

Nor should the defendant be permitted to offer evidence or argument about the government's decision to investigate the defendant. *United States v. Young*, 20 F.3d 758 (7th Cir. 1994) (government's failure to charge other defendants was irrelevant to the question of the guilt or innocence of the defendant on trial). If the defendant believes he has a "selective prosecution" defense, then that should be decided by this Court and not the jury. *United States v. Washington*, 705 F.2d 489,

495 (D.C. Cir. 1983) (holding that the "selective prosecution" and "outrageous government" defenses are a matter of law for the district court, rather than an issue of fact for the jury). *Accord United States v. Armstrong*, 517 U.S. 456, 463-64 (1996) (holding that a selective prosecution claims are "not a defense on the merits" and should only be granted in extraordinary cases, because the "Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws"); *United States v. Mosley*, 965 F.2d 906, 909-10 (10th Cir. 1992) (noting that the circuits which recognize this "extraordinary defense" do so as a matter of law in the most "narrow" and "egregious circumstances"). Thus, courts routinely grant motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, 1991 WL 236492, *3 (N.D. Ill. Aug. 13, 1991); *see also United States v. Infelise*, 1991 WL 251654, at *1 (N.D. Ill. Nov. 14, 1991) (holding that "selective prosecution and outrageous government conduct must be resolved by the court and not the jury.").

The introduction of this evidence would serve no purpose other than "to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" is this: "the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* The defendant thus should be prohibited from offering any

16

evidence or argument about the government's charging decision or any other perceived government misconduct.

### E.    Requests for Discovery.

The discovery disputes in this case touch on issues of national security and have been thoroughly litigated. They are not, however, matters that should be brought before the jury. Neither party should request discovery from witnesses or the Court in the presence of the jury, for such requests leave the impression that a party has suppressed information as a means of seeking an unfair advantage. Accordingly, such requests should only be made outside the presence of the jury. *See generally Thompson v. Glenmede Trust Co.*, 1996 WL 529693, at *2 (E.D. Pa. 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial.").

### F.    Argument or Evidence Regarding the Potential Punishment Defendant Faces if Convicted.

This Court should bar the defendant from introducing evidence, making argument, or otherwise mentioning the potential penalties he faces if convicted. The Seventh Circuit has held that "the practice of informing juries about the sentencing consequences of their verdicts is strongly disfavored." *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997); *see also United States v. McKenzie*, 922 F.2d 1323, 1327 (7th Cir. 1991) (holding that "the sixth amendment requires that a jury determine only questions of guilt or innocence; punishment is the province of the Court"). Such argument or evidence concerning punishment is improper because the

law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."); *United States v. McCracken*, 488 F.2d 406, 423 (5th Cir. 1974) ("Except where a special statutory provision mandates a jury role in assessment or determination of penalty, the punishment provided by law for offenses charged is a matter exclusively for the court and should not be considered by the jury in arriving at a verdict as to guilt or innocence"). Mention of the potential penalties faced by the defendant would serve only the improper purpose of jury nullification. *See, e.g., United States v. Reagan*, 694 F.2d 1075, 1080 (7th Cir. 1982) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.") (quoting *United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980)); *United States v. Patterson*, 1996 WL 54237, at *1 (N.D. Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification). Accordingly, this Court should preclude defendant from introducing evidence, making argument, or otherwise mentioning the penalty he faces.

Similarly, the government asks this Court to preclude any argument, evidence, or inquiry as to the impact of defendant's conviction on any person, including his family. While the government acknowledges that defendant is permitted to introduce, through proper methods, limited testimony concerning his background, the government moves this Court to preclude evidence and argument regarding the impact of a conviction upon defendant's family. Such evidence is irrelevant to defendant's factual guilt and is designed for no other purpose than to invoke improper appeals for jury nullification. Accordingly, such evidence or argument is properly excluded. *See, e.g., United States v. D'Arco*, 1991 WL 264504. at *4 (N.D. Ill. 1991) (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family member"); *Shields*, 1991 WL 236492 at *4 (granting motion *in limine* precluding "any testimony regarding the possible impact which a conviction might have upon any family member").

## H.    Definition of Reasonable Doubt

The Seventh Circuit has uniformly held that "reasonable doubt" is a term that should not be defined by the trial court or counsel.  *See, e.g.*, *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993) (noting that definitions of reasonable doubt have a likelihood of "confus[ing] juries more than the simple words themselves"); *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988) (explaining that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in

making it any clearer to the minds of the jury") (citations omitted), Committee Comment to Seventh Circuit Pattern Jury Instruction 1.04.

In *United States v. Thompson*, 117 F.3d 1033 (7th Cir. 1997), the Seventh Circuit affirmed the district court's decision to prevent defense counsel from explaining reasonable doubt to the jury. Explaining that "[t]he law is clear in this circuit that it is improper for attorneys to attempt to define the term," the Seventh Circuit noted that by preventing defense counsel's attempt to explain reasonable doubt, "[r]ather than abusing its discretion, the district court heeded our express command." *Id.* at 1035. *See also United States v. Alex Janows & Co.*, 2 F.3d 716, 723 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury").

## Conclusion

For the foregoing reasons, the United States respectfully requests that the Court grant the Motions *In Limine* set forth above.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By:    /s/ *William E. Ridgway*
WILLIAM E. RIDGWAY
BARRY JONAS
BOLLING W. HAXALL
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604
Tel: (312) 353-5000

Dated: June 3, 2015

20