IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CR 723 |
| | ) | Judge Sharon Johnson Coleman |
| ADEL DAOUD, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE THE OPINIONS AND TESTIMONY OF DR. STEPHEN XENAKIS**

Defendant, **ADEL DAOUD**, by his attorneys, **THOMAS ANTHONY DURKIN**, **JANIS D. ROBERTS**, and **JOSHUA G. HERMAN**, pursuant to the Due Process and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the United States, respectfully submits his response to the prosecutors' motion *in limine* to exclude the opinions and testimony of Dr. Stephen Xenakis. (Dkt. #186).

The prosecutors raise three arguments to exclude the testimony and opinions of Dr. Xenakis: (1) the lack of an adequate explanation for the "bases and reasons" for Dr. Xenakis' opinions; (2) the assertion of attorney-client privilege over certain information that Dr. Xenakis reviewed; and (3) his opining on defendant's religious views. (Dkt. #186, p. 1). At the heart of the prosecutors' motion are seven questions that they pose for the first time regarding the bases of Dr. Xenakis' anticipated testimony. (*Id*., p. 7). Counsel believe that discussion between the parties will address these questions, and will narrow, and perhaps, resolve any remaining disputes.

Thus, counsel respectfully submit that the Court allow such discussions to proceed prior to issuing any ruling on the prosecutors' motion. But more importantly, any ruling should be

deferred because the serious competency questions raised in counsel's pleading entitled, "Counsel's Emergency Motion For an Evidentiary Hearing to Determine the Mental Competency of Defendant," (Dkt. #188), which is supported by the Declaration of Dr. Xenakis, should take precedence.

## I. BACKGROUND.

Dr. Xenakis is a psychiatrist with over forty-five (45) years of experience who is currently in private practice. He is also a retired Brigadier General and U.S. Army medical corps officer with twenty-eight (28) years of active service. He is board certified by the National Board of Medical Examiners (1975); by the American Board of Psychiatry and Neurology in General Psychiatry (1980) and in Child and Adolescent Psychiatry (1982); and by the American Board of Medical Management in Medical Management (1991). He also holds a number of board affiliations and has held numerous hospital and teaching appointments. He has provided expert testimony in numerous judicial and military proceedings, including being qualified as a psychiatric and medical expert in numerous cases of detainees at Guantánamo Naval Base and accused terrorists by the Federal Courts and the Office of the Military Commissions. A copy of Dr. Xenakis' *curriculum vitae* is attached hereto as Exhibit A.

On June 23, 2015, the Court granted the oral request of counsel for a psychiatric examination and testing of defendant by Dr. Xenakis. (Dkt. #170). Counsel's request for Dr. Xenakis to examine Defendant was based upon the information made available to the parties and the Court concerning the incident at the Chicago Metropolitan Correctional Center ("MCC") on May 23, 2015, which now forms the basis of the third charge filed against Defendant in case number 15 CR 487 alleging among other things, assault with the intent to commit murder upon a

fellow inmate at the MCC in violation of 18 U.S.C. § 113(a)(1), that is now pending in front of Judge Samuel Der-Yeghiayan.

Dr. Xenakis interviewed Mr. Daoud on July 9, 2015 and then also on July 10, 2015. On July 29, 2015, counsel informed the Court of their own continued misgivings, and the misgivings of Dr. Xenakis, regarding Defendant's mental competency to stand trial. As a result, and at the request of defense counsel, the Court entered its order that day requiring that a psychological examination be conducted by the Isaac Ray Center. (Dkt. #174).

On September 26, 2015, a report prepared by Diana S. Goldstein, Ph.D., ABBP, Director of Neuropsychology and Licensed Clinical Psychologist, was delivered to the Court and the parties. The report ultimately concluded that Defendant was mentally competent to stand trial. Dr. Xenakis subsequently interviewed Defendant on October 9, 2015.

On November 6, 2015, counsel provided the prosecutors with a draft expert disclosure letter for Dr. Xenakis. As counsel explained to the prosecutors at the time, the disclosure letter was provided in draft format due to the fact that Dr. Xenakis was out of the country and unable to consult with counsel. The November 6, 2015, draft letter provided a summary of Dr. Xenakis' anticipated testimony. The summary set forth in sections (a) through (c) of the November 20, 2015, disclosure letter is verbatim of the summary provided earlier on November 6, 2015. The prosecutors were also advised in both letters that Dr. Xenakis' opinions would be based on his experience and training, meetings with Defendant, and his review of case-related material, specifically Dr. Goldstein's September 26, 2015, report.

**II.     ARGUMENT.**

    **A. Expert Testimony Regarding Vulnerability
and Susceptibility to Influence is Proper.**

Testimony regarding Defendant's vulnerability and susceptibility to influence is proper, particularly in a case involving the defense of entrapment. The prosecutors do not appear to argue that such testimony is itself improper. Rather, they only cite Rule 704(b)'s prohibition on offering opinions concerning whether a defendant did or did not have a mental state. (Dkt. #186, p. 5). Rule 704(b) notwithstanding, counsel are clearly entitled to argue that, as part of their entrapment defense, that Defendant was susceptible to inducement.

In *United States v. McGill*, 754 F.3d 452 (7th Cir. 2014) the Court specifically stated as follows: "Assessing an entrapment defense involves a subjective inquiry … meaning that a defendant is entitled to argue that he was particularly susceptible to inducement." *Id*. at 452 (internal citations omitted). In *McGill* the Seventh Circuit reversed the defendant's conviction in a child pornography case because the district court refused to instruct the jury on the entrapment issue as it found no evidence of inducement. However, the record showed that an FBI informant exploited his friendship with the defendant, who was characterized as a "loner" with "insecurities" and "social anxiety," which the Seventh Circuit panel in an opinion written by Judge Rovner, joined by Judges Posner and Manion, found the jury could have found made the defendant "particularly susceptible to government inducement." *Id*. 459-60. *See also United States v. Newman*, 849 F.3d 156, 165 (5th Cir. 1988) ("We conclude that when an entrapment defense is raised, expert psychiatric testimony is admissible to demonstrate that a mental disease, defect or subnormal intelligence makes a defendant peculiarly susceptible to inducement.").

> **B. The Parties Should Be Allowed to Discuss Any Additional Disclosure that May be Required Pursuant to Rule 16(b)(1)(C), Including Attorney-Client Privileged Material Reviewed for Competency Issues, as Well as Defendant's Religious Beliefs as They Relate to Dr. Xenakis' Opinions.**

Rather than challenge the propriety of offering expert testimony of Defendant's vulnerability and susceptibility to influence, the prosecutors' arguments are primarily directed at the explanation of the bases and reasons of Dr. Xenakis' anticipated testimony. As an initial matter, the prosecutors are incorrect in their claim that there is "no explanation for Dr. Xenakis' opinions." (Dkt. #186, p. 1). For example, the prosecutors know full well that Dr. Xenakis reviewed the report of Dr. Goldstein, which included results of cognitive and psychological assessment instruments administered to Defendant indicating highly elevated scales regarding Paranoia, Mania, and Schizophrenia.[1]

Moreover, the November 20, 2015, expert disclosure letter clearly states that Dr. Xenakis' opinions are based on clinical interviews and mental examinations of defendant, which, as noted above, occurred on three separate days. His conclusions and opinions are based on empirical observations, the cumulative product of over forty-five (45) years of experience and training. They are also based on recognized diagnostic criteria in DSM-5, which counsel may address with the prosecutors in more detail, in the proper meet-and-confer setting, rather than in motion practice. Indeed, as noted above, the prosecutors posed seven questions in their motion. (Dkt. #186, p. 7). Counsel believe that many of these questions can be addressed through meet-

---

[1] As set forth in Counsels' Emergency Motion For an Evidentiary Hearing to Determine the Mental Competency of Defendant, there are serious questions regarding Dr. Goldstein's conclusions based on this data, and specifically her determination that the elevations are merely "idiosyncratic and not clinically meaningful." (*See* Dkt. #188, ¶¶ 20-23).

and-confer discussions that should be as effective as a written report, if not better.[2] These discussions may include additional explanation regarding Dr. Xenakis' review of certain attorney-client privileged material, as noted in the November 20, 2015, letter which was done insofar as competency was concerned.

Lastly, the parties' discussions may also address what appears to be a misunderstanding on the prosecutors' part regarding Dr. Xenakis' anticipated testimony concerning Defendant's vulnerability and susceptibility as related to his religious beliefs. In short, Dr. Xenakis' will not opine on Defendant's religious beliefs. Rather, his testimony will focus on how Defendant's mental conditions, specifically his paranoia, circular reasoning and fragmented and illogical thinking, relate to his pre-occupation and fixation on Islam. Thus, Dr. Xenakis' testimony will not concern the content of Islam *per se*, but how Defendant reacted to it given his mental conditions. It is anticipated that Dr. Xenakis will say that those mental conditions rendered Mr. Daoud susceptible and vulnerable to influence, and the discovery is replete with evidence supporting the same and that the FBI used this to its advantage.

It cannot go without noting that there is evidence showing how Defendant's religious beliefs, among other things, affected his susceptibility and vulnerability to influence. Indeed, the FBI manipulated Defendant through his religious beliefs at perhaps the most critical moment in the case, on or about August 18, 2012, when Defendant told the UCE that a sheikh at his mosque had "yelled" at him and another individual for discussing jihad. (Complaint, ¶40). Defendant then asked the UCE if the UCE's "sheikh" could issue a "real fatwah" and the UCE agreed to

---

[2] Some of the prosecutors' questions are already addressed by Dr. Xenakis' Declaration submitted in support of Emergency Motion For an Evidentiary Hearing to Determine the Mental Competency of Defendant. (Dkt. #188, Exhibit E). As the prosecutors must also concede, counsel have been extremely forthright in discussing these psychiatric issues with them.

"check with his purported sheikh." (*Id*., ¶¶ 40-41). Several days later, Defendant met with the UCE who told Defendant that his "sheikh" could not provide guidance because "This has to be in your heart, especially jihad." (*Id*. ¶43(b)). Not only did the "sheikh's" response implicitly express disagreement with Defendant's local Imams, but it also questioned his very identity as a Muslim.[3] Thus, how Defendant's mental conditions made him particularly vulnerable and susceptible to such influence and inducement is centrally relevant to a critical issue in Defendant's theory of the defense.

### III. CONCLUSION.

For the foregoing reasons, counsel request that the Court deny or defer ruling on the prosecutors' motion *in limine*, particularly insofar as the pending issue of competency should first be addressed.

---

[3] But for the restrictions in the Amended Protective Order entered in this case, counsel would cite additional examples of this type of exploitation of Defendant's religious beliefs, even regarding how the FBI initially designed the meeting between Daoud and the UCE with religious issues in mind.

Respectfully submitted,

/s/Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/Janis D. Roberts
**JANIS D. ROBERTS,**

/s/Joshua G. Herman
**JOSHUA G. HERMAN,**
Attorneys for Defendant Adel Daoud.

**DURKIN ROBERTS & GROHMAN**
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com
jdroberts@durkinroberts.com

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 1650
Chicago, IL 60604
Tel: (312) 909-0434
Fax: (312) 663-3707
jherman@joshhermanlaw.com

## CERTIFICATE OF SERVICE

  Thomas Anthony Durkin, Attorney at Law, hereby certifies that the foregoing Defendant's Response to Government's Motion *in Limine* to Exclude the Opinions and Testimony of Dr. Stephen Xenakis was served on December 7, 2015, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                /s/Thomas Anthony Durkin
                **THOMAS ANTHONY DURKIN**

**DURKIN ROBERTS & GROHMAN**
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com
jdroberts@durkinroberts.com