**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 CR 723 |
| | ) | Judge Sharon Johnson Coleman |
| ADEL DAOUD, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO REASSIGN BASED UPON RELATEDNESS**

Defendant, **ADEL DAOUD**, by and through his attorneys, **THOMAS ANTHONY DURKIN, JANIS D. ROBERTS,** and **JOSHUA G. HERMAN**, pursuant to the Due Process and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the United States, as well as the Cruel and Unusual Punishment clause of the Eighth Amendment to the Constitution, Local Criminal Rule 50.1, Local Rule 40.4, and this Court's inherent supervisory powers under Rule 2 of the Federal Rules of Criminal Procedure, respectfully requests that this Court issue an order reassigning Case No. 15 CR 487 to this Court, presently assigned to Judge Samuel Der-Yeghiayan, as related to Case Nos. 12 CR 723 and 13 CR 703, presently assigned and pending before this Court.

In support of this motion, Defendant, through counsel, shows to the Court the following:

1.      On September 20, 2012, Defendant was indicted in Case No. 12 CR 723, which was assigned to this Court. The indictment charges Defendant with attempting to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(2)(D) (Count One) and attempting to destroy a building used in an activity affecting interstate commerce in violation of 18 U.S.C. § 844(i) (Count Two). These charges arise out of an FBI undercover sting operation, and allege that Defendant attempted to detonate a fake car bomb outside of a bar in downtown Chicago. An

FBI undercover agent, identified in the criminal complaint as the "UCE," provided this fake car bomb to Defendant after posing as an operational terrorist and meeting with Defendant on multiple occasions from July 17, 2012 through September 14, 2012.

2.      Defendant was ordered detained and has remained in custody since the date of his arrest, September 14, 2012.

3.      As the Court is aware, on August 29, 2013, Defendant was indicted in Case No. 13 CR 703, in which he is charged with solicitation of murder in violation of 18 U.S.C. § 373(a) (Count One); murder for hire in violation of 18 U.S.C. § 1958(a) (Count Two); and witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A) (Count Three). These charges arise from the government's use of a jailhouse informant while Defendant was housed at Kankakee County Jail and detained on the charges that are before this Court.[1] As detailed in Defendant's consolidated responses to the government's motions *in limine*, counsel submits that this convoluted murder-for-hire plot presents significant evidentiary problems for the prosecutors, particularly related to the "pecuniary value" that this indigent Defendant supposedly agreed to pay, as well as the jailhouse informant's substantial motivations to fabricate. (*See* Dkt. #189).

4.      On December 8, 2013, Defendant moved to reassign Case No. 13 CR 703 on the calendar of Judge Robert W. Gettleman as related to this case. (Dkt. #79). On December 11, 2013, the Court granted the motion to reassign. (Dkt. #81; *see also* Case No. 13 CR 703, Dkt. #18, December 12, 2013, Executive Committee Order for Reassignment).

5.      As the Court is also aware, on August 13, 2015, Defendant was indicted in Case No. 15 CR 487 and charged with assault with the intent to commit murder in violation of 18

---

[1] Count One, solicitation, and Count Three, witness tampering, are alleged to have occurred between October 26, 2012 and November 29, 2012; Count Two, murder for hire, is alleged to have occurred on November 28, 2012.

U.S.C. §113(a)(1) (Count One); assault with a dangerous weapon with intent to do bodily harm in violation 18 U.S.C. §113(a)(3) (Count Two); assault resulting in serious bodily injury in violation of 18 U.S.C. §113(a)(6) (Count Three); possessing a prohibited object while in federal custody in violation of 18 U.S.C. § 1791(a)(2) (Count Four); and assault in violation of 18 U.S.C. §113(a)(4).  A copy of the indictment is attached hereto as Exhibit A.  These charges relate to a May 23, 2015, assault upon a fellow inmate at the Metropolitan Correctional Center of Chicago, purportedly based upon the fellow inmate's insulting cartoon depicting the Prophet Muhammad.  Judge Der-Yeghiayan has continued that case until February 4, 2016, after the trial on the charges before this Court.  (*See* Case No. 15 CR 487, Dkt. #14).  A copy of the docket sheet showing no substantive activity on the case to date is attached hereto as Exhibit B.

6.      Thus, as the Court is fully aware, the May 23rd incident at the MCC has resulted in considerable concern over Defendant's present competency to stand trial.  As a corollary to these concerns the issue necessarily arises as to whether Defendant was suffering from a severe mental disease or defect that rendered him insane at the time of the offense charged in the third case.  The reasoning behind these concerns and the defense experts' potential psychiatric evidence is more fully set forth in the recently filed motion captioned, "Counsels' Emergency Motion for an Evidentiary Hearing to Determine the Mental Competency of the Defendant." (Dkt. #188).[2]  Thus, as a matter of fundamental and Procedural Due Process, as well as the Sixth Amendment right to the Effective Assistance of Counsel, and the need to avoid Cruel and Unusual Punishment under the Eighth Amendment from prolonged detention in the SHU, it is

---

[2] *See* ¶23 of "Counsels' Emergency Motion for an Evidentiary Hearing to Determine the Mental Competency of the Defendant" (Dkt. #188).  Suffice it to say for now, that counsel could also present additional evidence from the third case's discovery supporting this concern and suggesting that Defendant appeared to be "in some sort of intense state of mind, '[n]ot there' and '[z]oned out'" at the time of the alleged attack.

submitted that Case No. 15 CR 487 should be reassigned as related to Case No. 12 CR 723, particularly insofar as the common mental health issues are so inextricably intertwined.

7.      Due to the clear overlap in issues, separate determinations by different judges regarding Defendant's mental health run the risk of inconsistent findings.  As importantly, separate evidentiary determinations waste valuable judicial and governmental resources by undergoing two separate hearings based primarily on the same expert evidence, as opposed to a consolidated hearing that globally addresses Defendant's various mental health issues.

8.      As set forth in more detail in the request for an evidentiary hearing on competency (Dkt. #188), the Declaration provided by Dr. Stephen N. Xenakis concerning Mr. Daoud's deteriorating mental state (*see id.*, Exhibit E), as well as Dr. Scott Bresler's concerns over the high Minnesota Multiphasic Personality Inventory, 2nd edition (MMPI-2) findings of Dr. Goldstein (*id.*, ¶¶22-23) raise serious questions as to whether Defendant may have been insane at the time of the third offense.[3]  In many ways, each analysis informs the other. Defendant's sanity at the time of the MCC assault case on May 23rd is directly relevant to his present competency to stand trial for the earlier charges.  In other words, the results of a sanity examination for the MCC assault case may very well provide grounds to question Defendant's competency to stand trial in both cases.[4]

9.      Further, Defendant has constitutional interests—sounding in both Due Process and avoiding Cruel and Unusual Punishment—to have all of his mental health issues resolved

---

[3] In that regard counsel attach a copy of an email provided to the government dated December 8, 2015, attached hereto as Exhibit C.  This email reflects the substantial change in the results of MMPI-2 testing regarding paranoia, mania, and schizophrenia between Dr. Bresler's testing on August 20, 2013, and Dr. Goldstein's testing in September 2015.

[4] Counsel have not yet filed a notice pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure before Judge Der-Yeghiayan and, to be sure, counsel are mindful of the different legal standards involved. Nevertheless, a common theme of Defendant's prolonged incarceration and the affects of the SHU are identical.

quickly and at the same time, rather than in a piecemeal manner, particularly with respect to the issue of his sanity at the time of the MCC assault. Defendant should not be forced to stand trial in this case when he very well may have a viable defense of being not guilty by reason of insanity for subsequent charges that could very well lead him into a more appropriate custodial setting. (*See, e.g.*, 18 U.S.C. §4243 "Hospitalization of a person found guilty only by reason of insanity").

10. As a matter of procedure, L.Cr.R. 50.1 provides that "[t]wo or more criminal cases may be related if all of the defendants named in each of the cases are the same and none of the cases includes defendants not named in any of the other cases." L.Cr.R. 50.1 also incorporates the local civil rules for reassignment, as it provides that the criteria set forth in LR 40.4(b) must be satisfied, and that the procedures from LR 40.4(c) and (d) must be followed. The requirements of all these rules are easily met here. Obviously, Defendant is the only defendant in each of the cases, thus satisfying the threshold criteria of L.Cr.R. 50.1.

11. The other factors for reassignment under LR 40.4(b) can also be said to be reasonably satisfied. LR 40.4(b) provides that a case may be reassigned to the calendar of another judge if the case is related to an earlier-numbered case that is assigned to that judge and:

    (1) both cases are pending in this Court;

    (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort;

    (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and

    (4) the cases are susceptible of disposition in a single proceeding.

12. As to the first LR 40.4(b) factor, all cases are obviously pending in this District.

5

13.     With respect to the second LR 40.4(b) factor, the handling of all cases by this Court—at least with respect to the competency issues in all three cases—would most certainly result in substantial saving of judicial time and effort.    As noted above, the competency and sanity hearings will cover much of the same information.  Counsel anticipate that one of the key issues will be how the prolonged pre-trial detention—particularly his time spent in the SHU before and after the May 23rd incident might well have exacerbated Mr. Daoud's underlying mental health problems.    Having to undergo two separate sets of complicated mental health examinations and in-court hearings would unnecessarily waste judicial resources, as well as those of all involved, including the court-appointed counsel and court-appointed experts. Reassignment of the third case to this Court would, therefore, clearly result in substantial saving of judicial time and effort.  Moreover, reassignment would avoid the risk of inconsistent findings on the same or similar mental health issues.[5]

14.     As to the third LR 40.4(b) factor, while the cases pending before the Court are set for trial and that trial date has been previously continued, counsel submits that the delays in the case have been due to significant and novel issues, including the FISA-related litigation and the government's interlocutory appeal of this Court's January 29, 2014, FISA order, as well as the mental health issues and need for examinations, which contributed to the most recent continuance.  Given that these mental health issues have not subsided, and have instead exacerbated is more fully raised in the request for a hearing under §4241(a), it is incumbent that

---

[5] Certainly it cannot go unsaid that further evaluation of Defendant regarding his sanity at the time of the third offense, might well provide a basis for such a defense regarding the two charges pending before this Court particularly the second case also regarding Mr. Daoud's behavior in a custodial setting at Kankakee.

counsel, the prosecutors, and the Courts have certainty as to Defendant's competency to stand trial in all cases, as well as his sanity at the time of these offenses.[6]

15.     As to the fourth and final LR 40.4(b) factor, the mental health issues are susceptible of disposition in a single hearing on both competency and sanity.  For the purposes of LR 40.4, courts have held that only some of the same issues of fact and law need to be in common to establish relatedness.  *See Global Patent Holdings, LLC v. Green Bay Packers, Inc.*, 2008 U.S. Dist. LEXIS 33296, *9 (N.D. Ill. Apr. 23, 2008) (Kocoras, J.).  This evidentiary issue and the factual relatedness of the two cases will create the substantial Procedural Due Process issue that will result if the cases are not joined.

16.     Finally, and perhaps most importantly, in light of the seriousness of these mental health issues, and the obvious deterioration of Defendant's mental health as he has been a pre-trial detainee, it is respectfully submitted that Due Process, Fundamental Fairness, and sheer human compassion require the exercise of this Court's discretion not to narrowly and technically parse the letter of Local Rule 40.4, at the expense of its spirit.  To the extent necessary, further authority supporting the exercise of this Court's discretion can also be found in the letter and spirit of the inherent supervisory powers under Rule 2.  The Rule reads as follows:

> These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.

Fed. R. Crim. P. 2.

17.     Fairness is by far the most important issue of the day here in light of the extraordinarily unique and sad set of events that have transpired as a result of Mr. Daoud's arrest and prolonged pretrial detention.  It would be entirely fair for this Court to resolve both issues as

---

[6] As to issues regarding further delays, *see* ¶¶ 19, 25 of Defendant's Emergency Motion (Dkt. #188).

expeditiously as possible so as to permit Mr. Daoud to get to a psychiatric hospital without further unjustifiable delay. He needs it desperately, and such fairness is certainly far more important than the integrity of the Court's random assignment system which always, one hopes, will give way to fairness.

Respectfully submitted,

/s/Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN,**

/s/Janis D. Roberts
**JANIS D. ROBERTS**,

/s/Joshua G. Herman
**JOSHUA G. HERMAN,**
Attorneys for Defendant Adel Daoud.

**DURKIN ROBERTS & GROHMAN**
2446 North Clark
Chicago, Illinois 60614
(312) 913-9300
tdurkin@durkinroberts.com
jdroberts@durkinroberts.com

**LAW OFFICE OF JOSHUA G. HERMAN**
53 W. Jackson, Blvd., Suite 1650
Chicago, IL 60604
Tel: (312) 909-0434
Fax: (312) 663-3707
jherman@joshhermanlaw.com

## CERTIFICATE OF SERVICE

Thomas Anthony Durkin, Attorney at Law, hereby certifies that Defendant's Motion to Reassign Based Upon Relatedness was served on December 8, 2015, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.


/s/ Thomas Anthony Durkin
**THOMAS ANTHONY DURKIN**
2446 N. Clark Street
Chicago, IL 60614
(312) 913-9300
tdurkin@durkinroberts.com