```
                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

UNITED STATES OF AMERICA,          )   No. 12 CR 723-1
                                   )
              Plaintiff,           )
                                   )
         v.                        )   Chicago, Illinois
                                   )   March 18, 2015
ADEL DAOUD,                        )   10:30 a.m.
                                   )
              Defendant.           )   Motion Hearing

                  TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE SHARON JOHNSON COLEMAN

APPEARANCES:

For the Government:      HON. ZACHARY T. FARDON
                         United States Attorney, by
                         MR. BOLLING W. HAXALL,
                         Assistant United States Attorney
                         219 South Dearborn Street
                         Suite 500
                         Chicago, Illinois  60604


For the Defendant:       DURKIN & ROBERTS
                         2446 North Clark Street
                         Chicago, Illinois  60614
                         BY:  MR. THOMAS A. DURKIN


                         LAW OFFICE OF JOSHUA G. HERMAN
                         53 West Jackson Boulevard
                         Suite 1650
                         Chicago, Illinois  60604
                         BY:  MR. JOSHUA G. HERMAN




              TRACEY DANA McCULLOUGH, CSR, RPR
                    Official Court Reporter
                 219 South Dearborn Street
                         Room 1426
                 Chicago, Illinois  60604
                       (312) 435-5570
```

1  THE CLERK: 12 CR 723, USA versus Adel Daoud.
2  MR. HAXALL: Good morning, Your Honor. Bolling
3  Haxall on behalf of the United States.
4  MR. DURKIN: Good morning, Judge. Thomas Durkin and
5  Joshua Herman on behalf of Mr. Daoud, who's present.
6  THE COURT: Good morning, sir.
7  DEFENDANT DAOUD: Good morning.
8  THE COURT: And we've got a lot of motions to put an
9  end to, is that correct?
10  MR. DURKIN: That's ominous.
11  THE COURT: Complete, finish. All right. So let's
12  start with -- actually I want to start with the one that's --
13  the ones that are probably more recent. Let's start with the,
14  I think it's docket No. 145. Is that the more recent one? And
15  that's -- oh, no. I'm going to save that one. Let's do 126.
16  And that's the motion for discovery regarding surveillance
17  pursuant to the Executive Order 12333. Basically is there
18  anything else you want to say on that that hasn't been said at
19  any time?
20  MR. HAXALL: Your Honor, if the Court is expecting or
21  seeking argument --
22  THE COURT: I'm really not.
23  MR. HAXALL: Okay. Just Mr. Ridgeway is out of town,
24  and Mr. Jonas is on trial, and they handled these motions.
25  THE COURT: I'm not. Okay. I just want to know if

1  there's anything that I haven't had.  Because actually a lot of
2  these situations have been dealt with in some shape or form.
3              MR. DURKIN:  No.
4              THE COURT:  All right.  But if there's nothing else,
5  then the Court has reviewed the motion.  The Court will be
6  denying the motion.  As to No. 124, defendant's motion for an
7  evidentiary hearing pursuant to Franks versus Delaware.  Is
8  there anything else that the Court hasn't already reviewed on
9  this that needs to be brought to the Court's attention?
10 Anything else?
11             MR. DURKIN:  I believe we filed a reply, did we not?
12             THE COURT:  I believe you did.
13             MR. DURKIN:  And as long as the reply covered the
14 issue of our opinion as to whether it was covered by the
15 Seventh Circuit or not, then I'm comfortable with it.
16             THE COURT:  All right.  Well, not only have you filed
17 a reply, of course, the Seventh Circuit has considered this.
18 It has been heard.  The Court has reviewed not only all the
19 materials submitted.
20             MR. DURKIN:  But what I was -- what I -- I don't have
21 the pleading in front of me because I wasn't exactly sure what
22 we were doing today.  But --
23             THE COURT:  Well, I was either -- let me say this,
24 Mr. Durkin:  I was either going to go ahead, and, and rule -- I
25 was actually going to issue rulings on Friday, written rulings

1   on these various motions since you were here.  Some of them I
2   could go ahead and just tell you what my ruling was going to be
3   since I already know.
4           MR. DURKIN:  No, that's fine.
5           THE COURT:  And so that was really --
6           MR. DURKIN:  Yes.  No, I'm not complaining.  I'm only
7   saying Mr. Herman is concerned to make sure that we -- and, and
8   I think he's right, that you're aware that what we are saying,
9   and I believe we said this in our reply, is that we don't agree
10  that this issue was disposed of by the Seventh Circuit's
11  opinion.
12          THE COURT:  Oh, the Court understands.
13          MR. DURKIN:  And as long as that's clear, then we
14  don't have anything else to add.
15          THE COURT:  Okay.  And the Court understands.  In
16  fact, I thought that was one of the reasons for you bringing it
17  to the Court.
18          MR. HERMAN:  Yes, Judge.  That was the reason.
19          THE COURT:  All right.  Go ahead, Mr. Herman.
20          MR. HERMAN:  That was the main reason that we -- we
21  filed a separate motion, not to, not kill trees but we felt
22  that it was left open by the Seventh Circuit.
23          THE COURT:  All right.  Okay.  And the Court will
24  issue its ruling by Friday.  I'll just put it all in writing,
25  all right, since everybody is not here.  Okay.

1    MR. DURKIN:  That's fine.
2    THE COURT:  And then --
3    MR. DURKIN:  I take it you're going to deny it?
4    THE COURT:  That's a hint, yes.  All right.
5    MR. DURKIN:  I'm pretty smart, aren't I.
6    THE COURT:  The Court, the Court also has -- I think
7  1 and 4 in a way go together.  All right.  As to No. 1, the
8  Court -- I'm sorry, 123, the Court in preparing for the trial
9  in the summer, at the end of July there's been a request from
10 the government for a protective order.  On the flip side
11 there's a request at docket No. 145 for the -- of the defendant
12 to be able to have the identity of the undercover disclosed to
13 cleared counsel.  And again, the Court -- if the government's
14 counsel would prefer, I'll just go ahead and put it all in
15 writing.
16   But I will tell you as to my ruling for the Court, I
17 have talked to -- reviewed previous judges' procedures,
18 reviewed what's needed in this case with the appropriate staff.
19 And the Court's plan is -- and again, one issue we have is
20 we're supposed to have our courtroom reoutfitted, meaning all
21 technical -- all kinds of gadgets that have nothing to do with
22 this case, but I'm on the list.  So I guess it's whatever floor
23 Judge Kennelly, Judge Chang, it's similar to, to that.  That
24 might throw a kink into how we do things.  But right now the
25 plan is to do a tall screen that goes across the courtroom.

1  Therefore, everybody on the counsel side of the table will see
2  the witness as he looked at the time he dealt with Mr. Daoud.
3              All right.  So --
4              MR. DURKIN:  I'm sorry?
5              THE COURT:  -- since there's not -- since there was
6  no -- there's no identification issue here as to -- the witness
7  and Mr. Daoud came into direct contact.  Since they did,
8  however that witness looked when he had contact with Mr. Daoud,
9  is the way he will look in court.  Now, I don't know how
10 different that is from the way he really looks since I don't
11 know the person.  But he should at least look how he looked to
12 Mr. Daoud, and there should be no need to do anything beyond
13 that because they saw each other in that mode.  The government
14 understands?
15             MR. HAXALL:  Yes, Your Honor.
16             THE COURT:  All right.  Do you understand what I'm
17 saying, Mr. Durkin?
18             MR. DURKIN:  I think so.
19             THE COURT:  There's no identification issue here as
20 to however the, the --
21             MR. DURKIN:  In other words, they're not going to
22 get -- the only camouflage they can put on him is the same
23 camouflage they had to begin with?
24             THE COURT:  Right.  Right.
25             MR. HAXALL:  With the understanding that the gallery

1  will not be able to see him.
2          THE COURT: The gallery doesn't see him how he looks
3  now no matter what. So that's going to go across. There will
4  be lawyers, people on this side, you know, and there won't be
5  all of a sudden a crowd of people at one table just because
6  they have clearance to be able to be on the other side of the,
7  the curtain. So the gallery is going to be curtained off.
8          MR. HAXALL: And I'm sure some of the nuances will be
9  further worked out. He'll be able enter and exit in a way that
10 will not be --
11         THE COURT: Oh. That -- all of that stuff will be --
12 yes. So and then there also will be, if need be, one of my
13 next door courtrooms will be an audio, if we need to have an
14 audio for that purpose only. We also may do, we also may do
15 this -- let me tell you one thing too, so we don't have to move
16 everybody. If my next door courtroom is available, we may do
17 that as the curtained off and have that witness only there.
18 Then when we come back here, my courtroom is good to go and we
19 don't have to have the takedown.
20         MR. DURKIN: Could I have a second.
21    (Brief pause.)
22         MR. DURKIN: Are you saying that the gallery will be
23 here unless you do it --
24         THE COURT: No, what I'm saying is whenever this
25 witness testifies, whether it's in my room or the one next door

1  to me, one of the ones next door to me, the gallery in that
2  room that the witness testifies will be cordoned off with a
3  blackout high screen across the entire courtroom.
4      MR. DURKIN:  So --
5      THE COURT:  So the lawyers and their staff on this
6  side of the courtroom will be able to see.
7      MR. DURKIN:  So the public will be in the same room?
8      THE COURT:  They can be on the other side of the
9  gallery, yes.
10     MR. DURKIN:  Right.
11     THE COURT:  And I will also have audio available in
12 another room if they need it.  All right.  And we will just
13 keep the jury here, and the jury can be moved into that room
14 and then we can come back and continue with the trial without
15 having to worry about the, the setup.  That's the plan right
16 now.  And it may be adjusted as we go along, but that's the,
17 the plan.  And again, the witness will look as he looked when
18 he interacted with Mr. Daoud.  As to --
19     MR. DURKIN:  I took a class once not too long ago on
20 some Spanish mystics in the Inquisition, and I think that they
21 did that.  And I'm not -- I understand --
22     THE COURT:  Thank you, Mr. Durkin.
23     MR. DURKIN:  I understand the need, and I don't mean
24 that critically.  But I -- I am saying it critically, not, not
25 to you.  I understand the case law, and I understand the

1  position you're in. But I, I just --
2          THE COURT: Your objection is noted.
3          MR. DURKIN: No, I understand.
4          THE COURT: All right.
5          MR. DURKIN: But I, I think it's sad that it's come
6  to that.
7          THE COURT: Well, that is the step the Court is going
8  to take. Your position is noted. The Court also notes your
9  motion for disclosure. This Court -- the witness will be
10 available for cross-examination. You will see the witness in
11 the same way your client saw the witness. You will have the
12 information of -- all the information your client had when he
13 saw the witness. The Court sees no reason outside of the
14 admonishments, which the government already knows they're to
15 turn over anything if there's something else that as far as
16 his, his personal -- if there's personal information outside of
17 the witness' dealings with your client that somehow are
18 favorable to your client, obviously they've got to turn those
19 over.
20         But as to his -- the witness' personal information
21 that is totally different from this case, the Court is not
22 going to grant that motion to allow you to see it despite the
23 fact that you have clearance. All right. The Court sees no
24 purpose to that. All right. So your motion as to 145 is going
25 to be denied.

```
1                All right.  And are we still on track?
2                MR. DURKIN:  I think so.
3                THE COURT:  All right.
4                MR. HAXALL:  As far as I know, Your Honor.
5                THE COURT:  All right.
6                MR. HAXALL:  And, Judge, just to clarify.  Obviously
7    once we see the Court's ruling, if there's specific questions
8    or issues --
9                THE COURT:  Motion it up definitely.  I look forward
10   to seeing you all on a regular basis.  All right.  And I'm not
11   taking any extensive time off after next week.  So I will be
12   here.  And I'd rather deal with these issues -- I have no
13   problem.  I'd rather deal with them up front as they come up.
14               Do we have a final pretrial conference date set?
15               MR. HAXALL:  I believe we actually have a status
16   date, Your Honor, Friday, the 3rd right now.
17               THE COURT:  Friday, April 3rd?
18               MR. HAXALL:  I believe that's correct.  The Court
19   brought the case up today for this purpose.  I'm not sure --
20               THE COURT:  Right.  Do we need to keep that date?  Do
21   you want vacate it?
22               MR. DURKIN:  I think it would be a good idea.
23               THE COURT:  You want to keep it.  Okay.
24               MR. DURKIN:  There's -- and, and I want to bring
25   something to your attention that we just learned today, and
```

1  we'll first take it up with the lawyer with the MCC.  But he's
2  back in the SHU again.  And it is in large part over these
3  drops and the question of whether it's -- he's refusing or
4  whether it's, it's a medical condition that's causing it.  And
5  without belaboring it now and embarrassing him and everyone,
6  you know, getting into personal issues, we just learned for the
7  first time today that he has been treated in the past when he
8  was 13 for an issue that we think is directly related to this,
9  so that --
10              THE COURT:  Well, if it's a medical situation,
11  obviously the Court will allow that to be -- if you need to
12  file that information with me, you can file it under seal.  And
13  we'll find out what's going on.  April 3rd --
14              MR. DURKIN:  That's, that's what I think we will do.
15              THE COURT:  April 3rd is a couple of weeks away.
16              MR. DURKIN:  Right.
17              THE COURT:  Hopefully you'll be able to -- because
18  right now I have no clue what you're talking about.  So --
19              MR. DURKIN:  The short version is is that he's --
20              THE COURT:  The Court understands what you're saying.
21              MR. DURKIN:  He's been punished administratively --
22              MR. HERMAN:  Twice.
23              MR. DURKIN:  -- for something that we think is a
24  medical issue.
25              THE COURT:  Right.

1     MR. DURKIN: And it will severely affect his ability
2  to help us prepare for trial.
3     THE COURT: All right.
4     MR. DURKIN: And I'm going to -- we're going to file
5  something on it.
6     THE COURT: Well, that's why we need April 3rd to --
7     MR. DURKIN: Yes, I agree.
8     THE COURT: -- to deal with this. And obviously the
9  Court has already granted any motion to file any of these
10 medical records under seal.
11    MR. DURKIN: Okay.
12    THE COURT: All right.
13    MR. DURKIN: That's fine. Thank you.
14    THE COURT: Is there anything else from the
15 government?
16    MR. HAXALL: Not that I'm aware of, Judge.
17    THE COURT: Anything else on behalf --
18    DEFENDANT DAOUD: Friday? You mean this Friday?
19    MR. DURKIN: April 3rd. Is that a problem?
20    DEFENDANT DAOUD: No.
21    MR. DURKIN: Okay.
22    THE COURT: All right. April 3rd it is. Thank you
23 very much. Thank you, sir. All right.
24
25

CERTIFICATE

I HEREBY CERTIFY that the foregoing is a true, correct and complete transcript of the proceedings had at the hearing of the aforementioned cause on the day and date hereof.

*/s/TRACEY D. McCULLOUGH*                                    *September 24, 2018*

Official Court Reporter                                                              Date
United States District Court
Northern District of Illinois
Eastern Division