IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | Docket Nos. 12 CR 723, 13 CR 703, 15 CR 487 |
| vs. | ) | |
| ADEL DAOUD, Defendant. | ) | Chicago, Illinois<br>October 20, 2021<br>3:00 o'clock p.m. |

TRANSCRIPT OF PROCEEDINGS - MOTION
BEFORE THE HONORABLE JOHN Z. LEE

APPEARANCES:

For the Plaintiff: HON. JOHN R. LAUSCH, JR.
United States Attorney
BY: MR. BARRY JONAS
219 S. Dearborn St., Suite 500
Chicago, Illinois 60604

For the Defendant: DURKIN & ROBERTS
MR. THOMAS A. DURKIN
209 South LaSalle St., Suite 950
Chicago, Illinois 60604

LAW OFFICE OF JOSHUA G. HERMAN
BY: MR. JOSHUA G. HERMAN
53 W. Jackson Blvd., Suite 404
Chicago, Illinois 60604

Court Reporter: MR. JOSEPH RICKHOFF
Official Court Reporter
219 S. Dearborn St., Suite 2128
Chicago, Illinois 60604
(312) 435-5562

* * * * * * * * * * * * * * * * * *

PROCEEDINGS RECORDED BY
MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED BY COMPUTER

(Proceedings had in open court:)

THE CLERK: Case 12 CR 723, 13 CR 703, 15 CR 487, United States of America vs. Daoud.

MR. JONAS: Good afternoon, your Honor, Barry Jonas for the United States.

MR. DURKIN: Good afternoon, Judge, Tom Durkin and Joshua Herman here on our motion for leave to withdraw.

MR. HERMAN: Good afternoon, your Honor.

THE COURT: Good afternoon.

And for the record, we have Mr. Daoud with us today.

Good afternoon, sir.

THE DEFENDANT: Good morning -- or good afternoon. My bad.

THE COURT: All right. So, there are a number of motions before the Court. The main one being the motion to withdraw as counsel, filed by Mr. Durkin and Mr. Herman in this case.

Now, looking back at the procedural history of this case, I understand that originally when Mr. Durkin and Mr. Herman entered the case, that originally Mr. Daoud's family had retained you.

Is that correct?

MR. DURKIN: Yes, Judge.

THE COURT: And, then, once you discovered the breadth of the case and the scope of work involved, the family

informed you that they could no longer afford to pay you for representing Mr. Daoud; and, at that point, you asked Judge Coleman to appoint you as counsel under the Criminal Justice Act; is that correct?

MR. DURKIN: Yes, sir.

THE COURT: Okay.

And since that time that you were appointed under the CJA, Mr. Durkin, have you or Mr. Herman or anyone in your staff been paid by Mr. Daoud or his family for your representation in this case?

MR. DURKIN: No.

THE COURT: So, Mr. Daoud, based upon what you have filed, I take it that it is your belief that your father has been paying Mr. Durkin and Mr. Herman, even after they were appointed by Judge Coleman under the CJA; is that correct?

THE DEFENDANT: Yes, and there's no doubt about it.

THE COURT: Okay.

And, so, for those reasons, you're asking for various relief; but, also, I take it for that reason, you also want me to appoint new counsel for you in this case; is that correct?

THE DEFENDANT: Yeah.

THE COURT: Do you believe that there is any way that you can confidently continue to work with Mr. Durkin and Mr. Herman for your case?

THE DEFENDANT: No.

THE COURT: Okay.

And, Mr. Durkin and Mr. Herman, I'd direct the same question to you: Is there any way, given the circumstances, that you believe that you would be able to confidently continue representing Mr. Daoud as part of this case.

MR. DURKIN: I don't know how we could in light of what he's alleged.

So that it's clear, I understand him to be claiming that somehow we got paid in connection with a visit from Dr. Xenakis, I want to say --

(Brief pause.)

MR. DURKIN: -- it was last month, Judge -- where we were having some concerns.

Dr. Xenakis is the psychiatrist. He's a forensic psychiatrist. He has been involved in the case for a long time. He was the lawyer that -- the forensic psychiatrist that testified at the competency hearing, where Judge Coleman credited his testimony over that of the Bureau of Prisons.

We were concerned about Mr. Daoud's medication since he got to the MCC, and we asked for Dr. Xenakis to come out. Mr. Ahmad Daoud, his father, agreed to pay Dr. Xenakis directly for the cost of that visit. And he met with him on two days. I want to say a Monday and a Tuesday.

MR. HERMAN: Judge, to add further context, Mr. Durkin and I have been appointed for years. And it's not just

the scope of the case; it's the fact that there are three cases. Mr. Daoud at the time was just finishing high school when he was initially arrested and has been in custody since.

After the case was remanded to this Court from the Seventh Circuit, we had not yet even had an opportunity to seek reappointment under the Criminal Justice Act. Given our concerns over threshold issues of competency and medication, we, in consultation with Mr. Daoud's father, determined that it was -- there was -- it was imperative to have Dr. Xenakis -- and for the record it's X-e-n-a-k-i-s -- see Mr. Daoud. And rather than wait until, you know, the bureaucracy of the Criminal Justice Act went into place, we went forward and Mr. Daoud's father agreed to have Dr. Xenakis' fees taken care of.

So, that's, I think, some of the concerns, and I think the context needs to be made of record here.

THE COURT: Does Mr. Daoud's father know about this motion?

MR. DURKIN: Yes. He's very --

THE COURT: About the joint motion to withdraw?

MR. DURKIN: He's very upset.

THE COURT: I'm sorry?

MR. DURKIN: He's very upset.

He's in Cairo at the moment. He has a sick sister.

THE COURT: Hold on for a second, sir.

MR. DURKIN: He's extremely upset.

THE COURT: He's upset with, what?

MR. DURKIN: With the idea that we're withdrawing.

THE COURT: When do you expect him back into the country?

MR. DURKIN: I don't know. When he left -- he left shortly after this motion was filed. I want to say if the motion was filed on a Thursday, he left on a Tuesday. I asked him if he could stay. He said he couldn't; his sister was at risk of dying. He didn't know how long he would be gone.

I thought maybe his mother would be here today, but she's not. I don't know whether she's been made aware of it since our counsel had told us we should stop talking to them. I gave them the name of a lawyer that they could consult with.

THE COURT: Mr. Daoud, have you spoken to your father about your case since you have raised this issue?

THE DEFENDANT: Yeah. I mean, Durkin and/or Herman, they're the ones who told him about the motion.

I would like to summarize basically what's going on. And, so, I don't get stage fright or pussyfoot or whatever, I wrote it down --

THE COURT: Mr. Daoud, before you do, I guess my question is: Since that time, have you had a chance to talk to your father --

THE DEFENDANT: Yeah.

THE COURT: -- about this case and about Mr. Durkin

and his representation?

THE DEFENDANT: Yeah.

THE COURT: Do you know when he anticipates coming back into this country?

THE DEFENDANT: I thought it would be within a few months, but there was no specific time he said he's going to come back.

THE COURT: Okay.

Mr. Jonas --

MR. DURKIN: He is reachable, Judge.

THE COURT: Sorry?

MR. DURKIN: He is reachable. He has, I believe, reached out to Mr. Herman, as late as --

MR. HERMAN: Last week, your Honor. But, again, I -- given -- we have not spoken.

THE COURT: Mr. Jonas, what does the government think about all these developments?

MR. JONAS: Judge, the only thing I can say is I've known Mr. Durkin and Mr. Herman for a very long time. I've had more cases with him than any other defense attorney in my 30-year career. I find them to be -- I have no question about their ethics or their morals. I have no reason to believe that the accusations are true at all. Beyond that, I have no information to add. And I -- this is not my issue really when it comes down to it.

THE COURT: I guess what I'm trying to balance is -- what I'm trying to understand is whether or not there would be -- it would be possible if Mr. Ahmad Daoud was given a chance to speak with Mr. Adel Daoud about this case and developments, whether there is a chance that Mr. Daoud would, after such a conversation, want to continue Mr. Durkin and Mr. Herman's representation in this case.

And the reason why I think that is, I'm trying to balance the fact that if I recruit new counsel or appoint new counsel, they would not have the immense amount of background in the case that Mr. Durkin and Mr. Herman do. Not only in the case, but also just in their overall relationship with Mr. Daoud, which up until now, I believe, has been without any conflict like this.

If I do appoint new counsel, it's also -- it's presumably going to delay the proceedings until new counsel can get up to speed on this case. And there's a lot to get up to speed on, as I've been trying to do. So, I'm just -- those are the things, those are the thoughts that are kind of going through my mind.

So, that's why I asked if Mr. Durkin or Mr. Herman had any understanding as to when Mr. Daoud's father would be back in the country and would be in a position to not only speak to Mr. Durkin in person, but also to Mr. Daoud.

MR. JONAS: Your Honor, one thing I'm going to

suggest is sort of an interim step of appointing counsel for the limited purposes of representing the defendant for this proceeding, not necessarily for representing defendant going forward in the resentencing. I think maybe that could help.

THE COURT: That is to make an independent evaluation as to whether -- and to advise Mr. Daoud about the particular circumstances that he raised in his motion?

MR. JONAS: Yes. Because right now he's standing here by himself, and it just -- it seems to me that he could use counsel on this motion.

THE COURT: Mr. Durkin, any thoughts on that?

MR. DURKIN: I think he needs counsel. I also think that someone needs to determine whether he's on his medication. He was found competent to proceed only on medication. And we do know that he was -- when he was at the BOP, he was getting it by injection. Since he's been here, he's getting it in pill form. I don't know whether he's taking his medication or not.

THE COURT: All right. Very well.

What I will do is, then, I will appoint an attorney to talk to Mr. Daoud about all these concerns that he's raising, and to advise him about these issues, as well as whether it's in his best interest going forward to obtain new counsel or stay with current counsel. So, I'll go ahead and do that.

Mr. Daoud, what I'm going to do is I'm going to get another attorney for you and you could tell the attorney everything that's -- I've read all your motions.

THE DEFENDANT: I know you read the motions, but there is -- they got to summarize their summary. I would like to say my peace.

THE COURT: Mr. Daoud --

THE DEFENDANT: And I'm not going to just repeat what I say in the motion.

THE COURT: No, that's fine.

Let's do this: I'm going to get you an attorney; and, then, you can tell the attorney what you intend to say; and, then, the attorney can then relay that to the Court. Okay?

And that's only for your own protection, Mr. Daoud.

THE DEFENDANT: I'm not worried about what I'm about to say. And I would say --

THE COURT: Mr. Daoud --

THE DEFENDANT: -- I imagine --

THE COURT: Mr. Daoud, I understand that you may not be worried about what you're going to say, but it's my job to be worried for all of us about making sure that these proceedings go in a fair and just manner. Okay? Not only for your sake, but for the sake of the Court.

THE DEFENDANT: Well, for him to speak for me, he's

not really --

THE COURT: He's not speaking for you on this issue anymore. Okay?

And, so, what I'm going to do is I'm going to have a lawyer contact you. Okay?

And to the extent that you have issues with Mr. Durkin, that lawyer will be independent of Mr. Durkin. Okay? He will not be working with Mr. Durkin. He'll only be your lawyer to vet through these issues. All right?

THE DEFENDANT: Okay.

THE COURT: Then at that point, if the lawyer and you want to come back and he says, fine, Mr. Daoud, go ahead and tell the Court, go ahead and tell Judge Lee what you want to say, I'll be happy to listen to you. Okay?

Let's just try it that way. All right?

THE DEFENDANT: To me, he got to speak. I mean, I don't agree with it, but if it's an order.

THE COURT: Yes.

THE DEFENDANT: But if he got to speak about me, and some of that stuff wasn't -- a lot of that stuff wasn't true as far as him --

THE COURT: And I'm not --

THE DEFENDANT: -- him not being paid --

THE COURT: I am not --

THE DEFENDANT: -- and my medication. I was taking

it in the BOP.

THE COURT: And the reason why, Mr. Daoud, the reason why I'm going to get you a lawyer is because so that I don't have to believe him; I can talk to your new lawyer about this.

THE DEFENDANT: Okay.

THE COURT: Okay?

THE DEFENDANT: All right.

THE COURT: All right. Very well.

So, as I said, I will appoint new counsel -- or another counsel -- to represent Mr. Daoud with regard to the issues around the joint motion to withdraw as counsel. And let's do this: I'm going to --

I think we have another status date in this case, right?

THE CLERK: November 17th.

THE COURT: I'm going to maintain that status date and we'll see how far we get.

MR. JONAS: In person, Judge?

THE COURT: Yes, let's do it in person.

By that time, Mr. Daoud, you'll have a chance to talk to the new lawyer.

THE DEFENDANT: When's the date?

THE COURT: It's November 17th.

THE DEFENDANT: All right.

THE COURT: And you can talk to him about everything

that you want to tell me, whatever you want to say about Mr. Durkin, and then that new lawyer will come in and represent you in that case and then talk to you about it. Okay?

THE DEFENDANT: All right.

MR. DURKIN: Judge, I have a case in South Bend that got set for an evidentiary hearing that day subsequent to your date. Is there a way we could do the 16th instead of the 17th?

THE COURT: We can do the 16th at 3:00 o'clock.

MR. DURKIN: That would be great. Thank you.

THE COURT: Okay. I'll talk to everyone then. Thank you.

MR. JONAS: Thank you, Judge.

MR. DURKIN: Thank you.

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Joseph Rickhoff November 2, 2021
Official Court Reporter