```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
     UNITED STATES OF AMERICA,      ) Docket Nos. 12 CR 723
 4                                  )             13 CR 703
                         Plaintiff,)              15 CR 487
 5                                  )
              vs.                   )
 6                                  )
     ADEL DAOUD,                    ) Chicago, Illinois
 7                                  ) January 27, 2022
                         Defendant.) 9:38 o'clock a.m.
 8

 9          TRANSCRIPT OF PROCEEDINGS - TELEPHONIC MOTION
                 BEFORE THE HONORABLE JOHN Z. LEE
10

11   TELEPHONIC APPEARANCES:

12
     For the Plaintiff:         HON. JOHN R. LAUSCH, JR.
13                              United States Attorney
                                BY:  MR. BARRY JONAS
14                              219 S. Dearborn St., Suite 500
                                Chicago, Illinois  60604
15

16   For the Defendant:         MS. QUINN A. MICHAELIS
                                73 West Monroe Street
17                              Chicago, Illinois  60603

18                              DURKIN & ROBERTS
                                MR. THOMAS A. DURKIN
19                              209 South LaSalle St., Suite 950
                                Chicago, Illinois  60604
20
                                LAW OFFICE OF JOSHUA G. HERMAN
21                              BY:  MR. JOSHUA G. HERMAN
                                53 W. Jackson Blvd., Suite 404
22                              Chicago, Illinois  60604

23   Also Present:              MR. COLLIN SMITH, MCC
                                MR. ROBERT STEELE, MCC
24                              DR. BONNIE NOWAKOWSKI, MCC
                                DR. DAVID SZYHOWSKI, MCC
25
```

```
 1   APPEARANCES (Cont'd):

 2
     Court Reporter:              MR. JOSEPH RICKHOFF
 3                                Official Court Reporter
                                  219 S. Dearborn St., Suite 2128
 4                                Chicago, Illinois  60604
                                  (312) 435-5562
 5
                  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
 6
                            PROCEEDINGS RECORDED BY
 7                            MECHANICAL STENOGRAPHY
                         TRANSCRIPT PRODUCED BY COMPUTER
 8
```

1        (Proceedings had via telephone conference:)
2              THE CLERK:  12 CR 723, 13 CR 703, 15 CR 487, United
3   States of America vs. Daoud.
4              THE COURT:  Good morning.
5              Who is appearing on behalf of the government?
6              MR. JONAS:  Good morning, your Honor, it's Barry
7   Jonas on behalf of the United States.
8              THE COURT:  Who is appearing on behalf of Mr. Daoud
9   today?
10             MS. MICHAELIS:  Good morning, this is Quinn Michaelis
11  on behalf of Adel Daoud.
12             MR. DURKIN:  Judge, for the record, Tom Durkin and
13  Joshua Herman.  We're still counsel of record.
14             THE COURT:  And do we have Mr. Daoud on the line with
15  us?
16             THE DEFENDANT:  Yeah, I'm here.
17             MR. JONAS:  Your Honor, it's Barry Jonas.
18             We have attorneys from the MCC on the line, as well,
19  per your Honor's last order.
20             THE COURT:  Okay.
21             Can you introduce yourselves for the record, please.
22             MR. SMITH:  Yes, Judge.  This is Collin Smith,
23  attorney at MCC Chicago.  I've also got here Mr. Robert
24  Steele, another attorney here at MCC Chicago; Dr. David
25  Szyhowski, Chief Psychologist MCC Chicago; and, Dr. Bonnie

1 Nowakowski, staff physician here at MCC Chicago.
2     THE COURT: All right. Good morning, everyone.
3 Thank you for participating in this call.
4     So, Ms. Michaelis, you've had a chance to kind of
5 look into the matter with regard to Mr. Daoud's medication; is
6 that correct?
7     MS. MICHAELIS: Yes, your Honor. I received some
8 records from the MCC that indicated the daily dispensation of
9 the medication that he's prescribed and, then, the records
10 that indicate whether he's taking the records -- I'm sorry,
11 taking the medication.
12     And, so, you know, there are certain days where it's
13 marked that he either did not show up or refused to come to
14 the medication line. But overall, it appears that he was
15 taking his medication up until the point where the records
16 stop, which I believe is end of December and, most notably,
17 that he was actually taking the medication all throughout the
18 month of October, with only two no-shows that coincide with, I
19 believe, fasting days. And I think that that medication --
20 the medication records indicate that he was taking his
21 medication when he filed his initial motion requesting a new
22 attorney at this point.
23     THE COURT: All right.
24     Mr. Smith, is that consistent with your understanding
25 of the medical records with regard to Mr. Daoud and his

1 medication?

2 MR. STEELE: Your Honor, this is attorney adviser
3 Robert Steele.

4 Yes, that is correct --

5 THE COURT: I'm sorry, Steele.

6 MR. STEELE: No, no, not a problem.

7 Yes, that is correct with our understanding.

8 THE COURT: All right.

9 So, the records indicate that not only was Mr. Daoud
10 provided the medication, but he's been taking the medication;
11 is that correct?

12 MR. STEELE: Yes, your Honor.

13 Attorney Steele.

14 That's correct.

15 THE COURT: And what about the times when he didn't
16 take the medication? I wonder whether the medical
17 professionals at the MCC believe that that would -- those
18 instances where he didn't take the medication, didn't appear
19 to take -- or appear in line to get the medication, whether
20 those lapses would have a material impact upon the efficacy of
21 the medication treatment overall.

22 MR. STEELE: Your Honor, first I'm going to have Dr.
23 Nowakowski speak to the question, and then Dr. Szyhowski may
24 follow up, if that's okay.

25 THE COURT: That's fine.

1          DR. NOWAKOWSKI:  Good morning.  I'm Dr. Nowakowski.
2          I was managing his care -- (audio transmission
3   interrupted).
4          THE COURT:  Doctor, you're going to have to speak up.
5   We can barely hear you.
6          DR. NOWAKOWSKI:  Is this better?
7          THE COURT:  Yes.  Thank you.
8          DR. NOWAKOWSKI:  Okay.
9          So, I'm Dr. Nowakowski.  I've been managing his care
10  through all of this.  And he came to us from the other
11  institution on June 23rd.  He was compliant up until about
12  October; November he probably missed a handful of doses; and,
13  then, in December his compliance was intermittent.  And in the
14  beginning of January -- I don't know if you have this MAR --
15  he was compliant up until the 11th, but in the last -- since
16  that time, he has refused.  So, he hasn't been taking it, far
17  as I can tell, with -- since the 11th.  That was his last
18  dose.
19         THE COURT:  Okay.
20         And, Dr. Nowakowski, with regard to the intermittent
21  compliance in November and particularly in December, what is
22  your medical assessment as to whether or not the intermittent
23  lapses would have a material impact upon the efficacy of the
24  medical treatment -- medicine treatment as a whole?
25         DR. NOWAKOWSKI:  Yeah, usually when you're on a

1 medication like this, once it's equilibrated in the blood --

2 THE COURT REPORTER: I'm sorry, Doctor -- excuse me,
3 Doctor. This is the court reporter. I need you to speak much
4 louder, please.

5 DR. NOWAKOWSKI: So, when you're taking a medication
6 such as this and you miss more than four to five consecutive
7 doses, it's pretty much out of your system. But the effect of
8 having been on it, if you had it properly equilibrated --
9 which he has with all of his compliance prior to that -- you
10 know, the medication is pretty much out of your system after
11 you've missed four to five doses.

12 So, in the months where his compliance started to
13 drop -- that would be November and December -- I would not say
14 that there would be an expected change in the therapeutic
15 efficacy because he only missed a dose in sporadic doses, not
16 consecutively.

17 THE COURT: Okay.

18 And you're saying -- you also note that he hasn't
19 taken any medication since January 11th; is that correct?

20 DR. NOWAKOWSKI: That's correct.

21 Now, because he's been on it for a long time -- you
22 know, several months, not years -- the effect that it has on
23 the neurotransmitters in the brain, that effect can last for
24 months after someone has stopped the medication. So, I
25 wouldn't expect to see any kind of complications from

1  something for these -- from these small bouts of
2  non-compliance.
3      THE COURT: Okay. Thank you.
4      Is there anything else that Dr. Szyhowski would like
5  to add?
6      DR. NOWAKOWSKI: Can I just -- I'll mention one more
7  thing because I just recently saw him for a routine visit to
8  renew his medication. And, you know, we checked the rate.
9  And one of the problems with these medications is metabolic.
10 And some people gain a significant amount of weight, sometimes
11 even pushing them into a diabetic range. So, we monitor their
12 labs and their weight. And he -- he's gained a lot of weight
13 since his original admission in 2012. He was 145 and now he's
14 202. Now, a lot of that could be also, you know, compounded
15 by the lockdowns. But for the most part, I would attribute it
16 mostly to the medication. So, he's concerned about that. And
17 I don't think he -- he expressed that he doesn't want to take
18 the medication. But, you know, usually what we've done is
19 have discussions about the compliance and all that.
20     THE COURT: And when was that visit, ma'am?
21     DR. NOWAKOWSKI: It was two days ago, I think.
22     THE COURT: Okay. Thank you.
23     MR. DURKIN: I'm sorry, I didn't hear when that visit
24 was.
25     DR. NOWAKOWSKI: Two days ago.

1	THE COURT: Two days ago.
2	DR. NOWAKOWSKI: Yes.
3	THE COURT: Thank you.
4	Dr. Szyhowski, anything that you would like to add?
5	DR. SZYHOWSKI: Just that Psychology has been
6	following Mr. Daoud on a monthly basis --
7	THE COURT REPORTER: Doctor, I can't hear you. You
8	need to speak up louder, please. It's very difficult to hear
9	you.
10	DR. SZYHOWSKI: I just wanted to add that Psychology
11	has been following Mr. Daoud on a monthly basis since he
12	arrived here in June of 2021. Since that point in time, we
13	have noticed no change in his mental status over that point in
14	time. And we have routinely addressed any psychological
15	concerns that he has, which to this point in time have really
16	been nothing. We've also encouraged medication compliance.
17	THE COURT: Okay.
18	Mr. Durkin, I have reviewed the government's
19	response, and I've reviewed your filings, as well. Do you
20	have anything to add to what you filed?
21	MR. DURKIN: Well --
22	THE COURT: Here, let me perhaps ask you a more
23	pointed question than that.
24	One of the things that you suggest in your filings is
25	that we conduct another competency hearing for Mr. Daoud in

1  light of some of the allegations and statements that he's made
2  in various written filings and in court. I wondered whether
3  having heard the statements or the views of the doctors at the
4  MCC, whether you believe that you would still recommend a
5  competency hearing for Mr. Daoud at this point.
6      MR. DURKIN: I would. For the same reasons, Judge,
7  I'm -- you know, again, you know, we're not fighting to stay
8  on. So, I don't want there to be --
9      THE COURT: No, I understand.
10     MR. DURKIN: -- some misunderstanding. But I stand
11 on what we filed. I believe it would be helpful for you to
12 hear from Dr. Xenakis. Mr. Daoud has, of course, now accused
13 Dr. Xenakis of being in cahoots with us, which I think --
14     THE DEFENDANT: You say you're friends from old time,
15 so --
16     THE COURT: Hold on, Mr. Daoud.
17     MR. DURKIN: And I think that should -- (audio
18 transmission interrupted) -- as well.
19     THE COURT REPORTER: I'm sorry, Mr. Durkin, you broke
20 up there. Could you repeat, please.
21     MR. DURKIN: I said I think that should inform the
22 Court, as well.
23     We quoted from the e-mail to -- from Dr. Xenakis.
24 Dr. Xenakis saw him, I believe, in October when this all
25 started. And he was of the opinion then that he thought

1   Mr. Daoud was okay based on when he had seen him last and
2   based on his representations regarding the medicine.  But
3   Dr. Xenakis now has a different opinion of that, which we
4   quoted in the pleading.  I think that's important.
5           Dr. Xenakis has a long history with him.  He's a
6   former brigadier general from the U.S. Army.  And with all due
7   respect to Mr. Daoud, I don't think he would be lying.
8           What I'm also concerned about is Mr. Daoud in one of
9   the pleadings, which we cited, says he stopped taking the
10  medication.  So -- and it's my understanding that the
11  medication has been for quite some time given to him by pill.
12  And I don't know what type of procedures the MCC has to make
13  sure somebody swallows the pill, but I do know historically
14  that those can be cheeked, or whatever you want to say.
15          THE COURT:  Well, that's a good point.
16          So, Mr. Smith, Mr. Steele, can you address --
17  Ms. Michaelis says that the records indicate that not only was
18  the medication dispensed but when the medicine is actually
19  taken by the patient.  How is that verified?
20          MR. STEELE:  Your Honor, this is Attorney Steele.
21          I'm going to turn that question over to Dr.
22  Nowakowski.
23          THE COURT:  Okay.
24          DR. NOWAKOWSKI:  Hello.  We have procedures for our
25  pill lines where we -- when we're administering psychotropic

1  medications by direct, observed individual doses, that the
2  inmate takes the pill in front of the nurse.  And, then, what
3  they do is they open their mouth and lift their tongue up to
4  make sure that they're not cheeking it.
5           Some medications they crush.  But I don't think this
6  one is crushed.  And it doesn't need to be.
7           THE COURT:  Okay.  Thank you.
8           DR. NOWAKOWSKI:  Okay.
9           THE COURT:  And just for the court reporter's
10  benefit, Dr. Nowakowski, can you spell your last name, please.
11           DR. NOWAKOWSKI:  Yes.  N-o-w-a-k-o-w-s-k-i.
12           THE COURT:  Great.
13           And, Dr. Szyhowski, can you spell your name, please.
14           DR. SZYHOWSKI:  Sure.  It is S-z-y-h-o-w-s-k-i.
15           THE COURT:  Thank you.
16           So, Ms. Michaelis, basically, based upon your review
17  of the record and your discussions with Mr. Daoud, your
18  conclusion is that when Mr. Daoud requested appointment of new
19  counsel for whatever reason, that he was compliant with --
20  materially compliant with his medication treatment during that
21  time; is that correct?
22           MS. MICHAELIS:  Yes, your Honor.  That's my
23  understanding of the records, and that's my understanding of
24  my conversations with Mr. Daoud.
25           THE COURT:  All right.

1  And at this point in time, Ms. Michaelis, Mr. Daoud
2 is still seeking appointment of new counsel?
3  MS. MICHAELIS: Yes, your Honor, that's correct.
4  THE COURT: Mr. Jonas, does the government have a
5 position one way or the other with regard to Mr. Daoud's
6 request for new counsel?
7  MR. JONAS: Judge, we've got no position with regard
8 to the request for new counsel. If given the opportunity, I
9 would like to respond to Mr. Durkin's filing yesterday if this
10 is the appropriate time.
11  THE COURT: If you want to make a record, you can go
12 ahead and do so now.
13  MR. JONAS: I'll be brief, your Honor.
14  Mr. Durkin made a filing accusing the government of
15 improper motivation -- improper motives, specifically trying
16 to take advantage of the defendant's mental health issue,
17 according to Mr. Durkin, and as a result, the government -- it
18 appears the government is not filing a motion requesting a
19 competency hearing for these improper motives. Nothing could
20 be further from the truth.
21  Mr. Durkin and I had several conversations over the
22 past weeks where he asked the government to file something. I
23 told him I do not have firsthand information which would
24 warrant filing a competency motion. So, he, I think, was
25 annoyed at that. I think he views it that if the government

1  files a motion, it gives him cover.

2  Accusations of the defendant's mental health to the
3  Court, the defense -- Mr. Durkin's position that the
4  statements, the accusations against him are false.  In other
5  words, if the government filed a motion that defendant was not
6  competent or seeking a competency hearing, it gives Mr. Durkin
7  cover against the accusations.

8  Mr. Durkin filed a motion.  It can be viewed as sour
9  grapes.  So, for some reason he attacked the government.  His
10 accusations are false.

11 The reason why the government did not file anything
12 regarding the mental health status was because:  A, we have no
13 firsthand information that would indicate the defendant has a
14 mental health issue at this time; B, he has an attorney who is
15 meeting with him who, it sounds like, Mr. Daoud has been
16 cooperative with and who is in the best position to make an
17 assessment as to whether there's a competency issue; C,
18 frankly, the filings that the defendant has made are coherent;
19 they do not appear on their face to be the rantings of someone
20 who's having a mental health issue or is off his medication;
21 and, D, as we just heard from the MCC, he missed a few days,
22 but not enough that would cause any mental health imbalance so
23 that the filings would have been impacted.

24 If the Court ultimately decides to have a competency
25 hearing, we don't have a problem with that.  That's fine.  But

1  I don't see a record for it at this time.  I think if
2  anything, the Court should just let Mr. Durkin and Mr. Herman
3  go, appoint a new attorney and we proceed forward.
4           Thank you, Judge.
5           THE COURT:  All right.  Thank you.
6           For the record, just so that I preserve the record in
7  this case, can I have Ms. Acevedo, my courtroom deputy, swear
8  in Dr. Nowakowski and Dr. Szyhowski, please.
9           Carmen, go ahead.
10    (Drs. Nowakowski and Szyhowski duly sworn.)
11          THE COURT:  So, Dr. Nowakowski, do you affirm that
12 all the statements you made today at this hearing are true and
13 correct, to the best of your knowledge?
14          DR. NOWAKOWSKI:  Yes.
15          THE COURT:  And, Dr. Szyhowski, the same:  Do you
16 affirm that all the statements you made today are true and
17 correct, to the best of your knowledge?
18          DR. SZYHOWSKI:  Yes.
19          THE COURT:  And, Dr. Szyhowski, what is your first
20 name, please, for the record?
21          DR. SZYHOWSKI:  David.
22          THE COURT:  And, Dr. Nowakowski, what is your first
23 name, please?
24          DR. NOWAKOWSKI:  Bonnie.
25          THE COURT:  Thank you.

1         All right.  So, based upon the record before me, the
2    question was a rather limited one, which took some time to get
3    to the bottom of, which is whether or not Mr. Daoud knowingly
4    and voluntarily and in a sound mind asked this Court to
5    appoint new counsel for him, whatever the reasons may be,
6    whether his reasons are mistaken in fact or not.  That's not
7    really the inquiry here.  My inquiry and what I'm focused on
8    is whether Mr. Daoud was competent when he requested
9    appointment of new counsel for this case.
10        Based upon the investigation and representations of
11   Ms. Michaelis, who I appointed specifically to assist me in
12   making that determination and based upon the statements of the
13   medical professionals at the MCC, I hereby find that Mr. Daoud
14   was competent when he filed his request for appointment of new
15   counsel in this case.  And given the underlying difficulties
16   in the relationship between Mr. Daoud at this point and
17   Mr. Durkin and Mr. Herman, the Court hereby grants Mr. Daoud's
18   request.
19        I was hesitant to grant it in the beginning because
20   of questions regarding Mr. Daoud's competency in making the
21   request, as well as the substance of the underlying
22   allegation.  Furthermore, I was also weighing the delay that
23   appointment of new counsel would cause in this case,
24   particularly in light of Mr. Durkin and Mr. Herman's knowledge
25   of the case going back now more than seven years.

1	But after the inquiry conducted by Ms. Michaelis and
2	the hearing today, at this point I believe that the interests
3	of justice support granting Mr. Daoud's request for
4	appointment of new counsel.  The Court will go ahead and make
5	that appointment and grant Mr. Durkin's and Mr. Herman's
6	request to withdraw from the case.
7	            MR. DURKIN:  Judge --
8	            THE COURT:  Ms. Michaelis, you also are hereby
9	granted leave to withdraw from the case.  And I will go ahead
10	and appoint new counsel for Mr. Daoud.  The --
11	            MR. DURKIN:  Judge, before you -- this is Durkin.
12	Could I just speak to Mr. Jonas' remarks before I --
13	            THE COURT:  Mr. Durkin, no need.  Whatever the
14	parties need to say with one another is said in the papers,
15	and I don't think it's going to materially further the
16	proceedings, either today or overall.  I understand that you
17	disagree with Mr. Jonas and Mr. Jonas disagrees with some of
18	your characterizations, and we'll just leave it at that.
19	            Let's go ahead --
20	            MR. DURKIN:  I also just -- could I just say one
21	other thing and forgetting Jonas?
22	            When we filed our pleading yesterday, it was not just
23	regarding competency in October.  It's competency today.  But,
24	you know, I'll abide by your ruling and it's -- you know,
25	we're happy to withdraw.  And, you know, the Court is in

Case: 1:12-cr-00723 Document #: 438 Filed: 01/25/23 Page 18 of 19 PageID #:4205

18

1   charge of justice, not me.  So, we'll exit gracefully.
2              THE COURT:  I understand the positions that you set
3   forth in the defendant's filing.  And to the extent that new
4   counsel believes that a competency hearing is warranted, new
5   counsel can make that motion.  But it seems to me that given
6   the state of the relationship between Mr. Daoud and Mr. Durkin
7   and Mr. Herman, that that conversation between counsel and
8   client at this point would not really go anywhere.
9              So, the motion to withdraw is granted.  As I said,
10  Mr. Durkin, Mr. Herman and Ms. Michaelis are hereby granted
11  leave to withdraw.
12             Ms. Michaelis, I want to thank you for your work in
13  this case, as well.  And let's set this case for a further
14  status.
15             Carmen, can you give me a date sometime in mid-March,
16  please.
17             THE CLERK:  Sure.  March 17th at 9:30.
18             THE COURT:  All right.
19             And I want to thank Mr. Smith and Mr. Steele and
20  Dr. Szyhowski and Dr. Nowakowski for your participation today,
21  as well.  I know you're very busy.  And your input was very
22  helpful.  Thank you.
23             MR. STEELE:  Thank you, Judge.
24             MR. DURKIN:  Judge, this is Durkin again.
25             When you notify the Federal Defender, would you

1  apprise them that Mr. Herman has about 17 Bankers Boxes in his
2  office that are ready to be delivered?
3              THE COURT:  I'm sure that they'll be interested in
4  those boxes.
5              MR. DURKIN:  Okay.
6              THE COURT:  Thank you, everyone.
7              MR. JONAS:  Your Honor, real quick, it's Barry Jonas.
8              There is also an outstanding motion for a bail
9  hearing filed by the defendant.  How do you wish to proceed on
10 that?
11             THE COURT:  I'm going to allow new counsel to
12 consider that motion and consult with Mr. Daoud, and new
13 counsel can raise that motion before me if new counsel
14 believes appropriate.
15             MR. JONAS:  Thank you, Judge.
16             THE COURT:  Thank you.
17             MS. MICHAELIS:  Thank you, your Honor.
18                       *     *     *     *     *
19
20 I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.
21
22
   /s/ Joseph Rickhoff                           January 24, 2023
23 Official Court Reporter
24
25