UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No.   12 CR 723 |
| v. ) | 13 CR 703 |
| ) | 15 CR 487 |
| ) | Honorable Matthew F. Kennelly |
| ADEL DAOUD ) | |

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S RESPONSE TO COMPEL, IMPEACH UCE AND CHS, AND DISMISS CONTINUED - CONTINUED**

Defendant Adel Daoud accuses the government of manipulating the Kankakee recordings between him and the CHS because agents listening live would on occasion turn off the recording device. Dkt. #536.

As addressed in the Government's Response to the Defendant's Motion to Compel (Dkt. # 528), the government explained the circumstances surrounding the Kankakee recordings of the defendant and his cellmate. In short, agents listening to the conversations live would, on occasion, turn off the microphone in the cell and stop listening. When the microphone was turned off, the conversations were not recorded. After a period of time, agents would turn the microphone/recording device back on and resume listening. Agents labeled recorded conversations as either "pertinent" to the investigation and "non-pertinent." At night, the recording device was left on, the recordings were not listened to live but were reviewed at a later time.

The defendant appears to be questioning why the agents turned off the recording device at all if non-pertinent conversations were recorded. This happened for two reasons. First, the government's authority to record the defendant was based

1

on consent of the defendant's cell mate. If the cellmate did not appear to be in the cell, the agents were required to turn off the microphone/recording device and stop listening. See Dkt. #528, Ex. B ("Due to the possibility of over collection or under collection of consensual monitoring, at approximately 1pm on 11/23/2012, Agents were directed to 'spot check' every 15 minutes during the times the monitoring/recording was turned off to determine if the CHS and Daoud were physically in the cell."). The agents also, at their discretion and on occasion, turned off the recording device and stopped listening to the conversation if nothing pertinent was being discussed. In either circumstance, agents would then, after a period of time, turn the microphone and recording device back on, and resume listening.

The defendant seems to imply that the government never turned off the recording device. The defendant states in his filing that "the parts that are missing are marked on a linegraph provided by the government. Example, among many, see sessions 14 – 19 for 11/23/12, by the times given, you can see the times that were skipped." The defendant appears to be referring to Dkt. #528, Ex. E, p. 15.

The "parts that are missing" are the times when the recording device was turned off. For example, according to the line sheet, agents noted "television sounds. A movie or tv show" for session 14, which lasted one minute and 37 seconds, and "spot check" for session 15 (11 seconds) and session 16 (35 seconds) (Dkt. #528, Ex. D). The line sheets corroborate that government's point – the agents, on occasion, turned off the recording device and stopped listening.

The defendant has the recordings. He has the agents' monitoring log (Dkt. #528, Ex. A). He has the agents' line sheet which identify each session, the start and stop time, the duration of the session, whether the session was marked as pertinent or non-pertinent and notes, if any, taken by the listening agent. (Dkt. #528, Ex. D). He has a spreadsheet (identified by the defendant as a linegraph) that lists each session, the start and stop time, the duration of the session and whether the session was marked pertinent or non-pertinent (Dkt. #528, Ex. E). He has transcripts created by the government of the most relevant conversations. The government has explained why, on occasion, the agents would turn off the recording device and stop listening.

He has not presented any evidence to support his position that the government has additional recordings. He has not presented any argument that there were exculpatory conversations between him and his cellmate during the times when the recording device was turned off, nor has he identified a single conversation within the recordings that contain exculpatory conversations.

The defendant has exhausted the Kankakee recording issue. The Court should deny his motion.

## Conclusion

For the above reasons, the defendant's Motion to Compel, Impeach UCE and CHS and Dismiss, continued-continued (R. #536) should be denied.

        Respectfully submitted,

        MORRIS PASQUAL
        Acting United States Attorney

By:   */s/ Barry Jonas*
      BARRY JONAS
      TIFFANY ARDAM
      Assistant United States Attorneys
      United States Attorney's Office
      219 South Dearborn, 5th Floor
Date: June 19, 2024      Chicago, Illinois 60604