IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 12 CR 723 |
| | ) | |
| ADEL DAOUD | ) | |
| ----------------------------------------------- | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 13 CR 703 |
| | ) | |
| ADEL DAOUD | ) | |
| ----------------------------------------------- | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 15 CR 487 |
| | ) | |
| ADEL DAOUD | ) | |

**CORRECTED**
**ORDER ON REMAINING MOTIONS**

MATTHEW F. KENNELLY, District Judge:

There are two defense motions that remain pending before the Court. The first is entitled "Motion to compel, impeach UCE & CHS, and dismiss—continued—continued." The second is entitled "Motion to compel all posts from ansar1.info." Related to the second defense motion is the government's "Fifth ex parte, in camera motion for a protective order pursuant to CIPA section 4 and Fed. R. Crim. P. 16(d)(1)." The Court addresses all of these motions in this order.

1. **Defendant's motion to compel, impeach UCE & CHS, and dismiss—continued—continued (Case No. 12 CR 723, dkt. 523; Case No. 13 CR 703, dkt. 205; Case No. 15 CR 487, dkt. 215)**

The Court preliminarily addressed this motion in its opinion issued on March 11, 2024, as follows:

> In this motion, Mr. Daoud represents that the recordings at the Kankakee Jail (the CHS recordings) are of different lengths even though the recording was ostensibly going all day, that is, for a 24-hour period. At the February 23 hearing, the Court directed the government to provide by March 8, 2024 a written representation that all of the Kankakee recordings have been produced, as well as information regarding their source, where they were maintained, and when they came into the government's possession. The Court has now received the government's submission. Mr. Daoud may file a reply by March 18, 2024.

Dkt. 530 at 10. In his reply, filed on March 22, 2024 (dkt. 536), Mr. Daoud accuses the government of manipulating the recordings in terms of when the recording device in the Kankakee cell was turned on and off. He also notes that the recordings include long stretches during which apparently nothing was happening, which he contends undercuts the government's contentions about turning the recording device on and off. He also appears to continue to contend that recordings must be missing.

The government has adequately addressed Mr. Daoud's contentions in its earlier submissions and in its surreply on this motion, filed at the Court's direction on June 19, 2024 (dkt. 554). Specifically, the government has sufficiently explained when and under what circumstances the Kankakee recording device was turned on and off. In particular, the authority to record the defendant was based on the consent provided by his cellmate. Thus if it appeared the cellmate was absent, the device was turned off. And there were other occasions when the device was turned off because nothing pertinent to the government's investigation was being discussed. There's nothing in the least bit unusual or surprising about either of these points. In sum, nothing about the circumstances suggests that there was anything nefarious or manipulative.

Mr. Daoud has had what the government has represented was the entirety of the Kankakee recordings for months, along with notes taken by the agents, transcripts of

2

certain conversations, and a spreadsheet with data regarding each session. The Court finds no support in the record for the proposition that there are additional recordings that the government has not produced. In addition, there is no contention by Mr. Daoud that anything exculpatory was not recorded, or was recorded and produced too late for him to use in his defense, or at sentencing. There is no basis relating to the Kankakee recordings to dismiss any of the charges against Mr. Daoud or to warrant further testimony or "impeachment" of the undercover witnesses.

The Court denies Mr. Daoud's motion for these reasons.

2. **Defendant's motion to compel all posts from ansar1.info (Case No. 12 CR 723, dkt. 525; Case No. 13 CR 703, dkt. 208; Case No. 15 CR 487, dkt. 217)**

In this motion, Mr. Daoud seeks production of "all of my posts from ansar1.info."[1] The text of the motion indicates that Mr. Daoud is seeking production of the initial online posting that he is claimed to have made, which is what the government says initiated its undercover investigation of Mr. Daoud. Mr. Daoud appears to contend that the government fabricated this information.

Long ago (and again after Mr. Daoud terminated his counsel and went *pro se*), the government produced to him the *contents* of the ansar1.info post, though not a copy of the post itself. Mr. Daoud has had this information for a significant period of time. The information is not in any way exculpatory.

In response to Mr. Daoud's motion, the government states that it has no

---

[1] In the body of the motion, Mr. Daoud also appears to request copies of all his postings on two other sites referred to as Din Haqq and Jhuf.net. The government represents that it has produced copies of these postings to Mr. Daoud, at least three times (2013, 2022, and January 2023). There is no indication that this representation was incorrect. The Court therefore confines its discussion of Mr. Daoud's motion to the ansar1.info posting(s).

3

unclassified ansar1.info postings. It has addressed ansar1.info classified material in its motion for protective order under CIPA.

The Court denies Mr. Daoud's motion because there is no unclassified material for the government to produce and for the reasons discussed in the next section of this order, which addresses the government's CIPA motion.

3. **Government's fifth motion for protective order under CIPA (Case No. 12 CR 723, dkt. 540; Case No. 13 CR 703, dkt. 222; Case No. 15 CR 487, dkt. 231)**

The Court has reviewed, in a facility appropriate for the storage and review of classified information, the material covered by the government's fifth, *ex parte, in camera* motion for a protective order pursuant to CIPA Section 4 and Federal Rule of Criminal Procedure 16(d)(1). On June 7, 2024, the Court also conducted in that same facility an *ex parte* hearing with government counsel, during which the Court asked government counsel questions pertinent to the fifth motion for protective order. The hearing was conducted in the presence of a court reporter who has the requisite security clearance. The Court directs the government to cause the court reporter to prepare a transcript of the *ex parte* hearing and deposit it in the secure facility so that the transcript is available for appellate review.

In its fifth motion under CIPA, the asked the Court to conduct an *ex parte, in camera* review of the government's submission (which the Court has done, as just noted); (2) authorize the government to delete from discovery information that it contends is not relevant and not helpful to the defense; and (3) order that the text of the government's motion and its attachments shall not be disclosed to the defense and shall be sealed and preserved in the records of the Court to be made available for all future review of these proceedings.

4

The Court, having reviewed the government's submission and the pertinent material, has carefully considered the government's discovery obligations, including its obligations under the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny.

The Court finds that the government's motion was properly filed *ex parte* and *in camera* under CIPA § 4 and Fed. R. Crim. P. 16(d)(1). Based on its review of the government's motion and the accompanying classified declaration of a United States government official, as well as the classified documents provided for the Court to review, the Court finds that the classified information referenced in these materials implicates the government's national security and classified information privilege. The information is properly classified, and its disclosure could cause serious damage to the national security of the United States. The Court therefore grants the government's motion for protective order and authorizes the government to withhold from discovery to the defense the classified information outlined in the government's motion.

The Court also believes it important, however, to clear up one matter relating to the defendant's "original posting" on ansar1.info. The Court prefaces these comments by stating that at the June 7 hearing, the Court asked government counsel whether there was any issue or problem with stating in the public record the particular point the Court is about to make; government counsel replied that there is no issue or problem with that. With this in mind, the Court wishes to make it clear that the government does not have a copy of the ansar1.info posting made by Mr. Daoud. Rather, the government received from another source a report summarizing or quoting the ansar1.info posting.

5

The identity of that source, as well as other information about the government's receipt of the report, is legitimately classified and may not be disclosed to Mr. Daoud for the reasons described above. The Court can say, however, that it has reviewed the classified material regarding the ansar1.info posting and is satisfied that the posting is genuine and not fabricated or "made up," contrary to Mr. Daoud's contention in his motion.

The Court also notes that the nature and specifics of the information that led the government to begin to investigate Mr. Daoud in the first place has no bearing on any issue that is before the Court at this point. Mr. Daoud pled guilty to the offenses with which he was ultimately charged. The particulars of the online posting that led the government to *initiate* the investigation have no bearing on whether Mr. Daoud committed the charged offenses, the legitimacy of the charges, or the validity of his guilty plea.

**Conclusion**

For the reasons stated above, the Court denies the following motions:

- Case No. 12 CR 723, dkt. nos. 523, 525.
- Case No. 13 CR 703, dkt. nos. 205, 208.
- Case No. 15 CR 487, dkt. nos. 215, 217.

The Court grants the following motions:

- Case No. 12 CR 723, dkt. nos. 540.
- Case No. 13 CR 703, dkt. nos. 222.
- Case No. 15 CR 487, dkt. nos. 231.

Standby counsel is directed to promptly provide a copy of this order to Mr. Daoud. A

telephonic status hearing is set for July 10, 2024 at 8:40 a.m. to discuss the completion of the sentencing hearing on July 19, 2024. The following call-in number will be used: 650-479-3207, access code 980-394-33. The Court will make arrangements for Mr. Daoud to participate in the telephonic hearing.

Date: July 1, 2024
(corrected July 11, 2024)

_____
MATTHEW F. KENNELLY
United States District Judge